St. Tammany
**Melissa R. Henry - Clerk of Court**
**Farrah Daws - Deputy Clerk**
**Suit 2023-14925 H**
**E-Filed on: 8/24/23 09:17 AM**
**Filed on: 8/24/23 12:15 PM**

**22ND DISTRICT COURT FOR THE PARISH OF ST. TAMMANY**

**STATE OF LOUISIANA**

NO. _____                                    DIV. _____

**PETER DUNN & PAULA DUNN**

**VERSUS**

**HANOVER INSURANCE GROUP**

FILED: _____          _____
                                        **DEPUTY CLERK**

**PETITION FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**NOW INTO COURT**, through undersigned counsel, come Petitioners, Peter Dunn and

Paula Dunn (hereinafter "Petitioners"), and files their Petition for Damages and Demand for Jury

Trial against Defendant, Hanover Insurance Group (hereinafter "Defendant" or "Hanover"),

respectfully averring as follows:

**I. PARTIES**

**1.**

Made Plaintiffs herein are **Peter Dunn and Paula Dunn**, persons of the full age of majority

and residents of the Parish of St. Tangipahoa, State of Louisiana.

**2.**

Made Defendant herein is **HANOVER INSURANCE GROUP**, who, upon information

and belief, is an insurer authorized to do and doing business in the State of Louisiana and the Parish

of St. Tangipahoa, which may be served through its Registered Agent for Service of Process,

Louisiana Secretary of State 8585 Archives Avenue, Baton Rouge, Louisiana 70809.

**II. JURISDICTION AND VENUE**

**3.**

Jurisdiction is proper in this Honorable Court pursuant to Louisiana Code of Civil

Procedure, Article 2.

**4.**

Venue is proper in this Honorable Court pursuant to Louisiana Code of Civil Procedure

Article 76.

**III. RELEVANT FACTS**

**5.**

EXHIBIT
A

At all times relevant hereto, Petitioner owned the property located at 41069 Happywoods Rd., Hammond, Louisiana 70403 (the "Property").

**6.**

At all times relevant hereto, Hanover provided a policy of insurance, number HSO 8730260 (the "Policy"), to Petitioners which covered the Property against perils including hurricanes.

**7.**

On or around August 29, 2021, Hurricane Ida caused significant damages to Petitioners' Property.

**8.**

Petitioners promptly reported the loss(es) to Hanover, who assigned it claim number 19-00929277 (hereinafter the "Claim" or the "Ida Claim").

**9.**

Hurricane Ida caused a power outage at Petitioner's home which caused her to incur damages for loss of use of her property and additional living expenses including but not limited to food, gas, lodging, etc.

**10.**

Since there was no electricity at the Property for an extended period of time, Petitioner suffered losses in the form of spoiled food.

**11.**

Thereafter, a Hanover adjuster inspected the Property on behalf of Hanover and documented damages to the dwelling and other structures, but after over-depreciating the loss and applying the Policy's deductible, Hanover allowed only insufficient funds for Petitioners' losses.

**12.**

The Hanover adjuster's inspection of the Property constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La. R.S. §§ 22:1892 and 22:1973.

**13.**

Petitioners have incurred or will incur additional living expenses as a result of Ida.

**14.**

Defendant failed to provide adequate alternative living arrangements to Petitioners.

**15.**

Petitioner was unable to make meaningful repairs to her Property due to the lack of proceeds allowed by Hanover and promptly put Hanover on notice of its deficient claims handling.

**16.**

As a result of Hanover's failure to timely and adequately compensate Petitioner for her covered losses, she was forced to incur the expense of retaining counsel and other expenses to prosecute their claim.

**17.**

On or about February 14, 2022, CJ Claim Services, LLC ("CCS") inspected the property on behalf of Petitioner and created an estimate of damages documenting $108,415.75 in damages to the dwelling.

**18.**

Upon information and belief, demand for the release of unconditional tenders was sent to Hanover along with the CCS estimate, and photographs demonstrating the losses.

**19.**

The submission of the demand, CCS estimate, and photographs constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La. R.S. §§ 22:1892 and 22:1973.

**20.**

To date, Hanover has not adequately compensated Petitioner for her substantial and covered losses. Further, Hanover has never adequately adjusted the losses.

**21.**

As a result of Hanover's failure to timely and adequately compensate Petitioner for her substantial losses, Petitioner has not been able to restore the Property completely to its pre-loss condition, to date.

**23.**

Upon information and belief, Hanover's failure to timely and adequately compensate Petitioners for their loss, after receiving satisfactory proof of loss, was purposeful or at least negligent.

**24.**

Upon information and belief, Hanover purposely and/or negligently misrepresented to Petitioner the terms and conditions of the Policy.

25.

Upon information and belief, Hanover conducted the investigation and claims handling for Petitioner's Claim in bad faith, as that term is term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

26.

Upon information and belief, Hanover manipulated its pricing software to artificially suppress the cost of repairs below market value.

27.

Upon information and belief, Hanover purposely or at least negligently failed to include adequate overhead and profit in its estimate of damages.

28.

Petitioner has incurred or will incur additional expenses in repairing the Property as a result of HANOVER's failure to timely compensate her for her substantial and covered losses.

29.

Petitioner has incurred and/or will incur additional living expenses as a result of the damages caused to her Property by Hurricane Ida, including those additional living expenses that will be incurred during the repair of the Property.

### III. CAUSES OF ACTION

### A. Breaches of the Insurance Contract

30.

Petitioner realleges and re-avers the allegations contained in paragraphs 1-29, above, as if restated herein.

31.

An insurance contract, the Policy, exists between Petitioner and HANOVER.

32.

The Policy provides coverages for perils including hurricanes.

**33.**

Despite having received satisfactory proof of loss for damages caused by Hurricane Ida, HANOVER failed to timely tender adequate insurance proceeds as required by the Policy.

**34.**

By failing to timely tender adequate insurance proceeds after having received satisfactory proof of a covered loss by way of its own inspection(s), HANOVER breached the Policy.

**35.**

By failing to timely tender undisputed insurance proceeds after having received satisfactory proof of a covered loss by way of those independent proofs of loss submitted to HANOVER by Petitioner, HANOVER breached the Policy.

**36.**

By purposely and/or negligently misrepresenting to Petitioner the terms and conditions of the Policy, HANOVER breached the Policy.

**37.**

By failing to conduct the claims handling for Petitioner's Ida Claim in good faith and with fair dealing, HANOVER breached the Policy.

**38.**

By manipulating its pricing software to artificially suppress the cost of repairs below market value, HANOVER breached the Policy.

**39.**

By failing to include adequate overhead and profit in its estimates of damages, HANOVER breached the Policy.

**40.**

Petitioner has suffered and continues to suffer damages as a result of these breaches of the Policy.

**B. Bad Faith and Breaches of Duties of Good Faith and Fair Dealing**

### 41.

Petitioner realleges and re-avers the allegations contained in Paragraphs 1-40, above, as if restated herein.

### 42.

The actions and/or inactions of HANOVER in failing to timely and adequately compensate Petitioner for the covered losses under the Policy were arbitrary, capricious, and without probable cause—as those terms are used in conjunction with La. R.S. §§ 22:1892 and 22:1973, making HANOVER liable for statutory bad faith penalties.

### 43.

Under La. R.S. § 22:1973, an insurer owes a good faith duty and fair dealing to an insured and has an affirmative duty to adjust claims fairly and promptly; failing to pay a claim in a manner arbitrary, capricious or without probable cause is in violation of La. R.S. § 22:1973.

### 44.

"[F]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause" is considered "bad faith" and is in violation of La. R.S. § 22:1973.

### 45.

La. R.S. § 22:1892 imposes bad faith penalties on insurers who fail to adequately pay claims following satisfactory proof of loss within thirty (30) days.

### 46.

HANOVER is in violation of La. R.S. §§ 22:1973 and 22:1892 for failing to provide Petitioner adequate payment in connection with her Ida Claim, despite having received satisfactory proof of loss following its own inspections of the Property and following its receipt of independent proofs of loss from Petitioner.

### 47.

HANOVER's misrepresentation of the relevant facts and/or the terms of the Policy was in bad faith and constituted a breach of Defendant's duties of good faith and fair dealing.

### 48.

HANOVER's failure to pay timely for damages it knew, or should have known, existed at the time of the initial adjustment of the relevant claims was in bad faith and constituted a breach of Defendant's duties of good faith and fair dealing.

### 49.

HANOVER's failure to pay timely for damages it knew, or should have known, existed at the time it received independent proofs of loss from Petitioner was in bad faith constituted a breach of Defendant's duties of good faith and fair dealing.

### 50.

HANOVER's manipulation of its pricing software to artificially suppress the cost of repairs below market value was in bad faith constituted a breach of Defendant's duties of good faith and fair dealing.

### 51.

HANOVER's failure to include adequate overhead and profit in its estimates of damages was in bad faith and constituted a breach of Defendant's duties of good faith and fair dealing.

### 52.

HANOVER's handling of Petitioner's Ida Claim was in bad faith and constituted a breach of Defendant's duties of good faith and fair dealing.

### IV. DAMAGES

### 53.

Petitioner realleges and re-avers the allegations contained in Paragraphs 1-52, above, as if restated herein.

### 54.

As a result of HANOVER's breaches of contract, bad faith claims adjusting, and other bad acts, Petitioner has incurred the following, non-exclusive damages:

a.  Diminution of the value of the Property;

b.  Emergency repair, actual repair, remediation, and mitigation costs;

c.  Reimbursement for personal repairs at the Property;

d.  Actual costs related to personal property manipulation, cleaning, repair, and/or replacement;

e.  Additional living expenses;

f.  Loss of Use;

g.  Mental anguish and emotional distress;

h.  Actual, compensatory, and general damages proximately caused by Defendant's breaches of duties and breaches of contract;

i.  General damages, special damages, punitive damages, statutory penalties, and all other relief delineated in La. R.S. §§ 22:1892 and 22:1973;

j.  Attorney's fees, other professional fees and costs, and litigation costs associated with the bringing of this action; and

k.  All other losses that will be proven through discovery or at the trial of this matter.

## V. JURY DEMAND

### 55.

Petitioner requests a trial by jury.

## VI. PRAYER FOR RELIEF

### 56.

**WHEREFORE**, Petitioner, Peter Dunn and Paula Dunn, pray that, Defendant, Hanover Insurance Group, be served with a copy of this Petition and be duly cited to appear and answer the allegations contained therein, and that after expiration of all legal delays and proper legal proceedings, there be a judgment entered in favor of Petitioners, Peter Dunn and Paula Dunn, and against Defendant, Hanover Insurance Group, in an amount that will fully and fairly compensate Petitioner pursuant to the evidence and in accordance with the law, all sums with legal interest thereon, from the date of judicial demand until fully paid, for all costs of these proceedings, and for all general and equitable relief.

RESPECTFULLY SUBMITTED:

_____

Galen M. Hair, La. Bar No. 32865
Madison Pitre, La. Bar No. 38867
HAIR SHUNNARAH TRIAL ATTORNEYS, LLC.
**d/b/a INSURANCE CLAIM HQ**
**d/b/a INSURANCE CLAIM**
**LAWYERS, INC.**
3540 S. I-10 Service Rd. W., Suite 300
Metairie, Louisiana 70001
Telephone: 504.684.5200
Facsimile: 504.613.6351
hair@hairshunnarah.com
pitre@hairshunnarah.com

**PLEASE SERVE:**
**Hanover Insurance Group**
*Through its Registered Agent of Service of Process:*
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809

IN RE: HURRICANE IDA CLAIMS　　：　　STATE OF LOUISIANA

# FILED

:　　PARISHES OF ST. TAMMANY
　　　 AND WASHINGTON

AUG 24 2023

:　　22ND JUDICIAL DISTRICT COURT

MELISSA R. HENRY, CLERK
Deputy

Farrah Daws, Deputy Clerk

**DEPUTY CLERK**

## CASE MANAGEMENT ORDER

### REGARDING CERTAIN PROPERTY DAMAGE SUITS ARISING FROM HURRICANE IDA

On August 29, 2021, Hurricane Ida came ashore near Port Fourchon, Louisiana and left

destruction throughout St. Tammany and Washington Parishes as a major Hurricane.[1] Major

Hurricane-force winds measured at 110 mph inflicted catastrophic damage in this Court's

jurisdiction.[2] The causes of action arising therefrom may sometimes be referred to as "the

Hurricane Cases."[3]

In the aftermath of these catastrophic natural disasters, this Court recognizes a high

number of insurance coverage-related litigation linked to the Hurricane. In Act 318 of the

2021 Regular Session the Legislature of Louisiana amended the laws expanding judicial

authority related to special masters and mandatory mediation in cases stemming from certain

major disasters ("Act 318").[4]

Act 318 authorizes this court to issue this CMO, this Court finds it warranted to best

accommodate the adjudication of Hurricane cases in this Court.[5] Accordingly, this Court's

aim continues to be the just and expedient resolution of these related matters, in spite of the

increased strain on the Court's resources, and with the primary goal of enabling the St.

Tammany and Washington Parish communities to move forward with crucial recovery efforts,

in the aftermath of the Hurricane and the ongoing Coronavirus pandemic.

---

[1] https://www.theadvocate.com/baton_rouge/news/article_0cc1dc86-0a90-11ec-827e-6342102b8d5d.html
[2] https://wgno.com/news/first-look-st-tammany-parish-ida-footage-shows-boat-flipped-on-its-top-while-connected-to-suv/ and https://www.weather.gov/lix/hurricaneida2021
[3] All causes of action concerning damage related to Hurricane Ida is subject to this Order, including causes of action where the third-party demand or cross claim is a claim against an insurer by an insured due to damage from the Hurricane.
[4] Hurricane Ida qualifies pursuant to R.S. 13:4165(F)(1). A major disaster declaration was made by the President for St. Tammany and Washington Parishes in Hurricane Ida under FEMA Release No. HQ-21-181. St. Tammany and Washington Parishes qualified for individual assistance for the Hurricane (FEMA designation DR-4611-LA).
[5] Hurricane Ida ties Hurricane Laura for the strongest hurricane to hit Louisiana and the fifth strongest Hurricane to hit the United States. Act 318 was enacted in the aftermath of Hurricane Laura and this CMO is modeled extensively on the CMO successfully adopted by the 14th Judicial District Court following Hurricane Laura.

**IT IS HEREBY ORDERED** that this Case Management Order shall be immediately applicable to all Hurricane Cases currently pending or hereafter filed in this Court.

**SECTION 1. DISASTER PROTOCOLS FOR INITIAL DISCLOSURES**

The Court has reviewed the Disaster Litigation Initial Discovery Disaster Protocols adopted by the United States District Court for the Western District of Louisiana, applicable to all Hurricane Cases[6] and the nearly identical Disaster Protocols implemented by the U.S. District Court for the Southern District of Texas following Hurricane Harvey.[7] These Disaster Protocols call for prompt sharing of specific information to promote uniformity, to facilitate prompt evaluation of each case, to foster communication between the parties, and to facilitate an expedited mediation procedure.

Accordingly, this Court has adopted the Disaster Protocols attached hereto as Exhibit "A" in the Disaster Protocols Order and makes them applicable to all Hurricane cases filed in this Court. Additionally, **IT IS HEREBY ORDERED** that there shall be an automatic extension of time to Answer in every Hurricane case until the 30th day after service of the plaintiff's petition. No further extensions of time shall be granted except in exigent circumstances.

Additionally, **IT IS HEREBY ORDERED** that the disclosures and exchange of information required by the Disaster Protocols Order shall be due 45 days from the date that defendant files responsive pleadings. This deadline may sometimes hereinafter be referred to as the "Disclosure Deadline". Even if the parties agree to further extension of time to file responsive pleadings, the Disclosure Deadline shall be no more than 90 days from the service of the petition unless the extension of the Disclosure Deadline is expressly extended by the written consent of all parties or pursuant to an express Order of this Court to extend it.

**IT IS FURTHER ORDERED** that each party shall supplement their Initial Disclosures at least twenty-one days prior to any scheduled mediation pursuant to the CMO.[8]

**IT IS FURTHER ORDERED** that all other discovery is stayed until certification of the completion of the SSP. However, the Special Master may authorize limited formal

---

[6] https://www.lawd.uscourts.gov/sites/lawd/files/UPLOADS/Hurricane_Laura_Delta_CMO_1_Att_A_Dis covery_Protocols.062121.tzd_0.pdf
[7] *United States District Court for the Southern District of Texas,* Disaster Litigation Initial Discovery Protocols, *available at*
https://www.txs.uscourts.gov/sites/txs/files/Disaster%20FINAL%20Web%20version.pdf
[8] If the Special Master finds a production under the Disaster Disclosures too voluminous or disorganized to be useful for the SSP, he may require that the Disaster Disclosures be bates numbered and organized with a Table of Contents.

discovery during the SSP in extraordinary circumstances.

## SECTION 2. PRIVILEGE

Documents for which a privilege may properly be asserted include communications that reflect the mental impressions, conclusions, opinions, or theories of an attorney.[9] However, as recognized by federal courts concerning hurricane cases "Documents routinely prepared in the ordinary course of business, including but not limited to adjusters' reports, and other expert analyses, including draft reports, are not privileged and should be produced."[10]

Therefore, **IT IS FURTHER ORDERED** that any party withholding disclosure of any information or documents, where said disclosure is required pursuant to the Disaster Protocols, shall produce a privilege log to opposing counsel on or before the Disclosure Deadline. This privilege log shall detail all information or documents that it declined to produce on the basis of that the material is privileged. The log should include the author of the document, the recipient of the document, the date of the document, and the nature of the privilege asserted.

Any dispute concerning privileged items shall be referred to the Special Master. If a motion to compel related to the privilege log is filed, or if any other privilege dispute is raised with the Special Master, the disputed items shall be provided to the Special Master *in camera* within ten days. The Special Master or his designated deputy shall provide all parties with a report and recommendation concerning the claimed privilege.

If neither party opposes the report and recommendation within seven days of its receipt then the Court may issue an Order confirming it. If either party opposes the report and recommendation within seven days of its receipt then the report shall be transmitted to the Court by the Special Master together with the *in camera documents*. The opposing party may file a memorandum concerning the report and recommendation within seven days of receiving the report, and any other party may file a response within five days of the filing of the

---

[9] La. C.C.P. art. 1424(A)

[10] United States District Court for the Western District of Louisiana, *In Re Hurricane Laura and Delta Cases: Case Management Order No. 1*, p. 3, *available at* https://www.lawd.uscourts.gov/sites/lawd/files/UPLOADS/Hurricane_Laura_Delta_CMO_1.012221.tzd.pdf

United States District Court for the Eastern District of New York, *In Re Hurricane Sandy Cases: Case Management Order No. 1*, p. 10, *available at* https://img.nyed.uscourts.gov/files/general-ordes/14mc41cmo01.pdf.

opposition.

## SECTION 3. SPECIAL MASTER AND APPOINTED NEUTRALS

Considering the foregoing reasons supplied by the Court in the introduction *infra*, the Court finds that exceptional circumstances exist which warrant the appointment of a Special Master to assist with the efficient and fair administration of all Hurricane Cases. Pursuant to the Court's inherent judicial power and its authority under La. R.S. 13:4165, *et seq*, it is ordered that **THE COURT HEREBY APPOINTS CADE R. COLE, ESQ.** as the Special Master for Hurricane Cases in the 22nd Judicial District Court.

The Court takes specific notice of his role as Special Master under the CMO for Hurricane cases in other state district courts. The Court anticipates that this appointment and continued coordination with any federal Special Master will encourage consistent resolutions of Hurricane Cases. As part of their appointment, the Court mandates that the Special Master shall proceed with all reasonable diligence and shall exercise their respective rights and responsibilities to direct the Streamlined Settlement Process as provided in this Order.

**IT IS FURTHER ORDERED** that the Neutrals, referenced in Section 4(II)(B), *supra*, are hereby appointed and shall proceed with all reasonable diligence and shall exercise their rights and responsibilities under the Streamlined Settlement Process ("SSP") as the Special Master may direct.

### I.    *The Special Master*

The Special Master shall administer, coordinate, and preside over the SSP. This authority includes the power to order parties and/or party representatives with full power of settlement to submit briefing, engage in discovery, and attend settlement conferences. The Special Master may enter any other order to effectuate the provisions of the SSP, subject to the review and control of the Court.

### II.    *Compensation of Appointed Neutrals*

The Special Master, his designated deputies, and all other appointed neutrals under the SSP (the "Appointed Neutrals") shall be compensated in the amount of:

A. $400 per hour for the Special Master or Appointed Neutrals;

B. $280 per case for the Special Master for administrative expenses in administering, scheduling, organizing, and coordinating the Streamlined Settlement Process for each case amongst the parties as well as with the Appointed Neutrals; and

C. all actual expenses of the Appointed Neutrals, including but not limited to travel, meeting rooms, telephone, and electronic audio or video conference means.

Unless otherwise directed by mutual agreement of the parties or as otherwise directed by the Special Master, all of the above fees and expenses shall be paid twenty-

.five percent (25%) by the plaintiff(s) and seventy-five (75%) by the defense(s).[11]

**IT IS FURTHER ORDERED** that $70 of the administrative fee provided for in Section II(B) shall be added to the cost of filing the petition, collected by the clerk of court, and remitted monthly to the Special Master; and that $210 of the administrative fee provided for in Section II(B) shall be added to the cost of the first notice or filing by the defendant, collected by the clerk of court, and remitted monthly to the Special Master.

### III.    Role of Appointed Neutrals

A. The Special Master and Appointed Neutrals may communicate *ex parte* with the Court when deemed appropriate by the Special Master, at his discretion, without providing notice to the parties, including communication certifying that the parties have complied with the requirements of the SSP.

B. The Special Master and Appointed Neutrals may initiate contact and communicate with counsel for any party as he or she deems appropriate with respect to the efficient administration and management of the SSP.

C. The Special Master and Appointed Neutrals, the parties, and those assisting the foregoing shall be bound by the confidentiality of the settlement discussions.

D. The Special Master may designate any of the Appointed Neutrals to act as his deputy from time to time and to perform any duties of the Special Master.

E. If an Appointed Neutral reports that a case did not settle due to a party's failure to comply with its obligations under the Disaster Protocols, including the obligation to supplement the Disaster Disclosures at least twenty-one (21) days prior to the mediation, the Special Master may order another mediation and may assess the full cost of the first mediation against the party in violation.

### IV.    Notice to the Special Master.

Any party to a Hurricane Case may file a motion with the assigned District Judge requesting an opt out from the SSP only for good cause shown within the applicable deadline (*see* Section 4 below). **IT IS FURTHER ORDERED** that any party filing an opt out motion shall copy the Special Master, and that the parties shall provide notice of the Court's Order on the motion to opt out to the Special Master whether the motion to opt out is granted or denied.

**IT IS FURTHER ORDERED** that counsel for any party to a Hurricane Case that has been provided a copy of this Order shall be required to provide email notice to the Special Master of the initial pleadings and all subsequent filings in any Hurricane . Case (knowledge of this provision is presumed where a counsel for the party has been provided a copy of this Order for a case for that party or any other party). The Special Master shall send an Initial Informational Package on the SSP to all parties and/or counsel of record for Hurricane Cases subject to the SSP.

## SECTION 4. STREAMLINED SETTLEMENT PROCESS ("SSP")

Within 15 days of the filing of the defendant's responsive pleading (or within 15 days

of the receipt of a copy of this Order by the defendant or its counsel, including by electronic

or other means – whichever is later), either party may file a motion to opt out of this

---

[11] In instances where an insurer of an insured has filed suit against the insured concerning a Hurricane case the insured shall be considered the plaintiff for the purposes of the cost split under this order and the insurer shall be considered the defendant. It is generally customary in the event of settlement that a condition of settlement be that the insurer pays court costs and costs of the SSP/mediation.

Streamlined Settlement Process for good cause shown. This motion may be decided on the briefs without hearing. Unless the Court authorizes an opt out, then the parties shall participate in the two-staged Streamlined Settlement Process, which is described as follows:

### I.    First Stage: Settlement Conference

Within 45 days of the Disclosure Deadline in all Hurricane Cases, all parties shall conduct an informal settlement conference ("ISC") among all parties and their counsel. Within 15 days of the Disclosure Deadline counsel shall meet to confer and discuss a mutually convenient time, date, and manner for the conference. In light of the COVID-19 pandemic as well as the desire to resolve the Hurricane Cases as expeditiously as possible, settlement conferences should be conducted, where possible, by phone or audiovisual communication, including but not limited to Zoom, Skype, or similar platforms.

Counsel for each plaintiff and for each defendant must have full authority to resolve the case from their clients, who shall be readily available by telephone if circumstances for the ISC require assistance.

The ISC shall include a particularized demand from the plaintiff that is itemized by each claimed policy coverage category then known to be remaining in dispute and/or any existing demand for extra-contractual damages that are then claimed to be incurred. The demand shall be submitted by email to the opposing counsel on the form attached as Exhibit "C" at least 72 hours prior to the scheduled ISC.

The attorney for the insurer will conduct a call prior to the ISC with the relevant client representative to ensure the client representative has reviewed the ISC demand. The client representative will inform their counsel concerning additional information requested to evaluate the claim, and their counsel shall convey that to opposing counsel at the ISC or in writing. The insurer shall submit by email to the opposing counsel an itemization of the prior payments awarded by coverage category on the form attached as Exhibit "D" at least 72 hours prior to the scheduled ISC.

The defendant shall respond at the ISC to briefly detail why it does not agree with the demand by category. The plaintiff may request that this response be reduced to writing, and if requested it shall be answered within 15 days of the ISC.

All ISC communications shall be covered by mediation confidentiality. The Special Master may order any particular modifications in this protocol for specific cases, parties, or attorneys.

### II.    Second Stage: Mediation

Cases that do not resolve during the initial settlement conference shall be set for a formal mediation. The parties shall provide the Special Master written notice (including by email and preferably jointly) of completion of the First Stage along with a request for mediation. The Special Master may assign a neutral within 60 days of the Disclosure Deadline even if neither party submits the written notice. The Special Master shall then assign each Hurricane Case to an Assigned Neutral, and it is the goal that Assigned Neutrals complete mediation within 90 days of appointment. The Special Master (or Appointed Neutral for the case) may set a scheduling conference, or communicate with counsel about availability through other means, but shall seek to schedule the mediations in an expeditious manner at mutually convenient times and dates for all parties. In the event a counsel provides an insufficient number of available dates the Special Master may authorize an extension of the SSP period for that case or may require mediation on a date selected by the Special Master, including on a weekend day.

#### A.    Conduct of Mediation

After scheduling of an agreed mediation, counsel for each party shall submit confidential statements solely to the appointed neutral. The appointed neutral shall determine, after conferring with the parties, on the length of the confidential mediation statements and the permissible number of exhibits attached thereto.

Plaintiff(s) shall be present in-person along with counsel (subject to accommodations approved by the case's Appointed Neutral). Defense counsel shall also attend in-person. A representative from defendant(s) is encouraged to attend, but unless otherwise directed by the Special Master the defendant(s) representative shall not be required to attend if counsel for the defendant has full authority to resolve the case. In addition, a representative of the defendant shall be readily available by telephone, if circumstances for that particular mediation require assistance.

To the extent agreed by the parties and the case's Appointed Neutral, this mediation conference may be conducted by phone or other means of electronic audio or video communication, including but not limited to Zoom, Skype, or similar platforms.

As part of this Streamlined Settlement Process, the attendees may be invited to each make opening statements but there shall be no live witness testimony.

### B. List of Neutrals

The Court hereby initially designates and appoints the following individuals as "neutrals" (mediators) for the SSP:

Any person designated by the Special Master after consultation with the Court who is qualified pursuant to R.S. 13:4165(F)(5).

### C. Neutral Training

The Special Master may undertake to provide special training to the neutrals, including coordinating participation in training prepared for the Streamlined Settlement Process. The Special Master may form a plaintiffs' liaison committee and a defense liaison committee or may coordinate with any related Federal Court liaison committees for Hurricane Cases. If formed, the Special Master may solicit input and responses concerning commonly occurring legal issues that the liaison committees, from experience, believe may arise in a large number of these cases, along with relevant case law or other authority addressing these issues. While the ultimate determination of any such common issue may well be fact driven, and the outcome of any legal issue will be determined by the Court, the Special Master may seek this information in order to educate and fully prepare the appointed neutrals with the hope of expediting the settlement process. The Special Master may facilitate discussions by and among the appointed neutrals to promote, to the extent possible, consistency in the resolution of cases.

### III.    Extensions of Time

Upon a joint request by the parties, or for other good cause shown, the Special Master may extend any deadline specified in this Order.

### SECTION 5. COURT APPOINTED UMPIRES REQUIRED UNDER POLICIES

If an insurance policy implicated in a Hurricane Case provides for court appointment of a neutral or third appraiser for valuation disputes (hereinafter referred to as an "Umpire"),

any request for the appointment by this Court of an Umpire shall only occur if the parties have been unable to agree on their own.

Any request for the appointment by the Court of an Umpire shall be made in writing no later than the deadline for filing of the defendant's responsive pleading. Any motion or request for this Court's appointment of an Umpire shall be submitted to the Special Master via email at Hurricaneida@colelaw.us . This deadline may be extended by the Special Master in exceptional circumstances for good cause.

If a requesting party is seeking court appointment of an Umpire and no case is otherwise filed or pending before this Court (an "Umpire Only Filing"), then the parties shall follow the same procedures.

An Insurer is required to provide written notice of the request to any known counsel for the Insured (or directly to an unrepresented Insured). An Insured is required to provide written notice of the request to any known counsel of Insurer (if any) or alternatively to the Insurer's primary point of contact on the claim with Insured. The appraisers previously selected by each party shall also be provided notice, and their contact information (phone and email address) shall be provided in the request for appointment of an Umpire.

A written report and recommendation concerning the Umpire's appointment shall be issued to the parties and shall be deemed applicable to the parties in the same manner as if made by an order of the Court unless the report and recommendation is overturned by the assigned District Judge for good cause following a motion opposing the report and recommendation filed within seven days of transmittal of the written report and recommendation. Alternatively, the Special Master may issue the report and recommendation to the Court, and the Court may directly issue an Order concerning the appointment.

In an Umpire Only Filing, the Special Master may provide the report and recommendation to the civil Duty Judge as of the time of the issuance of the report and recommendations. Alternatively, the Special Master may issue the report and recommendation to the parties in the same manner described in the paragraph above. If any party objects to the report and recommendation in an Umpire Only Filing then it shall file a formal petition concerning the underlying dispute within seven days and the case shall be assigned to a judge in the usual manner for a decision concerning the report.

**IT IS ORDERED** that the appraisers appointed by the parties are required to complete

8

their work and submit any disputes to the Umpire no later than 60 days following the first Initial Disclosure Deadline under this Order (105 days following the filing of the defendant's responsive pleadings). The appointed Umpire shall issue his report no later than 21 days from the submission of the dispute to the Umpire. This period may be extended by the Special Master upon a showing of good cause.

**SECTION 7.    CLERK OF COURT AND NOTICE**

A Plaintiff filing a Hurricane Case should note on its cover letter, in ***ALL CAPS*** and ***RED FONT***, that the matter is a "HURRICANE CASE". **Each caption and on each pleading, "HURRICANE CASE" in bold print shall follow the docket number.** If the Special Master learns the Order has not been entered by the Clerk of Court, he shall serve it on the parties by email and may file proof of the same into the record at no cost.

In all subsequently filed Hurricane Cases, a copy of this order shall be served on the defendant(s) along with the Petition and Citation. The Clerk of Court shall include a reference that the Case Management Order is served with the Petition in the Citation issued. The Clerk of Court shall also provide a copy to the plaintiff by any authorized means.

The Clerk of Court shall transmit via email, at least weekly, to the Special Master the docket numbers, case caption, and attorney contact information for any Hurricane Cases filed.

Any party making any filing or submitting any memoranda in a Hurricane Case subject to this Order shall serve a courtesy copy on the Special Master in the same manner as enrolled counsel via email at HurricaneIda@colelaw.us .

**SECTION 7.    COURT SUPERVISION**

The Disaster Protocols and Streamlined Settlement Process shall, at all times, be subject to the ultimate control and supervision of the Court. This Case Management Order for Hurricane Cases is subject to modification pursuant to further orders of this Court. All provisions of this Order shall be applicable to all cases whether then pending or thereafter filed.

SO ORDERED on this _20th_ day of _November_, 2021, at _Covington_, Louisiana.

Hon. Raymond S. Childress
District Judge, Div. A

Hon. August J. Hand
District Judge Div, B
11/29/2021

9

Hon. Judge Richard Swartz
District Judge, Div. C

Hon/ John A. Keller
District Judge Div. D

Hon. William H. Burris
District Judge, Div. E

Hon. Vincent J. Lobello
District Judge Div. F

Hon/Scott Gardner
District Judge, Div. G

Hon. Alan A. Zaunbrecher
District Judge Div. H

Hon. Reginald T. Badeaux, III
District Judge, Div. I

Hon. Ellen M. Creel
District Judge Div. J

IN RE: HURRICANE IDA CLAIMS     :     STATE OF LOUISIANA

FILED

    :     PARISHES OF ST. TAMMANY AND WASHINGTON

AUG 2 4 2023

    :     22ND JUDICIAL DISTRICT COURT

MELISSA R. HENRY, CLERK
Deputy

DEPUTY CLERK

Farrah Daws, Deputy Clerk

## INTERIM PROTECTIVE ORDER

The Initial Discovery Protocols are designed to achieve more efficient and targeted discovery. Prompt entry of a protective order will allow the parties to begin exchanging documents and information without delay. The Interim Protective Order will remain in place until the parties agree to, or the court orders, a different protective order, but absent agreement or court order, the Interim Protective Order will not apply to subsequent discovery. The parties may agree to use the Interim Protective Order throughout litigation.

IT IS HEREBY ORDERED that the following restrictions and procedures apply to certain information, documents, and excerpts from documents and information the parties exchange in response to the Disaster Protocols:

1. Any party may designate as "Confidential" any document, or information contained in or revealed in a document, provided in response to these Protocols or, if applicable, in subsequent discovery, if the party determines, in good faith, that the designation is necessary to protect the party. Information and documents a party designates as confidential will be stamped "CONFIDENTIAL." Confidential information or documents are referred to collectively as "Confidential Information."

2. Unless the court orders otherwise, the Confidential Information disclosed will be held and may be used by any person receiving the information solely in this litigation.

3. If a party challenges another party's Confidential Information designation, counsel must make a good-faith effort to resolve the dispute. If that is unsuccessful, the challenging party may seek resolution by the court. Nothing in this Interim Protective Order is an admission by any party that Confidential Information disclosed in this case is relevant or admissible. Each party specifically reserves the right to object to the use or admissibility of all Confidential Information disclosed, in accordance with applicable law and court rules.

11

4.  Information or documents designated as "Confidential" must not be disclosed to any person, except:

    a.  the requesting party and counsel, including in-house or agency counsel;

    b.  employees of counsel assigned to and necessary to assist in the litigation;

    c.  consultants or experts assisting in the prosecution or defense of the litigation, to the extent deemed necessary by counsel;

    d.  any person from whom testimony is taken or is to be taken in this litigation, but that person may be shown the Confidential Information only in preparation for, and during, the testimony and may not retain the Confidential Information; and

    e.  The judge, the court staff, including the clerk, case manager, court reporter, or other person with access to Confidential Information by virtue of his or her position with the court, or the jury.

    f.  The Special Master, his designated deputy, and any mediator involved in resolving the case, who shall all be subject to these confidentiality provisions.

5.  Before disclosing or displaying Confidential Information to any person, a party must:

    a.  inform the person of the confidential nature of the information and documents; and

    b.  inform the person that the court has enjoined the use of the information or documents for any purpose other than this litigation and has enjoined the disclosure of that information or documents to any other person.

6.  The Confidential Information may be displayed to and discussed with the persons identified in Paragraphs 4(c) and (d) only on the condition that before any such display or discussion, each person must be asked to sign an agreement to be bound by this Order in the form attached as Exhibit 1. If the person refuses to sign an agreement in the form attached, the party seeking to disclose the Confidential Information may seek relief from the court.

7.  The disclosure of a document or information without designating it as "Confidential Information" does not waive the right to designate the document or information as Confidential Information if the document or information is designated under this Order.

8.  Documents or information filed with the court that is subject to confidential treatment under this Order, and any pleadings, motions, or other papers filed with the court disclosing any Confidential Information, must be filed under seal to the extent permitted by the law, rules, or court orders, and must be kept under seal until the court orders otherwise. To the extent the court requires any further act by the parties as a precondition to filing the documents or information under seal, the party filing the document or information is responsible for satisfying the requirements. If possible,

only the confidential parts of documents of information filed with the court will be filed under seal.

9. At the conclusion of this litigation, the Confidential Information and any copies must be promptly (and in no event later than 60 days after entry of final judgment no longer subject to appeal) returned to the producing party or certified as destroyed, except that the parties' counsel may retain their working files on the condition that those files will remain confidential. Materials filed in the court will remain in the file unless the court orders their return.

10. Producing documents or information, including Confidential Information, in this litigation does not waive attorney-client privilege or work-product protection for the documents or information, under Louisiana Code of Evidence Article 502.

This Order shall not diminish the right of any party to apply to the court for a different or additional Protective Order relating to Confidential Information, to object to the production of documents or information, to apply to the court for an order compelling production of documents or information, or to modify this Order. Any party may seek enforcement of this Order, and any violation of this Order may be sanctioned by the Court.

SO ORDERED on this ___7___ day of _December_, 2021, at ___Covington___, Louisiana.

_____
Hon. Raymond S. Childress
District Judge, Div. A

_____
Hon. Judge Richard Swartz
District Judge, Div. C

_____
Hon. William H. Burris
District Judge, Div. E

_____
Hon. Scott Gardner
District Judge, Div. G

_____
Hon. Reginald T. Badeaux, III
District Judge, Div. I

_____
Hon. August J. Hand
District Judge Div. B

_____
Hon. John A. Keller
District Judge Div. D

_____
Hon. Vincent J. Lobello
District Judge Div. F

_____
Hon. Alan A. Zaunbrecher
District Judge Div. H

_____
Hon. Ellen M. Creel
District Judge Div. J

13

## EXHIBIT 1

I have been informed by counsel that certain documents or information to be disclosed to me in connection with the matter entitled _____ have been designated as confidential. I have been informed that any of the documents or information labeled "CONFIDENTIAL" are confidential by Order of the Court.

I hereby agree that I will not disclose any information contained in the documents to any other person. I further agree not to use this information for any purpose other than this litigation.


_____    **DATE:** _____

Signed in the presence of:



_____


(Attorney)

14

IN RE: HURRICANE IDA CLAIMS    :      STATE OF LOUISIANA

                                   :      PARISHES OF ST. TAMMANY
                                         AND WASHINGTON

                                   :      22ND JUDICIAL DISTRICT COURT

## EXHIBIT "B"

### STIPULATION FOR MEDIATION

**IT IS HEREBY STIPULATED AND AGREED** by and between the undersigned parties:

1. The parties agreed to submit their dispute to mediation pursuant to the SSP, as specified in the Case Management Order (and any relevant supplements).

2. No party shall be bound by anything said or done during the mediation, unless either a written and signed stipulation is entered into or the parties enter into a written and signed agreement. The appointed neutral may meet in private conference with less than all parties. Information obtained by the neutral, either in written or oral form, shall be confidential and except as provided by Order of the Court it shall not be revealed by the neutral unless and until the party who provided the information agrees to its disclosure.

3. The mediation process, for the purpose of all federal and state rules protecting disclosures made during such conferences from later discovery or use in evidence, shall be considered a settlement negotiation. The entire procedure shall be confidential, and no stenographic or other record shall be made except to memorialize a settlement record. All communications, oral or written, made during the mediation by any party or a party's agent, employee, or attorney are confidential and, where appropriate, are to be considered work product and privileged. Such communications, statements, promises, offers, views and opinions shall not be subject to any discovery or admissible for any purpose, including impeachment, in any litigation or other proceeding involving the parties. However, any evidence which would otherwise subject to discovery or admissible shall not be excluded from discovery or admission in evidence solely because it has been referenced or discussed during this mediation process.

4. The appointed neutral and their agents shall enjoy the same immunity as judges and court employees, whether under federal or state law, for any act or omission in connection with the mediation, and from compulsory process to testify or produce documents in connection with the mediation.

5. The parties shall not:

1

(i) Call or subpoena the appointed neutral as a witness or expert in any proceeding relating to: the mediation, the subject matter of the mediation, or any thoughts or impressions which the appointed neutral may have about the parties in the mediation;

(ii) Subpoena any notes, documents, or other material prepared by the appointed neutral in the course of or in connection with the mediation; and

(iii) Offer into evidence any statements, views or opinions of the appointed neutral.

6.    The appointed neutral's services have been made available to the parties through the dispute resolution procedures sponsored by the Court. In accordance with those procedures, the appointed neutral represents that he or she has taken requisite oaths.

7.    Any party to this Stipulation is required to attend at least one session and as may be directed by the Special Master as many other sessions thereafter as may be helpful in resolving this dispute.

8.    An individual with final authority to settle the matter and to bind the party shall attend the mediation on behalf of each party.

---

**PLAINTIFF**

Date: _____

**COUNSEL FOR PLAINTIFF**

Date: _____

---

**DEFENDANT**

Date: _____

**COUNSEL FOR DEFENDANT**

Date: _____

**CONSENTED TO BY:**

---

**NEUTRAL APPOINTED BY THE COURT**

Date: _____

2

IN RE: HURRICANE IDA CLAIMS     :     STATE OF LOUISIANA

                    :     PARISHES OF ST. TAMMANY
                             AND WASHINGTON

                    :     22ND JUDICIAL DISTRICT COURT

## EXHIBIT "C"

### FORM FOR ISC DEMAND BY INSURED

| Category | Policy Limits | Damage | Prior Payments | ISC DEMAND |
|---|---|---|---|---|
| A. Property | _____ | _____ | _____ | _____ |
| B. Other Structures | _____ | _____ | _____ | _____ |
| C. Personal Property | _____ | _____ | _____ | _____ |
| D. ALE | _____ | _____ | _____ | _____ |
| Claim for Penalties on Late Prior Payments | | | | _____ |
| Claim for Penalties on ISC Demand | | | | _____ |
| Claim for Attorney's Fees | | | | _____ |
| Claim for Other Damages (describe below): | | | | _____ |
| TOTAL | | | | _____ |

This demand is for the purposes of mediation only and is covered by mediation confidentiality. It may not be used for any other purpose. It is rescinded if the case does not settle as part of the SSP. The plaintiff reserves the right to modify the demand based on additional information. The plaintiff reserves the right to claim expert costs, judicial interest, and mental anguish / economic damages and related penalties pursuant to R.S. 22:1973 at any trial of this matter even if they are not listed above.

IN RE: HURRICANE IDA CLAIMS    :        STATE OF LOUISIANA

                              :        PARISHES OF ST. TAMMANY
                                       AND WASHINGTON

                              :        22ND JUDICIAL DISTRICT COURT

## EXHIBIT "D"

### FORM FOR ISC DETAIL OF PAYMENTS BY INSURER

| Category | Policy Limits | Prior Payments |
|---|---|---|
| A. Property | _____ | _____ |
| B. Other Structures | _____ | _____ |
| C. Personal Property | _____ | _____ |
| D. ALE | _____ | _____ |
| OTHER: | _____ | _____ |
| TOTAL | _____ | _____ |

4

IN RE: HURRICANE IDA CLAIMS          :          STATE OF LOUISIANA

**FILED**                                      :          PARISHES OF ST. TAMMANY AND
                                                         WASHINGTON

AUG 2 4 2023                          :          22ⁿᵈ JUDICIAL DISTRICT COURT

MELISSA R. HENRY CLERK
Deputy _____                          _____
Farrah Daws, Deputy Clerk                       **DEPUTY CLERK**

**STANDING ORDER REGARDING INITIAL DISCOVERY PROTOCOLS IN CERTAIN
PROPERTY DAMAGE SUITS ARISING FROM HURRICANES IDA**

This Court hereby **ORDERS** the that the following protocols for initial discovery disclosure ("Disaster Protocols") shall be observed in all cases involving first-party insurance property damage claims arising from Hurricane Ida ("Hurricane Cases"):

Within 45 days after the defendant's submission of a responsive pleading or motion, the parties must exchange any documents or information categorized under the Disaster Protocols, for any such time periods identified in the Disaster Protocols. All parties shall remain under an ongoing duty to supplement these responses. No extension or delay in the time to file responsive pleadings shall extend the Disclosure Deadline to more than 90 days from the service of the petition unless the extension is by the consent of all parties or pursuant to an express Order of this Court extending the Disclosure Deadline. A supplemental response is due 21 days prior to mediation.

A party may object to disclosure of these initial discovery materials *only* if the material falls within one of the categories specifically enumerated in the Disaster Protocols – including, but not limited to, attorney-client privileged material, or work-product protection, including any joint defense agreement. Should any party raise such an objection, the non-disclosing party shall provide a log of all material being withheld from disclosure, which shall include the specific grounds upon which the disclosure is being withheld.

If any party believes that there is good cause why a particular case should be exempted from the Disaster Protocols, in whole or in part, that party must file their objection with the court prior to

1

the expiration of the 45-day period set forth herein.

**SO ORDERED** on this _20 th_ day of _December_, 2021, at _Covington_,

Louisiana.

_____
Hon. Raymond S. Childress
District Judge, Div. A

_____
Hon. Judge Richard Swartz
District Judge, Div. C

_____
Hon. William H. Burris
District Judge, Div. E

_____
Hon. Scott Gardner
District Judge, Div. G

_____
Hon. Reginald T. Badeaux, III
District Judge, Div. I

_____
Hon. August J. Hand    _11/25/2021_
District Judge Div. B

_____
Hon. John A. Keller
District Judge Div. D

_____
Hon. Vincent J. Lobello
District Judge Div. F

_____
Hon. Alan A. Zaunbrecher
District Judge Div. H

_____
Hon. Ellen M. Creel
District Judge Div. J

2

## EXHIBIT "A"

## INITIAL DISCOVERY PROTOCOLS FOR FIRST-PARTY INSURANCE PROPERTY DAMAGE CASES ARISING FROM HURRICANE IDA

### PART 1: INTRODUCTION AND DEFINITIONS.

(1) Statement of purpose.

    a.   These Disaster Litigation Initial Discovery Protocols ("Disaster Protocols") apply to cases involving first-party insurance property damage claims arising from man-made or natural disasters ("Disaster Cases"). The Disaster Protocols are designed to be implemented by trial judges, lawyers, and litigants in state and federal courts. The Disaster Protocols make it easier and faster for the parties and their counsel to: (1) exchange important information and documents early in the case; (2) frame the issues to be resolved; (3) value the claims for possible early resolution; and (4) plan for more efficient and targeted subsequent formal discovery, if needed.

    b.   Participating courts may implement the Disaster Protocols by local rule or by standing, general, or individual-case orders. Although the Disaster Protocols are designed for the full range of case size and complexity, if any party believes that there is good cause why a case should be exempted, in whole or in part, from the Disaster Protocols, that party may raise the issue with the court.

    c.   The Disaster Protocols are not intended to preclude or modify any party's rights to formal discovery as provided by law, code or other applicable rules. Responses to the Disaster Protocols do not waive or foreclose a party's right to seek additional discovery under the applicable rules.

    d.   Except as modified by the court, the Disaster Protocols were prepared by a balanced group of highly experienced attorneys from across the country with expertise in Disaster Cases. The Disaster Protocols require parties to exchange information and documents routinely requested in every Disaster Case ("Initial Discovery"). This Initial Discovery is unlike initial disclosures under federal or state rules because it includes favorable as well as unfavorable information and documents, is limited to information and documents that are not subject to objection, and is limited to the information and documents most likely to be important and useful in facilitating early settlement discussion and resolving or narrowing the issues requiring further litigation

(2) Definitions. The following definitions apply to cases under the Disaster Protocols.

    a.   *Claimed Loss.* "Claimed Loss" means the loss or damage that the Insured seeks to recover from the Insurer in the litigation.

3

b. **Document.** "Document" and "documents" are defined to be synonymous in meaning and equal in scope to the phrase "documents or electronically stored information" in FRCP 34(a)(1)(A) or similar state rules. A draft of a document or a nonidentical copy is a separate document.

c. **Event.** "Event" means the disaster alleged to have caused the Insured's Claimed Loss.

d. **Identify (Documents).** When referring to documents, to "identify" means to describe, to the extent known: (i) the type of document; (ii) the general subject matter; (iii) the date; (iv) the author(s), according to the document; and (v) the person(s) to whom, according to the document, the document (or a copy) was to have been sent. Alternatively, to "identify" a document means to produce a copy.

e. **Identify (Natural Persons).** When referring to natural persons, to "identify" means to give the person's: (i) full name; (ii) present or last known address and telephone number; (iii) email address; (iv) present or last known place of employment; (v) present or last known job title; and (vi) relationship, if any, to the parties. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent requests to identify that person.

f. **Identify (Non-Natural Persons or Entities).** When referring to a corporate entity, partnership, or other unincorporated association, to "identify" means to give the: (i) corporate or entity name and, if known, the trade or other names under which it has done business during the relevant time period; (ii) state of incorporation or registration; (iii) address of its principal place of business; (iv) primary phone number; and (v) internet address. Once a corporate or other business entity has been identified in accordance with this subparagraph, only the name of that entity needs to be listed in response to subsequent requests to identify that entity.

g. **Insurer.** "Insurer" means any person or entity alleged to have insured the Property that is the subject of the operative complaint, unless otherwise specified.

h. **Insured.** "Insured" means any named individual(s), corporate entity(ies), partnership(s), or other unincorporated association(s) alleging property damage as an Insured in the litigation, or asserting a claim under an assignment.

i. **Loss.** "Loss" means damage to the Property caused by the Event.

j. **Other Insurance.** "Other Insurance" means any insurance policy, other than the Policy in force on the date of the Event, that covers or potentially covers the Property or the Claimed Loss.

4

k. **Policy.** "Policy" means the insurance policy alleged to cover some or all of Insured's Claimed Loss that is the subject of the Insured's claim in the litigation.

l. **Property.** "Property" means the property (building or contents) that the Insured claims coverage for under the Policy in the litigation.

m. **Relating to.** "Relating to" means concerning, referring, describing, evidencing, or constituting.

(3) Instructions.

    a. The relevant time period for this Initial Discovery begins on the date immediately before the Event and ends 21 days prior to the mediation under the Court's SSP, unless a different time period is indicated with respect to a specific production obligation as set out in Part 2 or Part 3 below. The first disclosure is due 45 days from the date the defendant files responsive pleadings. A supplemental disclosure must be made 21 days prior to the mediation. In extraordinary circumstances of additional information that could not be provided previously coming into the possession of the responding party after the supplemental disclosure date, a second supplemental disclosure should be made before mediation.

    b. This Initial Discovery is presumptively not subject to any objections except for attorney-client privilege or work-product protection, including a joint defense agreement. Documents withheld based on a privilege or work-product protection claim are subject to expressly making the claim. A detailed privilege log is required as specified in the applicable Case Management Order or any subsequent orders of the Court, otherwise documents withheld as privileged or work-product protected communications may be described briefly by category or type. Withholding documents on this basis does not alleviate any obligation to produce the withheld documents or additional information about them at a later date, if the court orders or the applicable rules require.

    c. If a partial or incomplete or "unknown at this time" answer or production is given to any disclosure requirement in these Disaster Protocols, the responding party must state the reason that the answer or production is partial, incomplete, or unknown and when supplemental information or documents providing a complete response will be produced.

    d. For this Initial Discovery, a party must disclose information and documents that the disclosing party has in its possession, custody, or control and that are reasonably available. This Initial Discovery is subject to obligations on supplementation and relevant requirements concerning certification of responses. This Initial Discovery does not preclude either party from seeking additional discovery later under the rules.

e.  This Initial Discovery is subject to the attached Interim Protective Order unless the parties agree or the court orders otherwise. The Interim Protective Order will remain in place until and unless the parties agree on, or the court orders, a different protective order. Absent party agreement or court order, the Interim Protective Order does not apply to subsequent discovery.

f.  Within 14 days after the later of entry of this Order or the filing of a responsive pleading by the responding party, the Parties shall meet and confer on the format (e.g., searchable PDF, Excel spreadsheet) for the production of documents under these Disaster Protocols. This will not delay the timeframes for Initial Discovery, absent court order. Nor will production in one format preclude requesting production in another format, if applicable rules of discovery allow.

## PART 2: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURED.

(1) Timing.
Unless the court orders otherwise, the Insured's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court).

(2) Information to be produced by the Insured:

a.  A description of the Insured's ownership or other interest in the Property.

b.  The address of the Property (or location of movable Property) on the date of the Event.

c.  The name of each Insurer and all policy numbers for each Policy or Other Insurance held by or potentially benefitting the Insured or the Property on the date of the loss, including relevant policy and claim numbers for any claims.

d.  Identify any current mortgagee or other known lien holder.

e.  A computation of each item or type of Claimed Loss, including content claims if in dispute. When the Policy requires, the computation should reasonably identify or itemize price and quantity of materials.

f.  Identify any payments received under the Policy relating to the Event. Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

g.  Identify any grant or other similar program that the Insured applied for after the Event, including a Small Business Administration loan, seeking payment for all or any part of the Loss.

h.  Identify the public or other adjusters, estimators, inspectors, contractors, engineers, or other persons engaged by or on behalf of the Insured relating to the Claimed

Loss.

    i.   With respect to any Other Insurance, all policy numbers, the name of each insurer, and claim and docket numbers for any claims made for coverage by the Insured on the same Property at issue in this litigation.

    j.   Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

    k.   A general description, including the court and docket number, of any other lawsuits arising from the Event relating to the Property.

    l.   A general description of any known preexisting damage to the Property relating to the Claimed Loss.

    m.  A general description of any claims for property damage or lawsuits resulting from property damage in the past ten years relating to the Property.

    n.   Identify any sale, transfer, or foreclosure of the Property after the Event.

(3) Complete and unaltered copies of the following documents to be produced by the Insured:

    a.   Documents relating to the Claimed Loss, including: loss estimates; adjuster's reports; engineering reports; contractor's reports; estimates, bids, plans, or specifications regarding repair work (whether planned, in progress, or completed); photographs; videos; or other materials relating to the Claimed Loss, along with any receipts, invoices, and other records of actual costs to repair or replace the Claimed Loss. This shall include all reports or analyses, including draft reports, prepared on behalf of Insured.

    b.   Proofs of loss for the Claimed Loss.

    c.   Documents relied on by the Insured in generating any proof of loss required or provided under the Policy.

    d.   Written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, the Property, or damages, or otherwise relating to the Insured's claim.

    e.   Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Loss.

    f.   Written communications, photographs, or estimates of damages sought from or paid by any other insurer related to the Event.

    g.   The insurance policy with respect to any Other Insurance, and the claim numbers for claims made to recover Loss to the Property relating to the Event.

h.  Appraisals or surveys of the Property condition within five years before, or any time after, the Event.

i.  If there has been an appraisal under the Policy, documents relating to the appraisal process.

j.  Any other document(s) on which the Insured relies to support the Claimed Loss.

## PART 3: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURER.

(1) Timing.

(2) Unless the court orders otherwise, the Insurer's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court in response or answer to the plaintiff's claim), or within 20 days of the date of this Order if that date is later. **The disclosures related to Insurers and the use of the term "Insurer" under this Part shall extend to anyone acting for or on behalf of the Insurer in relation to the claim of the Insured, including the employees, contractors, and agents of either the Insurer or anyone providing services to the Insurer related to the Insured's claim or Claimed Loss.**

(3) Information to be produced by the Insurer:

    a.  **If there is a dispute over coverage,** in whole or in part, an explanation of the Insurer's reason for the denial of coverage, including:

        i.  Any exclusions or exceptions, or other coverage or legal defenses;

        ii.  The factual basis for any exclusion, limitation, exception, or condition-based dispute or defense;

        iii.  Whether there is also a dispute as to the value or amount of the Claimed Loss;

        iv.  Any other basis on which coverage was denied.

    b.  **If there is a dispute over all or part of the valuation,** an explanation of the Insurer's basis for disputing the value or amount of the Claimed Loss, including:

        i.  The Insurer's understanding of the nature of the dispute;

        ii.  The amount the Insurer disputes and the basis for that dispute, including any applicable Policy provisions that the Insurer alleges or believes are relevant to the dispute; and

        iii.  The amount the Insurer agrees to pay, if any, with respect to any undisputed part of the Claimed Loss.

    c.  Any Policy terms or conditions that the Insurer alleges the Insured failed to comply with, including conditions precedent or other terms.

    d.  Any payments previously made under the Policy relating to the Event.

8

e.  A general description of any other basis for nonpayment of the Claimed Loss, in whole or in part.

f.  Any other Event-related lawsuits filed for the Property or the Insured.

g.  Identify the adjuster(s) who handled the claim.

h.  Identify the individual(s) who evaluated, recommended, made, approved, or rejected the claim decision.

i.  Identify the field personnel, estimators, inspectors, contractors, engineers, or other persons who participated in any investigation of the claims or the claims process, had any part relating to Insurer's evaluation process for the claims, or upon who the Insurer relied upon or received information from concerning Insurer's evaluation process or claim decision; and identify anyone who had any role in drafting, editing, reviewing, or approving any report(s), evaluation(s), or inspection(s) on behalf of Insurer involving the Insured's claim.

j.  If preexisting damage is at issue in the litigation, a general description of any prior claims in the past ten years for the Property.

(4)  Complete and unaltered copies of the following documents to be produced by the Insurer:

a.  The entire claim file maintained by the Insurer.

b.  The complete Policy in effect at the time of the Event.

c.  Assessments of the Claimed Loss, including: loss reports, expert reports that contain any description or analysis of the scope of loss or any defenses under the Policy, damage assessments, adjuster's reports, engineering reports, contractor's reports, and estimates of repair or replacement. This shall include all reports or analyses, including all drafts, prepared as part of the evaluation or claims process involving Insured's claim by Insurer, or documents or records reviewed in any way in connection with Insurer's handling of the claim.

d.  Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Claimed Loss.

e.  Any other evaluations of the Claimed Loss.

f.  Documents containing recordings, transcripts, or notes of statements, conversations, or communications by or between the Insurer and the Insured relating to the Event.

9

g.  Any claim log, journal, diary, or record maintained by the Insurer relating to the Claimed Loss. This includes all written records, written communications, records of oral communications, reports, audits, or other records, including any documents, envelopes, logs, notes, or other documents evidencing when Insurer came into possession of any such records, regarding any aspect of the Insured's claim or that are in any way relating to the Insurer's investigation into the Claimed Loss, Insurer's processing of Insured's claim (including adjustment, evaluation, and handling), or Insurer's claim decision.

h.  The complete underwriting file maintained by the Insurer relating to the Property, its condition, or coverage.

i.  Proofs of loss for the Claimed Loss.

j.  If there has been an appraisal under the Policy, all documents relating to the appraisal process.

k.  Any manuals, policies, directives, guidelines, instructions (whether written, electronic, or otherwise), literature, or similar written materials that would pertain to the Claimed Loss, Hurricane Ida claims generally, or to similar types of claims generally such that they would therefore be applicable to the Hurricane Cases including the Insured's claim. This includes any document that Insurer relied upon, or intends to rely upon, pertaining to industry guidelines, standard practices, or recommended practices for adjusting first party claims.

l.  **For non-NFIP Claims**, written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, Property, or damages, or otherwise relating to the Insured's claim.

m.  Any other document(s) on which the Insurer relies to support its defenses.

10

Peter Dunn

VS  2023-14925 Division H

Hanover Insurance Group

22ⁿᵈ Judicial District Court

Parish of St. Tammany

State of Louisiana

**TO THE DEFENDANT:  <u>Hanover Insurance Group, Through its registered agent of
service of process:  Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge
LA  70809</u>**

You are named as a defendant in the above captioned matter.  Attached to this citation is a:

[ x ] Certified copy of Original Petition    [   ] Certified copy of Amended Petition    [   ] Discovery Request

HURRICANE IDA COURT ORDERS ATTACHED

You must either comply with the demand contained in the petition or make an appearance either by filing
an answer or other pleading in the 22ⁿᵈ Judicial District Court located at 701 N. Columbia Street,
Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil
Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A.  A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him,
except as otherwise provided by law.
     If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his
answer to the petition within **thirty (30)** days after service of the petition.
B.  When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained
and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the
exception is overruled or referred to the merits, or **fifteen (15) days** after service of the
Amended Petition.
C.  The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the
Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer,
unless the time is extended under Article 1001.

THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.

By order of the Honorable Judges of said Court this   24th day of August, 2023

*Melissa R. Henry* Clerk of Court

BY:  *Tricia Breaux*

Tricia Breaux, Deputy Clerk

Issued:  09/30/2023

**Counsel or Pro Se:**
Galen Hair
Attorney at Law
3540 S. I-10 Service Rd., W Ste. 300
Metairie, LA  70001

Received on _____, 2023, and on _____, 2023 I served a true copy of
the within _____,
on _____ in person,
at domicile with _____,
in _____Parish, a distance of _____ miles from the Justice Center.

_____
Deputy Sheriff

Parish of _____



*Melissa R. Henry*

**CLERK OF COURT**
**22ⁿᵈ Judicial District Court**
**Parish of St. Tammany**

---

September 30, 2023

East Baton Rouge Parish Sheriff's Office
Attn.: Civil Department
P.O. Box 3277
Baton Rouge, La. 70821

Re:    Peter Dunn
        VS. 2023-14925 Division H
        Hanover Insurance Group

Dear Sir:

Enclosed please find a Citation to be served on the following:

| Name: | Address: |
|---|---|
| Hanover Insurance Group | Through Louisiana Secretary Of State  8585 Archives Avenue  Baton Rouge La  70809 |

Please find a check in the amount of $_____ payable to you for your services, along with a check in the amount of $_____ payable to the Secretary of State.

After service has been made, please mail your return to this office.

Sincerely,

*Tricia Breaux*
Tricia Breaux
Deputy Clerk

---

**P.O. Box 1090 · Covington LA 70434 · (985) 809-8700**

**RETURN**

| Peter Dunn | 22nd Judicial District Court |
|---|---|
| VS 2023-14925 Division H | Parish of St. Tammany |
| Hanover Insurance Group | State of Louisiana |

TO THE DEFENDANT: <u>Hanover Insurance Group, Through its registered agent of service of process: Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge LA 70809</u>

You are named as a defendant in the above captioned matter. Attached to this citation is a:

[ x ] Certified copy of Original Petition    [ ] Certified copy of Amended Petition    [ ] Discovery Request

HURRICANE IDA COURT ORDERS ATTACHED

You must either comply with the demand contained in the petition or make an appearance either by filing an answer or other pleading in the 22nd Judicial District Court located at 701 N. Columbia Street, Covington, Louisiana 70433 within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

**Article 1001 of the Louisiana Code of Civil Procedure states:**

A. A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law.
    If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the petition.
B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.
C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with **ten (10) days** after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

By order of the Honorable Judges of said Court this    24th day of August, 2023

*Melissa R. Henry* Clerk of Court

BY: *Tricia Breaux*
Tricia Breaux, Deputy Clerk

Issued: 09/30/2023

Counsel or Pro Se:
Galen Hair
Attorney at Law
3540 S. I-10 Service Rd., W Ste. 300
Metairie, LA 70001

I made service on the named party through the Office of the Secretary of State on OCT 09 2023
I served a true copy of this document to:
JULIE RASSITT
by tendering a copy of this document to: DY. B. GARAFOLA #0577
Deputy Sheriff, Parish of East Baton Rouge, LA

Received on _____, 2023, and on _____, 2023 I served a true copy of
the within _____
on _____
at domicile with _____
in _____ Parish, a distance of _____ miles from the Justice Center

**FILED**

Parish of _____    Deputy Sheriff, _____ Deputy Sheriff

101 - Regular Citation Rev 7/23

**FILED**

NOV 14 2023

MELISSA R. HENRY - CLERK
Deputy *Phyllis Elias*
Phyllis Elias, Deputy Clerk

RECEIVED
DATE
OCT 06 2023
E.B.R. Sheriff Office

St. Tammany
Melissa R. Henry - Clerk of Court
Sherry Mehdizadeh - Deputy Clerk
Suit 2023-14925 H
E-Filed on: 2/02/24 10:14 AM
Filed on: 2/02/24 12:18 PM

## 22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

### STATE OF LOUISIANA

NUMBER 2023-14925                                      DIVISION "H"

### PETER DUNN & PAULA DUNN

### VERSUS

### HANOVER INSURANCE GROUP

FILED: _____          _____
                                                    DEPUTY CLERK

### THE HANOVER INSURANCE GROUP'S PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION, DECLINATORY EXCEPTION OF IMPROPER VENUE, AND PEREMPTORY EXCEPTION OF PRESCRIPTION

**NOW INTO COURT**, through undersigned counsel, comes Defendant, The Hanover Insurance Group, and pursuant to Louisiana Code of Civil Procedure Articles 925 and 927, appears for purposes of excepting the Petition for Damages and Demand for Jury Trial, as more fully set forth in the Memorandum in Support of The Hanover Insurance Group's Peremptory Exception of No Cause of Action, Declinatory Exception of Improper Venue, and Peremptory Exception of Prescription, which has been filed contemporaneously and is attached hereto.

**WHEREFORE**, The Hanover Insurance Group prays that the Court grant its Peremptory Exception of No Cause of Action, Declinatory Exception of Improper Venue, and Peremptory Exception of Prescription, dismiss Plaintiffs' claims in the Petition for Damages and Demand for Jury Trial against The Hanover Insurance Group with prejudice, and grant all other relief that may be just and proper.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   _/s/ Virginia P. Stewart_____
        Mark C. Dodart (Bar #17549)
        Virginia P. Stewart (Bar #40062)
        Canal Place | 365 Canal Street, Suite 2000
        New Orleans, Louisiana 70130
        Telephone: 504 566 1311
        Facsimile: 504 568 9130
        Email: mark.dodart@phelps.com
                  virginia.stewart@phelps.com

**ATTORNEYS FOR DEFENDANT,
THE HANOVER INSURANCE GROUP**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 2nd day of February, 2024, served a copy of the

foregoing pleading upon counsel for Plaintiffs at the address below via e-mail and/or U.S. Mail,

postage prepaid and properly addressed:

    Galen M. Hair, La. Bar No. 32865
    Madison Pitre, La. Bar No. 38867
    Hair Shunnarah Trial Attorneys, LLC
    3540 S. I-10 Service Rd. W., Suite 300
    Metairie, Louisiana 70001
    Telephone: 504.684.5200
    Facsimile: 504.613.6351
    hair@hairshunnarah.com
    pitre@hairshunnarah.com

    **Counsel for Plaintiffs,**
    **Peter Dunn and Paula Dunn**

                          */s/ Virginia P. Stewart*

```
St. Tammany
Melissa R. Henry - Clerk of Court
Sherry Mehdizadeh - Deputy Clerk
Suit 2023-14925 H
E-Filed on: 2/02/24 10:14 AM
Filed on: 2/02/24 12:18 PM
```

## 22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

### STATE OF LOUISIANA

NUMBER 2023-14925                                                     DIVISION "H"

### PETER DUNN & PAULA DUNN

### VERSUS

### HANOVER INSURANCE GROUP

FILED: _____        _____
                                                    DEPUTY CLERK

### MEMORANDUM IN SUPPORT OF THE HANOVER INSURANCE GROUP'S PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION, DECLINATORY EXCEPTION OF IMPROPER VENUE, AND PEREMPTORY EXCEPTION OF PRESCRIPTION

**NOW INTO COURT**, through undersigned counsel, comes Defendant, The Hanover Insurance Group, ("Hanover") and respectfully submits this Memorandum in Support of its Exception of No Cause of Action, Declinatory Exception of Improper Venue, and Peremptory Exception of Prescription filed contemporaneously herein.

**I.    BACKGROUND**

In the Petition for Damages and Demand for Jury Trial (the "Petition"), Plaintiffs, Peter Dunn and Paula Dunn (collectively, the "Plaintiffs"), allege that Hurricane Ida caused damages and resulting losses to their property located at 41069 Happywoods Rd., Hammond, Louisiana 70403 (the "Property"). Petition at ¶ 5 (hereinafter, "Pet."). The Petition seeks recovery of damages from The Hanover Insurance Group based upon allegations of breach of contract and bad faith in violation of the Louisiana statutes governing an insurer's duties to its insured, Louisiana Revised Statutes § 22:1973 and § 22:1893. Pet. at ¶¶ 30-52.

As discussed more fully below, Plaintiffs' claims against Hanover should be dismissed because there is no valid cause of action against The Hanover Insurance Group. While Plaintiffs allege that The Hanover Insurance Group issued Policy No. HSO 8730260 to Plaintiffs (*see* Pet. at ¶ 6), The Hanover Insurance Group is not an insurance company and could not have issued any such policy. Further, Plaintiffs erroneously filed the instant lawsuit in St. Tammany Parish, despite Plaintiffs' alleging that they are residents of St. Tangipahoa Parish (*see* Pet. at ¶ 7) and that the Property is located in Tangipahoa Parish. Pet. at ¶ 5. Further, notwithstanding the fact that

Plaintiffs filed the lawsuit in the improper venue, Plaintiffs failed to properly serve Hanover as required by the Policy. For all of these reasons, The Hanover Insurance Group's Exception of No Cause of Action, Declinatory Exception of Improper Venue, and Peremptory Exception of Prescription (collectively, "Hanover's Exceptions") should be granted.

## II.   LAW AND ARGUMENT

### A.   Because The Hanover Insurance Group is Not an Insurance Company and Did Not Issue the Relevant Policy or Adjust the Claim, Plaintiffs Do Not Have a Cause of Action.

The peremptory exception of no cause of action under Louisiana Code of Civil Procedure Article 927(A)(5) tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. *Pinegrove Elec. Supply Co. v. Cat Key Constr., Inc.*, 11-660 (La. App. 5 Cir. 02/28/12); 88 So. 3d 1097, 1100-1101 citing *Ramey v. DeCaire*, 03-1299 (La. 03/19/04); 869 So. 2d 114, 120 (reversing the judgment of the district court and sustaining the defendants' peremptory exception of no cause of action where the petition did not contain sufficiently well-pleaded facts to state a cause of action in negligence). The plaintiff's petition must set forth "the ultimate material facts on which the cause of action is based" and it is insufficient for the petition to "simply state factual conclusions without setting forth the facts which support the conclusions." *Kahn v. Jones*, 95-259 (La. App. 3 Cir. 11/2/95); 664 So. 2d 700, 704-705. Louisiana courts disregard allegations that are "no more than factual conclusions." *Id.*, *see also* Saxena v. Saxena, 518 So. 2d 1098, 1100 (La. App. 5 Cir. 1987) (affirming the trial court's ruling maintaining the exception of no cause of action where the pleadings were not sufficient to state a cause of action).

The issue on an exception of no cause of action is whether, on the face of the petition, the plaintiff is entitled to the relief sought. *Pinegrove Elec. Supply Co. v. Cat Key Constr., Inc.*, 11-660 (La. App. 5 Cir. 02/28/12); 88 So. 3d 1097, 1100; citing *Ramey v. DeCaire*, 2003-1299 (La. 3/19/04); 869 So.2d 114, 118. No evidence may be introduced to support or controvert an exception of no cause of action. La. C.C.P. art. 931. However, "[d]ocuments incorporated in the petition by reference may be considered; however, evidence is inadmissible to controvert any assertions." *Gloria Delesdernier, Wife of Paul Marchand v. George T. Armstrong & Mark Delesdernier*, 355 So. 2d 255 (La. 1978), and *writ denied*, 355 So. 2d 255 (La. 1978), and *writ*

*denied*, 355 So. 2d 255 (La. 1978); *see also Marchand v. Armstrong*, 354 So. 2d 581, 583 (La. Ct. App. 1977), *writ denied*, 355 So. 2d 254 (La. 1978), and *writ denied sub nom.* Because Policy No. HSO 8730260 was referenced in the Petition, it may be considered in determining the validity of an exception of no cause of action.[1]

Here, Plaintiffs erroneously asserted a claim against The Hanover Insurance Group, claiming that Hanover issued Policy No. HSO 8730260 to Plaintiffs. The Hanover Insurance Group is the parent company of Opus Investment Management, Inc, which is the parent company of The Hanover Insurance Company, which is the parent company of The Hanover American Insurance Company. The Hanover Insurance Group does not issue insurance policies or adjust insurance claims. The Policy was in fact issued by The Hanover American Insurance Company.[2] As demonstrated by the Declaration page, The Hanover American Insurance Company issued Policy No. HSO 8730260 from July 8, 2021 to July 8, 2022 for property located at 41069 Happywoods Rd., Hammond, LA 70403.[3] As set forth above, The Hanover American Insurance Company is a separate and distinct legal entity from The Hanover Insurance Group. Because The Hanover Insurance Group is not an insurance company, did not issue the insurance contract at issue and/or did not adjust the insurance claim at issue, there is no cause of action against The Hanover Insurance Group and Plaintiffs' claim must be dismissed.

### B. Plaintiffs Filed the Instant Lawsuit in an Improper Venue.

An exception of improper venue may be raised through a declinatory exception pursuant to Article 925(4) of the Louisiana Code of Civil Procedure. When pleaded, the exception must be tried and decided in advance of trial. La. C.C.P. art. 929. "If the grounds for an improper venue do not appear on the face of plaintiff's petition, the burden is on the defendant to offer evidence in support of her petition." *Michael F. Smith CPA v. Alford,* 04-0586 (La. App. 1 Cir. 3/24/05), 906 So. 2d 674, 676 (citation omitted) (affirming trial court's ruling in favor of defendants on exception of improper venue).

---

[1] *See* Policy No. HSO 8730260 issued by The Hanover American Insurance Company attached hereto as Exhibit 1.
[2] *See* Exhibit 1 at HANOVER000003.
[3] *See* Exhibit 1 at HANOVER000003.

"The trial court is not bound to accept as true allegations in petition on a trial of an exception." *Price v. Roy O. Martin Lumber Co.*, 04-0227 (La. App. 1 Cir. 4/27/05), 915 So. 2d 816, 824, *writ denied*, 05-1390 (La. 1/27/06), 922 So. 2d 543 (reversing trial court's judgment denying exception of improper venue, holding that the court must consider evidence presented on exception of improper venue, rather than merely rely on allegations in petition); *see also* La. C.C.P. art. 930 ("On the trial of the declinatory exception, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition, the citation, or return thereon.").

When an action is brought in an improper venue, the court may dismiss the action or, in the interest of justice, transfer the action to a court of proper venue. La. C.C.P. art. 121. However, the remedy for transfer is only available in instances where a plaintiff lacks "sufficient knowledge to ascertain the correct venue or acts upon incorrect knowledge and erroneously files suit in the wrong venue." *Bank of New Orleans & Trust Co. v. Phillips*, 415 So.2d 973, 975 (La. App. 4 Cir. 1982). In contrast, when a plaintiff knowingly files suit in the wrong venue, then dismissal is proper. *Id.*

Pursuant to Louisiana Code of Civil Procedure Article 80, a lawsuit involving immovable property may be brought in the parish where the immovable property is situated or in the parish where the defendant in the action is domiciled. Here, Peter Dunn and Paula Dunn allege that they are residents of St. Tangipahoa Parish. Pet. ¶ 1. Therefore, Tangipahoa Parish would be proper. Further, the alleged Policy insures the Property located at 1069 Happywoods Rd., Hammond, Louisiana 70403.[4] Therefore, the alleged insured Property is located in in Tangipahoa Parish. Pet. ¶ 7. Even if Plaintiffs had a viable cause of action against The Hanover Insurance Group (which is expressly denied), Plaintiffs failed to bring the instant lawsuit in the proper parish, Tangipahoa Parish. Notwithstanding this fact and as discussed below, any claims brought by Plaintiffs against The Hanover Insurance Group, based on the Policy, would have now prescribed.

---

[4] *See* Exhibit 1 at HANOVER000003.

4

### C. Regardless of Plaintiffs Filing the Instant Lawsuit in an Improper Venue, Their Claims Have Now Prescribed.

Irrespective of Plaintiffs filing the instant lawsuit in an improper venue, Plaintiffs claims based on the Policy have prescribed. As a general rule, prescription is interrupted by the filing of a claim "in a court of competent jurisdiction and venue." La. C.C. art. 3462. When an action is not filed in the correct venue, Louisiana Civil Code Article 3462 clearly states that interruption only occurs as to those defendants served within the prescriptive period. *Bell v. Kreider*, 03-300, p. 11 (La. App. 5 Cir. 9/16/03); 858 So. 2d 58, *writ denied*, 2003-2875 (La. 1/9/04); 862 So. 2d 986. Therefore, where a plaintiff files suit in an improper venue before the prescriptive period has run, only the act of serving the defendant with process will interrupt the prescriptive period before it expires. La. C.C. art. 3462.

Generally, Louisiana recognizes a ten year prescriptive period for a breach of contract claim. La. C.C. art. 3499. However, Louisiana also recognizes that an insurance contract provision may shorten the prescriptive period to two years from the date of loss. La. R.S. § 22:868 ("[n]o insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state [ . . . ] shall contain any condition, stipulation, or agreement limiting right of action against the insurer to a period of less than twenty-four months next after the inception of the loss when the claim is a first-party claim"). Here, even if The Hanover Insurance Group were the insurer (which is expressly denied), the Policy has the following relevant provision:

> **8. Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.[5]

Here, regardless of the ten-year prescriptive period for breach of contract claims, the Policy provision is permissible. *See Good Hope Baptist Church v. ICT Ins. Agency, Inc.*, 41 So. 3d 1229 (La. Ct. App. 3d Cir. 2010) (holding that the plaintiff's claims in contract would be subject to the ten-year prescriptive period found in Louisiana Civil Code Article 3499, but for the policy provision requiring it to file any action based on the policy within two years of a loss). Plaintiffs commenced this lawsuit in an improper venue and The Hanover Insurance Group was not served

---

[5] *See* Exhibit 1 at HANOVER000015.

until October 6, 2023. Pursuant to Louisiana Civil Code Article 3462, "prescription is interrupted only as to a defendant served by process within the prescriptive period." Because Louisiana law recognizes a policy which requires a shortened prescriptive period, and Plaintiffs failed to serve The Hanover Insurance Group in a proper venue within the prescriptive period, Plaintiffs claims based on the Policy have prescribed. Accordingly, this Court should grant Hanover's Exceptions.

## III.  CONCLUSION

For the reasons stated above, The Hanover Insurance Group's Exception of No Cause of Action, Declinatory Exception of Improper Venue, and Peremptory Exception of Prescription should be granted, and Plaintiffs' claims against Hanover should be dismissed in their entirety, with prejudice.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:  */s/ Virginia P. Stewart*
Mark C. Dodart (Bar #17549)
Virginia P. Stewart (Bar #40062)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email: mark.dodart@phelps.com
virginia.stewart@phelps.com

**ATTORNEYS FOR DEFENDANT,
THE HANOVER INSURANCE GROUP**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 2nd day of February, 2024, served a copy of the foregoing pleading upon counsel for Plaintiffs at the address below via e-mail and/or U.S. Mail, postage prepaid and properly addressed:

Galen M. Hair, La. Bar No. 32865
Madison Pitre, La. Bar No. 38867
Hair Shunnarah Trial Attorneys, LLC
3540 S. I-10 Service Rd. W., Suite 300
Metairie, Louisiana 70001
Telephone: 504.684.5200
Facsimile: 504.613.6351
hair@hairshunnarah.com
pitre@hairshunnarah.com

**Counsel for Plaintiffs,
Peter Dunn and Paula Dunn**

*/s/ Virginia P. Stewart*

6

St. Tammany
Melissa R. Henry - Clerk of Court
Sherry Mehdizadeh - Deputy Clerk
Suit 2023-14925 H
E-Filed on: 2/02/24 10:14 AM
Filed on: 2/02/24 12:18 PM

## 22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

### STATE OF LOUISIANA

NUMBER 2023-14925                                      DIVISION "H"

### PETER DUNN & PAULA DUNN

### VERSUS

### HANOVER INSURANCE GROUP

FILED: _____    _____
                                   DEPUTY CLERK

### MOTION AND ORDER TO SET FOR HEARING THE HANOVER INSURANCE GROUP'S PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION, DECLINATORY EXCEPTION OF IMPROPER VENUE, AND PEREMPTORY EXCEPTION OF PRESCRIPTION

**NOW INTO COURT,** through undersigned counsel, comes Defendant, The Hanover Insurance Group, who, without waiving and expressly maintaining any and all defenses, exceptions, objections or arguments, respectfully requests that Plaintiffs show cause, at a hearing, why The Hanover Insurance Group's Peremptory Exception of No Cause of Action, Declinatory Exception of Improper Venue, and Peremptory Exception of Prescription should not be granted.

In accordance with Local Rule 9.8, The Hanover Insurance Group submits that the trial in this matter is not set and no oral testimony will be offered at the hearing on The Hanover Insurance Group's Peremptory Exception of No Cause of Action, Declinatory Exception of Improper Venue, and Peremptory Exception of Prescription. Accordingly;

**IT IS HEREBY ORDERED,** The Hanover Insurance Group's Peremptory Exception of No Cause of Action, Declinatory Exception of Improper Venue, and Peremptory Exception of Prescription shall come on for a hearing, specifically, on the _____ day of _____, 2024 at _____, and that Plaintiffs, Peter Dunn and Paula Dunn, appear on said date and show cause why The Hanover Insurance Group's Peremptory Exception of No Cause of Action, Declinatory Exception of Improper Venue, and Peremptory Exception of Prescription should not be granted.

St. Tammany Parish, Louisiana, this _____ day of _____, 2024.

_____
The Honorable Alan A. Zaunbrecher

**Plaintiffs will be served in accordance with article 1313(C) of the Louisiana Code of Civil Procedure.**

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   */s/ Virginia P. Stewart*
            Mark C. Dodart (Bar #17549)
            Virginia P. Stewart (Bar #40062)
            Canal Place | 365 Canal Street, Suite 2000
            New Orleans, Louisiana 70130
            Telephone: 504 566 1311
            Facsimile: 504 568 9130
            Email: mark.dodart@phelps.com
                   virginia.stewart@phelps.com

**ATTORNEYS FOR DEFENDANT,
THE HANOVER INSURANCE GROUP**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 2nd day of February, 2024, served a copy of the

foregoing pleading upon counsel for Plaintiffs at the address below via e-mail and/or U.S. Mail,

postage prepaid and properly addressed:

Galen M. Hair, La. Bar No. 32865
Madison Pitre, La. Bar No. 38867
Hair Shunnarah Trial Attorneys, LLC
3540 S. I-10 Service Rd. W., Suite 300
Metairie, Louisiana 70001
Telephone: 504.684.5200
Facsimile: 504.613.6351
hair@hairshunnarah.com
pitre@hairshunnarah.com

**Counsel for Plaintiffs,
Peter Dunn and Paula Dunn**

                                   */s/ Virginia P. Stewart*



DATE : October 19, 2023

CLAIM # 19 - 929277

St. Tammany
Melissa R. Henry - Clerk of Court
Sherry Mehdizadeh - Deputy Clerk
Suit 2023-14925 H
E-Filed on: 2/02/24 10:14 AM
Filed on: 2/02/24 12:18 PM

The undersigned, Betty Smaltz, IDM Coordinator , for The Hanover Insurance Company, hereby
certifies that the attached is an accurate reproduction of the declaration ( s ) and policy forms as
produced by the Hanover American Ins Co. for policy # HSO 8730260 effective 07/08/21 to
07/08/22 from the records dept.

IDM Coordinator

271-5657 (11/19)

440 Lincoln Street
Worcester, Ma 01653

# The Hanover Insurance Group

October 19, 2023

CLAIM # 19 – 929277

This is the renewal for policy # HSO 8730260 effective 07/08/21 to 07/08/22 that you requested.

If you have any questions please call me at 1-508-855-2087

Kathy Boulanger

Records Service Coordinator





09                 **RENEWAL DECLARATION**                    # AC LF
                        **RENEWAL OF POLICY**  HSO 8730260
               H O M E O W N E R S   P O L I C Y

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
|---|---|---|---|---|
| | FROM | TO | THE HANOVER AMERICAN INS CO | |
| HSO 8730260 | 07/08/21 | 07/08/22 | | 040420800 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| PETE  DUNN<br>PAULA DUNN<br>41069 HAPPYWOODS RD<br>HAMMOND, LA  70403 | TELEPHONE: 985-386-3874<br>BLUMBERG & ASSOCIATES, INC<br>1180 HWY 51 NORTH<br>PO BOX 750<br>PONCHATOULA, LA  70454 |

POLICY PERIOD- 12:01 A.M. STANDARD TIME AT THE RESIDENCE PREMISES

THE PREMISES COVERED BY THIS POLICY IS LOCATED AT THE ABOVE ADDRESS.

| CONSTRUCTION | PREM. GROUP | NO. OF FAM. | TERR. | PROT. CODE | YR. CONST. | SECTION I LOSS DEDUCTIBLE | SEAS/SEC |
|---|---|---|---|---|---|---|---|
| VENEER | 774 | 1 | 62 | 04 | 06 | $1000 PER OCCURRENCE | NO |

COVERAGE IS PROVIDED WHERE A PREMIUM OR A LIMIT OF LIABILITY IS SHOWN
SECTION I COVERAGE                         LIMIT OF LIABILITY              PREMIUMS
  A. DWELLING                                $413,000
  B. OTHER STRUCTURES                         $41,300
  C. PERSONAL PROPERTY                       $309,750
  D. LOSS OF USE                             $123,900
SECTION II COVERAGE
  E. PERSONAL LIABILITY              $300,000 EACH OCCURRENCE
  F. MEDICAL PAY. TO OTHERS -           $1,000 EACH PERSON
                 TOTAL BASIC PREMIUM - - - - - - - - - - - -
ADDITIONAL PREMIUMS
  HO-3 SELECT PLUS
  GOLF CARTS - INLAND MARINE COVERAGE
  LA CITIZENS REGULAR AND EMERGENCY ASSESSMENTS
               TOTAL ADDITIONAL PREMIUMS - - - - - - - - - - - -
RATING CREDITS
  OPTIONAL DEDUCTIBLE
     TOTAL RATING CREDITS

VALUED CUSTOMER CREDITS
  CREDIT FOR PROTECTIVE DEVICES
  25% CREDIT FOR INSURING BOTH YOUR AUTO AND HOME WITH US
  LOSS FREE CREDIT
     TOTAL VALUED CUSTOMER CREDITS
               TOTAL CREDITS - - - - - - - - - - - - - - - -

          TOTAL PREMIUM ADJUSTMENTS - - - - - - - - - - -
               TOTAL ANNUAL PREMIUM - - - - - - - - - - -

MORTGAGEE
  CALIBER HOME LOANS, INC ISAOA
  ATIMA LN#1061602285-003 -000
  PO BOX 7731
  SPRINGFIELD, OH  45501

                    CONTINUED ON NEXT PAGE          DIRECT BILLED
05/24/21                 1061602285                 PAGE 01 OF 02
                      ORIGINAL/INSURED

HANOVER000003

09                     RENEWAL DECLARATION              # AC LF
                                              RENEWAL OF POLICY  HSO 8730260
                H O M E O W N E R S   P O L I C Y

| POLICY NUMBER | POLICY PERIOD FROM | TO | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
|---|---|---|---|---|
| HSO 8730260 | 07/08/21 | 07/08/22 | THE HANOVER AMERICAN INS CO | 040420800 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| PETE   DUNN<br>PAULA DUNN<br>41069 HAPPYWOODS RD<br>HAMMOND, LA  70403 | TELEPHONE: 985-386-3874<br>BLUMBERG & ASSOCIATES, INC<br>1180 HWY 51 NORTH<br>PO BOX 750<br>PONCHATOULA, LA  70454 |

FORMS AND ENDORSEMENTS – HO0003 04/91, 231-0600 08/98, HO0496 04/91,
 231-2515 01/15, 231-6252 02/17, 231-2364 06/06, 231-2745 09/09,
 231-2323 06/06, 231-2324 06/06, HO0453 04/91, 231-2326 06/06, 231-2325 06/06,
 231-2328 06/06, HO0435 04/91, 231-5950 06/10, HO0490 04/91, 231-2341 06/06,
 231-2331 06/06, 231-1937 01/01, HO2482 04/91, HO0477 06/94, 231-2060 10/04,
 231-5928 06/10*, 391-0565 01/83, 231-1050 08/88.

DESCRIPTION OF ADDITIONAL COVERAGES

   LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE
      SECTION I LIMIT OF LIABILITY           $10,000
      SECTION II LIMIT OF LIABILITY          $50,000

   LOSS FREE CREDIT
      PERCENTAGE IS 03.


   CREDIT FOR PROTECTIVE DEVICES            PERCENTAGE IS 05

   INLAND MARINE GOLF CARTS
   01 DESC=GOLF CART ENDORSEMENT                                      $ 1000

      TOTAL AMOUNT SCHEDULED IS $    1000.


                                    AUTHORIZED COMPANY REPRESENTATIVE
                                    BLUMBERG & ASSOCIATES, INC


                                                  DIRECT BILLED
05/24/21                 1061602285                PAGE 02 OF 02
                       ORIGINAL/INSURED

HANOVER000004



# HOMEOWNERS 3
## SPECIAL FORM

### AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

### DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Insured" means you and residents of your household who are:

   a. Your relatives; or

   b. Other persons under the age of 21 and in the care of any person named above.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   d. With respect to any vehicle to which this policy applies:

      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or

      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence and:

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;

d. Any part of a premises:

   (1) Not owned by an "insured"; and

   (2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage."

6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "Residence employee" means:

   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured."

8. "Residence premises" means:

   a. The one family dwelling, other structures, and grounds; or

   b. That part of any other building;

   where you reside and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

HANOVER000005

## SECTION I - PROPERTY COVERAGES

**COVERAGE A - Dwelling**

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.

**COVERAGE B - Other Structures**

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

**COVERAGE C - Personal Property**

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";

2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.

4. $1000 on trailers not used with watercraft.

5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

6. $2000 for loss by theft of firearms.

7. $2500 for loss by theft of silverware, silverplated ware, goldware, gold-plated ware and pewterware. This includes flatware, holloware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.

9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.

    Copyright, Insurance Services Office, Inc., 1990    HO 00 03 04 91

HANOVER000006



11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

    b. Is away from the "residence premises"; and

    c. Is used at any time or in any manner for any "business" purpose.

Electronic apparatus includes:

    a. Accessories and antennas; or

    b. Tapes, wires, records, discs or other media;

for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;

2. Animals, birds or fish;

3. Motor vehicles or all other motorized land conveyances. This includes:

    a. Their equipment and accessories; or

    b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

       (1) Accessories or antennas; or

       (2) Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.

    The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

    a. Used to service an "insured's" residence; or

    b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages 10.;

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

    a. Books of account, drawings or other paper records; or

    b. Electronic data processing tapes, wires, records, discs or other software media;

    However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

**COVERAGE D – Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.

    a. **Additional Living Expense**, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

    b. **Fair Rental Value**, meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

    Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

    **Fair Rental Value**, meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

    Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.

HANOVER000007

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**ADDITIONAL COVERAGES**

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

   a. Debris of covered property if a Peril Insured Against causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

   We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

   a. Your tree(s) felled by the peril of Windstorm or Hail;

   b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

   c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

   provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

   This coverage:

   a. Does not increase the limit of liability that applies to the covered property;

   b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION 2.d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

   We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

   This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

   This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We will pay up to $500 for:

   a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

   b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

   c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

   d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

Copyright, Insurance Services Office, Inc., 1990   HO 00 03 04 91

HANOVER000008



We do not cover use of a credit card or fund transfer card:

**a.** By a resident of your household;

**b.** By a person who has been entrusted with either type of card; or

**c.** If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

**a.** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**b.** If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

**c.** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

**7. Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

**8. Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

**a.** Perils Insured Against in COVERAGE C - PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

**b.** Hidden decay;

**c.** Hidden insect or vermin damage;

**d.** Weight of contents, equipment, animals or people;

**e.** Weight of rain which collects on a roof; or

**f.** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

**9. Glass or Safety Glazing Material.**

We cover:

**a.** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

**b.** Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

**HO 00 03 04 91**          Copyright, Insurance Services Office, Inc., 1990          **Page 5 of 18**

HANOVER000009

10. **Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

   a. **Fire or lightning.**

   b. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

   c. **Explosion.**

   d. **Riot or civil commotion.**

   e. **Aircraft,** including self-propelled missiles and spacecraft.

   f. **Vehicles.**

   g. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

   h. **Vandalism or malicious mischief.**

   i. **Falling objects.**

   This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

   j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

   k. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

   (1) To the system or appliance from which the water or steam escaped;

   (2) Caused by or resulting from freezing except as provided in the peril of freezing below; or

   (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

   In this peril, a plumbing system does not include a sump, sump pump or related equipment.

   l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

   We do not cover loss caused by or resulting from freezing under this peril.

   m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

   This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

   (1) Maintain heat in the building; or

   (2) Shut off the water supply and drain the system and appliances of water.

   n. **Sudden and accidental damage from artificially generated electrical current.**

   This peril does not include loss to a tube, transistor or similar electronic component.

   o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

---

## SECTION I - PERILS INSURED AGAINST

**COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;

2. Caused by:

Copyright, Insurance Services Office, Inc., 1990

HO 00 03 04 91

HANOVER000010



a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water;

b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(1) Fence, pavement, patio or swimming pool;

(2) Foundation, retaining wall, or bulkhead; or

(3) Pier, wharf or dock;

c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

d. Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

e. Any of the following:

(1) Wear and tear, marring, deterioration;

(2) Inherent vice, latent defect, mechanical breakdown;

(3) Smog, rust or other corrosion, mold, wet or dry rot;

(4) Smoke from agricultural smudging or industrial operations;

(5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

(7) Birds, vermin, rodents, or insects; or

(8) Animals owned or kept by an "insured."

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

3. Excluded under Section I - Exclusions.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

**COVERAGE C - PERSONAL PROPERTY**

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

1. Fire or lightning.

2. Windstorm or hail.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. Explosion.

4. Riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke, meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. Vandalism or malicious mischief.

9. Theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

a. Committed by an "insured";

b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

HO 00 03 04 91          Copyright, Insurance Services Office, Inc., 1990          Page 7 of 18

HANOVER000011

c. From that part of a "residence premises" rented by an "insured" to other than an "insured."

This peril does not include loss caused by theft that occurs off the "residence premises" of:

a. Property while at any other residence owned by, rented to, or occupied by an "insured," except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

b. Watercraft, and their furnishings, equipment and outboard engines or motors; or

c. Trailers and campers.

10. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped;

b. Caused by or resulting from freezing except as provided in the peril of freezing below; or

c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

## SECTION I - EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

b. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

(1) Fire;

(2) Explosion; or

(3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

c. **Water Damage,** meaning:

(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) Water which backs up through sewers or drains or which overflows from a sump; or

Copyright, Insurance Services Office, Inc., 1990    HO 00 03 04 91

HANOVER000012



(3) Water below the surface of the ground, Including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

e. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

f. **War,** including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

h. **Intentional Loss,** meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, inadequate or defective:**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises."

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

a. Give prompt notice to us or our agent;

b. Notify the police in case of loss by theft;

c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

d. Protect the property from further damage. If repairs to the property are required, you must:

(1) Make reasonable and necessary repairs to protect the property; and

(2) Keep an accurate record of repair expenses;

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

f. As often as we reasonably require:

(1) Show the damaged property;

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

HANOVER000013

g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in 2.e. above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

a. Property of the following types:

(1) Personal property;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

(3) Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) The necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

(b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

However, if the cost to repair or replace the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2500;

we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.

 Copyright, Insurance Services Office, Inc., 1990    HO 00 03 04 91

HANOVER000014



(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   a. Repair or replace any part to restore the pair or set to its value before the loss; or

   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:

   a. Pay its own appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**

    The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

    If we pay the mortgagee for any loss and deny payment to you:

    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

HANOVER000015

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

   c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II - LIABILITY COVERAGES

### COVERAGE E - Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

### COVERAGE F - Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured."

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to "bodily injury" or "property damage":

   a. Which is expected or intended by the "insured";

   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

Copyright, Insurance Services Office, Inc., 1990    HO 00 03 04 91

HANOVER000016



c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

(1) On an occasional basis if used only as a residence;

(2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(3) In part, as an office, school, studio or private garage;

d. Arising out of the rendering of or failure to render professional services;

e. Arising out of a premises:

(1) Owned by an "insured";

(2) Rented to an "insured"; or

(3) Rented to others by an "insured";

that is not an "insured location";

f. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

(2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

This exclusion does not apply to:

(1) A trailer not towed by or carried on a motorized land conveyance.

(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

(a) Not owned by an "insured"; or

(b) Owned by an "insured" and on an "insured location";

(3) A motorized golf cart when used to play golf on a golf course;

(4) A vehicle or conveyance not subject to motor vehicle registration which is:

(a) Used to service an "insured's" residence;

(b) Designed for assisting the handicapped; or

(c) In dead storage on an "insured location";

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

(2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:

(a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

(b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

(c) One or more outboard engines or motors with 25 total horsepower or less;

(d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

(e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

(i) You acquire them prior to the policy period; and

(a) You declare them at policy inception; or

(b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

(ii) You acquire them during the policy period.

This coverage applies for the policy period.

(2) That are sailing vessels, with or without auxiliary power:

(a) Less than 26 feet in overall length;

(b) 26 feet or more in overall length, not owned by or rented to an "insured."

HANOVER000017

(3) That are stored;

h. Arising out of:

  (1) The ownership, maintenance, use, loading or unloading of an aircraft;

  (2) The entrustment by an "insured" of an aircraft to any person; or

  (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

i. Caused directly or indirectly by war, including the following and any consequence of any of the following:

  (1) Undeclared war, civil war, insurrection, rebellion or revolution;

  (2) Warlike act by a military force or military personnel; or

  (3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

j. Which arises out of the transmission of a communicable disease by an "insured";

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions e., f., g., and h. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured."

2. **Coverage E - Personal Liability,** does not apply to:

a. Liability:

  (1) For any loss assessment charged against you as a member of an association, corporation or community of property owners;

b. To any person eligible to receive benefits:

  (1) Voluntarily provided; or

  (2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

    (a) That directly relate to the ownership, maintenance or use of an "insured location"; or

    (b) Where the liability of others is assumed by the "insured" prior to an "occurrence";

    unless excluded in (1) above or elsewhere in this policy;

b. "Property damage" to property owned by the "insured";

c. "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

d. "Bodily injury" to any person eligible to receive any benefits:

  (1) Voluntarily provided; or

  (2) Required to be provided;

  by the "insured" under any:

  (1) Workers' compensation law;

  (2) Non-occupational disability law; or

  (3) Occupational disease law;

e. "Bodily injury" or "property damage" for which an "insured" under this policy:

  (1) Is also an insured under a nuclear energy liability policy; or

  (2) Would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

  (1) American Nuclear Insurers;

  (2) Mutual Atomic Energy Liability Underwriters;

  (3) Nuclear Insurance Association of Canada;

  or any of their successors; or

f. "Bodily injury" to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

3. **Coverage F - Medical Payments to Others,** does not apply to "bodily injury":

a. To a "residence employee" if the "bodily injury":

  (1) Occurs off the "insured location"; and

  (2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";

  (2) Required to be provided;

  under any:

Copyright, Insurance Services Office, Inc., 1990      HO 00 03 04 91

HANOVER000018



(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law;

c. From any:

(1) Nuclear reaction;

(2) Nuclear radiation; or

(3) Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

(4) Any consequence of any of these; or

d. To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

---

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

   We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section I of this policy;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

e. Arising out of:

   (1) A "business" engaged in by an "insured";

   (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or

   (3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

   This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

4. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

      (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

      (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

   This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

HO 00 03 04 91      Copyright, Insurance Services Office, Inc., 1990      **Page 15 of 18**

HANOVER000019

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II - Coverage E - Personal Liability Exclusion 2.a.(1);

2. Condition 1. Policy Period, under SECTIONS I AND II - CONDITIONS.

## SECTION II - CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

a. Give written notice to us or our agent as soon as is practical, which sets forth:

(1) The identity of the policy and "insured";

(2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

(3) Names and addresses of any claimants and witnesses;

b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

c. At our request, help us:

(1) To make settlement;

(2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

(3) With the conduct of suits and attend hearings and trials; and

(4) To secure and give evidence and obtain the attendance of witnesses;

d. Under the coverage - Damage to Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

4. **Duties of an Injured Person - Coverage F - Medical Payments to Others.**

The injured person or someone acting for the injured person will:

a. Give us written proof of claim, under oath if required, as soon as is practical; and

b. Authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTIONS I AND II - CONDITIONS

Page 16 of 18          Copyright, Insurance Services Office, Inc., 1990          HO 00 03 04 91

HANOVER000020

**The Hanover Insurance Group.**

1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements;

   relating to this insurance.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Waiver or Change of Policy Provisions.**

   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing will be sufficient proof of notice.

   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   (b) If the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

---

HANOVER000021

8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. "Insured" includes:

(1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

   Copyright, Insurance Services Office, Inc., 1990   HO 00 03 04 91

HANOVER000022



## INFLATION GUARD ENDORSEMENT

At each anniversary date, the limits shown on the Declarations Page for Coverages A, B, C and D, if applicable, may be changed. The new limits will reflect current costs in the area where the "residence premises" is located. These costs will be based upon data supplied by recognized appraisal firms as well as other internal and external sources.

Increases will be applied quarterly during the policy term. Your limits will never be decreased without your permission. This endorsement does not change the requirements of the coinsurance clause if it applies.

All other provisions of this policy apply.

231-0600 (8-98)

HANOVER000023



**NO SECTION II - LIABILITY COVERAGES FOR
HOME DAY CARE BUSINESS
LIMITED SECTION I - PROPERTY COVERAGES FOR
HOME DAY CARE BUSINESS**

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

1. Does not provide Section II - Liability Coverages because a "business" of an "insured" is excluded under exclusion 1.b. of Section II - Exclusions;

2. Does not provide Section I - Coverage B coverage where other structures are used in whole or in part for "business";

3. Limits coverage for property used on the "residence premises" for the home day care enterprise to $2,500, because Coverage C - Special Limits of Liability - item 8. imposes that limit on "business" property on the "residence premises." (Item 8. corresponds to item 5. in Form HO 00 08.);

4. Limits coverage for property used away from the "residence premises" for the home day care enterprise to $250, because Coverage C - Special Limits of Liability - item 9. imposes that limit on "business" property away from the "residence premises." Special Limit of Liability item 9. does not apply to adaptable electronic apparatus as described in Special Limit of Liability - items 10. and 11. (Items 9., 10. and 11. correspond to items 6., 7. and 8. respectively in Form HO 00 08.)

THIS ENDORSEMENT DOES **NOT** CONSTITUTE A REDUCTION OF COVERAGE.

Copyright, Insurance Services Office, Inc., 1990

HO 04 96 04 91

HANOVER000024

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS – LOUISIANA

**SECTION I – PROPERTY COVERAGES**

**COVERAGE C – PERSONAL PROPERTY**

**SPECIAL LIMITS OF LIABILITY**

Items **10.** and **11.** are deleted and replaced by the following (these are Items **7.** and **8.** in Form **HO 00 08**):

10. $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

   **a.** Accessories or antennas; or

   **b.** Tapes, wires, records, discs or other media;

   for use with any electronic apparatus described in this Item **10.**

11. $1,000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

   **a.** Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

   **b.** Is away from the "residence premises"; and

   **c.** Is used at any time or in any manner for any "business" purpose.

   Electronic apparatus includes:

   **a.** Accessories and antennas; or

   **b.** Tapes, wires, records, discs or other media;

   for use with any electronic apparatus described in this Item **11.**

**PROPERTY NOT COVERED**

Item **3.b.** is deleted and replaced by the following:

3. Motor vehicles or all other motorized land conveyances. This includes:

   **b.** Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

     **(1)** Accessories or antennas; or

     **(2)** Tapes, wires, records, discs or other media;

     for use with any electronic apparatus described in this Item **3.b.**

     The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

  We do not cover vehicles or conveyances not subject to motor vehicle registration which are:

   **a.** Used to service an "insured's" residence; or

   **b.** Designed for assisting the handicapped;

**COVERAGE D – LOSS OF USE**

For all forms other than **HO 00 04** and **HO 00 06**, Item **1.** is deleted and replaced by the following:

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

For Forms **HO 00 04** and **HO 00 06**, Item **1.** is deleted and replaced by the following:

1. If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the "residence premises" not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage, or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

**ADDITIONAL COVERAGES**

2. **Reasonable Repairs** is deleted and replaced by the following:

2. **Reasonable Repairs**

   We will pay the reasonable cost incurred by you for necessary repairs made solely to protect covered property from further damage if a Peril Insured Against causes the loss. This coverage does not increase the limit of liability that applies to the property being repaired.

HANOVER000025

**6. Credit Card, Fund Transfer Card, Forgery And Counterfeit Money** is deleted and replaced by the following:

**6. Credit Card, Fund Transfer Card, Forgery And Counterfeit Money**

We will pay up to $500 for:

a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

a. By a resident of your household;

b. By a person who has been entrusted with either type of card; or

c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured".

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when our limit of liability for the loss has been exhausted by payment of a judgment or settlement.

b. If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c. We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

**9. Glass or Safety Glazing Material** is deleted and replaced by the following:

**9. Glass Or Safety Glazing Material**

a. We cover:

(1) For all forms other than HO 00 04 and HO 00 06, the breakage of Glass Or Safety Glazing Material which is part of a covered building, storm door or storm window, and for:

(a) Form HO 00 04, the breakage of Glass Or Safety Glazing Material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

(b) Form HO 00 06, the breakage of Glass Or Safety Glazing Material which is part of a building, storm door or storm window, and covered under Coverage A; and

(2) For all forms other than HO 00 04 and HO 00 06, the breakage, caused directly by Earth Movement, of Glass Or Safety Glazing Material which is part of a covered building, storm door or storm window, and for:

(a) Form HO 00 04, the breakage, caused directly by Earth Movement, of Glass Or Safety Glazing Material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

(b) Form HO 00 06, the breakage, caused directly by Earth Movement, of Glass Or Safety Glazing Material which is part of a building, storm door or storm window, and covered under Coverage A; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

HANOVER000026

Loss to glass covered under this Additional Coverage **9.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

For Forms HO 00 01 and HO 00 08, we will pay up to $100 for loss under this coverage.

This coverage does not increase the limit of liability that applies to the damaged property.

(This is Additional Coverage **8.** in Forms HO 00 01 and HO 00 08.)

The following Additional Coverage is added to all forms except HO 00 08. With respect to Form HO 00 04, the words 'covered building' used below, refer to property covered under Additional Coverage **10.** Building Additions And Alterations.

**11. Ordinance Or Law**

  **a.** You may use up to 10% of the limit of liability that applies to Coverage A (or for Form HO 00 04, you may use up to 10% of the limit of liability that applies to Building Additions And Alterations) for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

    **(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

    **(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

    **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

  **b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

  **c.** We do not cover:

    **(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

    **(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

    Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is Additional Coverage **10.** in Forms HO 00 01 and HO 00 06.)

**SECTION I – PERILS INSURED AGAINST**

**COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES**

Under Form HO 00 03 Item 2.d. is deleted and replaced by the following:

**d.** Vandalism and malicious mischief if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

Under Forms HO 00 04 and HO 00 06 Item **8.** Vandalism or malicious mischief is deleted and replaced by the following:

**8. Vandalism or malicious mischief.**

This peril does not include loss to property on the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

**SECTION I – EXCLUSIONS**

  **a..** Ordinance or Law is deleted and replaced by the following:

  **a..** Ordinance Or Law, meaning any ordinance or law:

    **1.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **1.a.** in all forms other than HO 00 03, **1.a.(1)** in Form HO 00 03, does not apply to the amount of coverage that may be provided for under Additional Coverages, Glass Or Safety Glazing Material or Ordinance Or Law;

    **2.** The requirements of which result in a loss in value to property; or

---

HANOVER000027

3. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

(This is Exclusion a.1. in Form HO 00 03.)

**2. Earth Movement** is deleted and replaced by the following:

2. Earth Movement, meaning earthquake, including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

   a. Fire; or

   b. Explosion;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

(This is Exclusion 1.b. in Form HO 00 03.)

**4. Power Failure** is deleted and replaced by the following:

4. Power Failure, meaning the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss or damage caused by that Peril Insured Against.

(This is Exclusion 1.d. in Form HO 00 03.)

**8. Intentional Loss** is deleted and replaced by the following:

8. Intentional Loss, meaning any loss arising out of any act committed:

   a. With respect to loss caused by fire;

   (1) By or at the direction of the "insured"; and

   (2) With the intent to cause a loss.

   b. With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this policy;

   (1) By you or at your direction; and

   (2) With the intent to cause a loss.

(This is Item 1.h. in Form HO 00 03.)

**SECTION I – CONDITIONS**

**2. Your Duties After Loss**

Paragraph **g.** is replaced by the following:

**g.** Send to us your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   (1) The time and cause of loss;

   (2) The interests of all "insureds" and all others in the property involved and all liens on the property;

   (3) Other insurance which may cover the loss;

   (4) Changes in title or occupancy of the property during the term of the policy;

   (5) Specifications of damaged buildings and detailed repair estimates;

   (6) The inventory of damaged personal property described in **2.e.** above;

   (7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   (8) Evidence or affidavit that supports a claim under **Additional Coverages 6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

This proof of loss must be sent to us within:

   (1) 180 days after our request, if the loss results from a catastrophic event for which a state of disaster or emergency was declared pursuant to law by civil officials; however, this 180 day period does not commence until the state of emergency or disaster has ended and you have access to your property; or

   (2) 60 days after our request in all other cases.

**3. Loss Settlement**

Under Forms **HO 00 02** and **HO 00 03**, Item **b.(1)(b)** is deleted and replaced by the following:

   (b) The replacement cost of that part of the building damaged with material of like kind and quality; or

Under Form **HO 00 06**, Item **b.(2)** is deleted and replaced by the following:

   (2) If the damage is not repaired or replaced within a reasonable time, at actual cash value but not more than the amount required to repair or replace.

HANOVER000028

Under Form **HO 00 03** Item **3.b.(5)** is deleted and replaced by the following:

(5) You may disregard the replacement cost loss settlement provisions and make claim under this Policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition D. Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building. However, if the loss results from a catastrophic event for which a state of disaster or emergency was declared pursuant to law by civil officials, this 180-day period is increased to one year or the issuance of applicable insurance proceeds, whichever is later, and does not commence until the state of emergency or disaster has ended and you have access to your property.

6. **Appraisal** is deleted and replaced by the following for all forms:

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. Any outcome of the appraisal will not be binding on either party.

Each party will:

1. Pay its own appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

8. **Suit Against Us** is deleted and replaced by the following for all forms:

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within 24 months after the date of loss.

9. **Our Option** is deleted and replaced by the following:

9. **Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

10. **Loss Payment** is deleted and replaced by the following:

10. **Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. The undisputed portion of the loss will be payable within 30 days after we receive your proof of loss.

12. **Mortgage Clause**

The following sentence is deleted:

If the policy is cancelled or not renewed by us, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

The following sentences are added to replace the above:

If this policy is cancelled by us, the mortgagee will be notified:

a. At least 10 days before the date cancellation takes effect if we cancel for nonpayment of premium; or

b. At least 30 days before the date cancellation takes effect if we cancel for any other reason.

If the policy is not renewed by us, the mortgagee will be notified at least 30 days before the date nonrenewal takes effect.

## SECTION II – LIABILITY COVERAGES

Under **Coverage E – Personal Liability,** Items **1.** and **2.** are deleted and replaced by the following:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

## SECTION II – EXCLUSIONS

Under **1. Coverage E – Personal Liability and Coverage F – Medical Payments To Others,** Item **a.** is deleted and replaced by the following in all forms and Endorsement **HO 24 73:**

a. With respect to loss caused by fire;

(1) Which is expected or intended by the "insured" even if the "bodily injury" or "property damage":

(I) Is of a different kind, quality, or degree than initially expected or intended; or

(II) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion **1.a.(1)** does not apply to "bodily injury" resulting from the use of reasonable force by the "insured" to protect persons or property.

HANOVER000029

b. With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this policy;

  (1) Which is expected or intended by one or more "insureds" even if the "bodily injury" or "property damage":

    (i) Is of a different kind, quality, or degree than initially expected or intended; or

    (ii) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this Exclusion 1.b.(1) does not apply to "bodily injury" resulting from the use of reasonable force by one or more "insureds" to protect persons or property.

Item f.(3), Item g.(3) and Item h.(3) are deleted.

**SECTION II – CONDITIONS**

6. **Suit Against Us** does not apply.

**SECTIONS I AND II – CONDITIONS**

2. **Concealment or Fraud** is deleted and replaced by the following:

2. **Concealment Or Fraud**

a. Under Section I – Property Coverages:

  (1) With respect to loss caused by fire, we do not provide coverage to the "insured" who, whether before or after a loss, has:

    (a) Intentionally concealed or misrepresented any material fact or circumstance;

    (b) Engaged in fraudulent conduct; or

    (c) Made false statements;

    relating to this insurance.

  (2) With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this policy, we provide no coverage for loss under Section I – Property Coverages if, whether before or after a loss, one or more "insureds" have:

    (a) Intentionally concealed or misrepresented any material fact or circumstance;

    (b) Engaged in fraudulent conduct; or

    (c) Made false statements;

    relating to this insurance.

b. Under Section II – Liability Coverages, we do not provide coverage to one or more "insured" who, whether before or after a loss, have:

  (1) Intentionally concealed or misrepresented any material fact or circumstance;

  (2) Engaged in fraudulent conduct; or

  (3) Made false statements;

  relating to this insurance.

c. However, if the conduct specified under a. or b. above is in relation to the procurement of the contract or occurs subsequent to the issuance of the contract, but if known to us would have caused us not to issue the policy, coverage will only be denied if the conduct was committed with the intent to deceive.

5. **Cancellation**

Paragraphs b., c. and d. are deleted and replaced by the following:

b. The following applies with respect to premium payments due on new and renewal policies, including installment payments:

  (1) If your premium payment check or other negotiable instrument is returned to us or our agent or a premium finance company because it is uncollectible for any reason, we may cancel the policy subject to Paragraphs (2) and (3) below.

  (2) We may cancel the policy effective from the date the premium payment was due, by sending you written notice by certified mail, or by delivering such notice to you within 10 days of the date that we receive notice of the returned check or negotiable instrument.

  (3) The cancellation notice will also advise you that the policy will be reinstated effective from the date the premium payment was due, if you present to us a cashier's check or money order for the full amount of the returned check or other negotiable instrument within 10 days of the date that the cancellation notice was mailed.

c. The following applies if b. above does not apply.

We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

  (1) When you have not paid the premium, regardless of the period of time this policy has been in effect, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

HANOVER000030

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us except as provided in Item c.(5) below, we may cancel:

(a) if there has been a material misrepresentation of fact with the intent to deceive:

(1) In the procurement of the contract; or

(2) At any other time since the policy was issued;

which if known to us would have caused us not to issue the policy; or

(b) if the risk has changed substantially since the policy was issued.

This can be done by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period of:

(a) More than one year; or

(b) Three years or less;

we may cancel for any reason at anniversary by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

(5) When this policy has been in effect and renewed for more than three years, we may cancel for any one of the following:

(a) If you have committed fraud with the intent to deceive:

(1) In the procurement of the contract; or

(2) At any other time since the policy was issued;

(b) If the insured risk has undergone a material change;

(c) If you have filed two or more claims within a continuous three-year period within the five years preceding the current policy renewal date; or

(d) If the continuation of this policy endangers our solvency.

This can be done by letting you and any other known person shown by the policy to have an interest in any loss which may occur thereunder know at least 30 days before the date cancellation takes effect.

We will not, however, cancel this policy, regardless of the period of time this policy has been in effect, based solely upon a loss caused by an Act of God. An Act of God means an incident due directly to natural causes and exclusively without human intervention.

d. If this policy is cancelled, we will return any premium refund due, subject to Paragraphs (1), (2) and (3) below. The cancellation will be effective even if we have not made or offered a refund.

(1) If you cancel this policy, we will refund the return premium, if any, within 30 days after the date cancellation takes effect. The return premium shall be computed on a pro rata basis, subject to the minimum premium requirements.

(2) If we cancel this policy, and the return premium is not refunded with the notice of cancellation, we will refund it within a reasonable time after the date cancellation takes effect. We will send the refund to you unless (3) below applies.

(3) If we cancel based on Paragraph b. above, we will return the premium due, if any, within 10 days after the expiration of the 10-day period referred to in b.(3). If the policy was financed by a premium finance company, or if payment was advanced by the insurance agent, we will send the return premium directly to such payor.

6. Nonrenewal is deleted and replaced by the following:

6. Nonrenewal

a. We may elect not to renew this policy, subject to the provisions of Paragraphs b. and c. below. We may do so by delivering to you and any other known person shown by the policy to have an interest in any loss which may occur thereunder or mailing to you at your mailing address shown in the Declaration and to any other known person shown by the policy to have an interest in any loss which may occur thereunder, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

b. If this policy has been in effect and renewed with us for more than three years, we will not exercise our right of nonrenewal except:

(1) When you have not paid the premium;

(2) If you have committed fraud;

HANOVER000031

      **(3)** If the insured risk has undergone a substantial change;

      **(4)** If you have filed two or more claims within a continuous three-year period within the five years preceding the current policy renewal date; or

      **(5)** If the continuation of this policy endangers our solvency.

   **c.** We will not, however, exercise our right of nonrenewal, regardless of the period of time this policy has been in effect with us, based solely upon a loss caused by an Act of God. An Act of God means an incident due directly to natural causes and exclusively without human intervention.

**8. Subrogation**

The following paragraph is added:

If we pay an "insured" for a loss caused by another "insured" who intentionally commits, or directs another to commit, any act that results in loss by fire, the rights of the "insured" to recover damages from the "insured" who intentionally committed, or directed another to commit, such an act are transferred to us to the extent of our payment. The "insured" may not waive such rights.

All other provisions of this policy apply.

HANOVER000032

## CONNECTIONS TOTAL HOUSEHOLD REWARDS

This endorsement is a part of your policy. It is effective on the date when both your Personal Auto and Home are insured with us or one of our companies.

The coverage provided is deemed terminated effective on the date when either your Personal Auto or Home is no longer insured by us or one of our companies.

**Account Single Loss Deductible**
   Except for the changes this coverage makes, all other terms and conditions of the policy apply.

   If both your Personal Auto and Home are insured with the Hanover Insurance Company or one of its affiliates at the time a single loss incident affects both policies, we will waive the lower of the two deductibles if the amount of the loss to the policy with the higher deductible exceeds the deductible amount.

**Fire Extinguisher Recharge or Replacement**
   Except for the changes this coverage makes, all other terms and conditions of the policy apply.

   We will pay expenses incurred to recharge or replace a portable fire extinguisher after it is used to fight a fire covered by this policy at the residence premises. If the fire extinguisher cannot be recharged, we will replace it with one of the same or similar size and specifications. No deductible applies to this coverage.

**Mortgage Extra Expense Coverage**
   Except for the changes this coverage makes, all other terms and conditions of the policy apply.

   If a covered peril causes a total loss to your dwelling, we will reimburse you for the following costs and expenses incurred within 120 days of the loss to replace the damaged property:

   a.  Acquisition Costs.

      We will pay up to $1,000 for the following direct monetary costs to purchase the replacement property:
         1)  Title search fees;
         2)  Appraisal fees; and
         3)  Application fees.

   b.  Additional Monthly Mortgage Expense

      We will pay that part of the additional monthly mortgage expense on the replacement dwelling which is due to a higher rate of interest. This is based on the balance owed on the original mortgage at the time of loss and for a like term.

      Our limit of liability shall not exceed $250 per month for one year from the date of the first payment. Payment under this coverage will be made semi-annually when you provide satisfactory evidence the mortgage for which payment is being made remains in full force and effect. It is also required that proof of the current rate of interest be provided.

   The term "total loss" when used in this Mortgage Extra Expense Coverage, means a covered loss to your dwelling for which we have paid or agreed to pay an amount equal to the total limit of liability shown on the Declarations Page for Coverage A - Dwelling.

   No deductible applies to this coverage.

All other policy provisions apply.

231-6252 0217

Page 1 of 1

HANOVER000033



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## INCREASED LIMITS ON BUSINESS PROPERTY

For an additional premium, the following Special Limits of Liability are amended.

1. The Coverage C - Personal Property Special Limit of Liability item 8. that applies to "business" property on the "residence premises" is increased by the additional limit of liability shown below.

| Increase in Limit of Liability* | Total Limit of Liability* |
|---|---|
| $ | $ |

The "Increase in Limit of Liability" does not apply to:

a. "Business" property in storage or held as a sample or for sale or delivery after sale; or

b. "Business" property pertaining to a "business" actually conducted on the "residence premises."

2. The Coverage C - Personal Property Special Limit of Liability item 9. that applies to "business" property away from the "residence premises" is increased by the additional limit of liability shown below.

| Increase in Limit of Liability* | Total Limit of Liability* |
|---|---|
| $ | $ |

The "Increase in Limit of Liability" does not apply to adaptable electronic apparatus as described in Special Limit of Liability items 10. and 11.:

This endorsement does not increase the limit of liability for Coverage C - Personal Property.

* Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

HANOVER000034



The Hanover Insurance Company | 440 Lincoln Street, Worcester, MA 01653
Citizens Insurance Company of America | 645 West Grand River Avenue, Howell, MI 48843

**Coverage C Increased
Special Limits of Liability**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

For an additional premium, the Special Limits of Liability under Coverage C–Personal Property are increased as follows:

| Property | Increase in Limit of Liability* | Total Limit of Liability* |
|---|---|---|
| 1. Money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals. | $ | $ |
| 2. Securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. | $ | $ |
| 5. Jewelry, watches, furs, precious and semi-precious stones for loss by theft; but not exceeding $2,500 for any one article. | $ | $ |
| 6. Firearms for loss by theft. | $ | $ |
| 7. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware for loss by theft. | $ | $ |
| 10. Electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. | $ | $ |
| 11. Electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. This special limit applies only if the electronic apparatus is away from the "residence premises" and used at any time or in any manner for any "business" purpose. | $ | $ |

Includes copyrighted information from
Insurance Services Office, Inc., with their permission.

HANOVER000035



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COVERAGE C INCREASED SPECIAL LIMITS OF LIABILITY - WATERCRAFT

**SECTION I - PROPERTY COVERAGES**
**COVERAGE C - PERSONAL PROPERTY**

**Special Limits Of Liability**

The special limit of liability is increased as per below:

| Property | Increase In Limit Of Liability * | Total Limit Of Liability * |
|---|---|---|
| 3. Watercraft, including their trailers, furnishings, equipment and outboard engines or motors. | | |

All other provisions of this policy apply.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

Page 1 of 1

HANOVER000036



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COVERAGE C INCREASED SPECIAL LIMITS OF LIABILITY - TRAILERS

| SECTION I - PROPERTY COVERAGES COVERAGE C - PERSONAL PROPERTY | | |
|---|---|---|
| **Special Limits Of Liability** The special limit of liability is increased as noted below: | | |
| **Property** | **Increase In Limit Of Liability \*** | **Total Limit Of Liability \*** |
| 4. Trailers not used with watercraft. | | |
| All other provisions of this policy apply. | | |

\*Entries may be left blank if shown elsewhere in this policy for this coverage.

HANOVER000037



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY COVERAGE
### Increased Limit

For an additional premium, the limit of liability for Additional Coverage 6., Credit Card, Fund Transfer Card, Forgery and Counterfeit Money, is increased to $ _____ *.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1990

HO 04 53 04 91

HANOVER000038



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL COVERAGE - INCREASED LIMIT
# TREES, SHRUBS AND OTHER PLANTS

**SECTION I - PROPERTY COVERAGES**
**ADDITIONAL COVERAGES- 3. Trees, Shrubs and Other Plants.**

The $500 limit available for any one tree, shrub or plant under this coverage is replaced with the new limit as shown on the declarations page.

231-2326 0606

Page 1 of 1

HANOVER000039



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL COVERAGE - INCREASED LIMIT
# FIRE DEPARTMENT SERVICE CHARGE

| SECTION I - PROPERTY COVERAGES ADDITIONAL COVERAGES | | Increase In Limit Of Liability * | Total Limit Of Liability * |
|---|---|---|---|
| The additional coverage limit is increased as noted below: | | | |
| | Property | | |
| 4. | Fire Department Service Charge | | |
| All other provisions of this policy apply. | | | |
| *Entries may be left blank if shown elsewhere in this policy for this coverage. | | | |

HANOVER000040



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SECTION II - ADDITIONAL COVERAGE
## INCREASED LIMIT - DAMAGE TO PROPERTY OF OTHERS

| SECTION II - LIABILITY COVERAGES ADDITIONAL COVERAGES | | | |
|---|---|---|---|
| | The additional coverage limit is increased as noted below: | | |
| | **Property** | **Increase in Limit Of Liability \*** | **Total Limit Of Liability \*** |
| 3. | Damage to Property of Others | | |
| All other provisions of this policy apply. | | | |
| *Entries may be left blank if shown elsewhere in this policy for this coverage. | | | |

HANOVER000041



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LOSS ASSESSMENT COVERAGE

1.  **Increased Limit - Residence Premises**
    For an additional premium, the limit of liability for Section I Additional Coverage 7 and Section II Additional Coverage 4, Loss Assessment, is increased to:

| Increase in Limit of Liability* | Total Limit of Liability* |
|---|---|
| $ | $ |

SPECIAL LIMIT - We will not pay more than $1,000 of your assessment that results from a deductible in the policy of insurance purchased by a corporation or association of property owners.

2.  **Additional Locations**
    For an additional premium, we agree to pay, up to the limit of liability listed below, your share of covered loss assessments as described in Section I Additional Coverage 7 and Section II Additional Coverage 4 of the policy, arising out of the premises listed below.

| Location of Unit* | Limit of Liability* |
|---|---|
| | |

SPECIAL LIMIT - We will not pay more than $1,000 of your assessment per unit that results from a deductible in the policy of insurance purchased by a corporation or association of property owners.
Section II - Coverage E - Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

*Entries may be left blank if shown elsewhere in this policy for this coverage.
All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1990

HO 04 35 04 91

HANOVER000042



## EXTENDED DWELLING REPLACEMENT COST COVERAGE – 125%

We will provide replacement cost insurance for the residence premises shown in the Declarations.

This coverage applies only to the dwelling insured under Coverage A.

1. Section I - Conditions, 3.b. Loss Settlement – Coverage A is replaced by the following:

    a. The limit of liability for Coverage A – Dwelling will be no more than one hundred and twenty five percent of the Coverage A limit shown on the Declarations page.

    b. The limit of liability for Coverage A will be no more than the amount spent to repair or replace all or part of the Dwelling with the same type of construction at the same location.

    c. If the replacement of covered property is not feasible because the property or materials are:
        1. irreplaceable antiques;
        2. obsolete;
        3. rare; or
        4. not available,

    we will reimburse you for materials of like kind and quality to those damaged.

    d. When damage exceeds two thousand five hundred dollars, up to the Coverage A limit, we will not pay more than the actual cash value of the damage until the repair or replacement is complete.

    e. The named insured may file a claim on an actual cash value basis. Then, within one hundred and eighty days after the loss, make a claim for additional liability due according to the provisions of this endorsement.

    If the loss is the result of a catastrophic event for which a state of disaster or emergency was declared pursuant to law by civil officials, this 180-day period does not commence until the state of emergency or disaster has ended and you have access to your property.

    Pursuant to LA S 22:1264, for losses that arose due to a catastrophic event for which a state of disaster or emergency was declared pursuant to law by civil officials, for those areas within the declaration, the named insured shall be entitled to complete repairs to the property within one year from the date of the loss or the issuance of applicable insurance proceeds, whichever is later.

2. The named insured agrees to:

    a. Keep the Coverage A limit at one hundred percent of replacement cost.

    b. Report to us within ninety days of the start of any improvements or additions to the dwelling.

    If you do not notify us and the cost exceeds ten thousand dollars, the Coverage A Limit shown on the Declarations will again become the maximum limit of liability.

    c. Pay renewal premiums that reflect the current replacement cost of the Dwelling. The amount of the increase shall be made in consideration of changes in the cost of construction. Payment of the renewal premium will constitute acceptance of the revised limit.

All other terms and conditions of this policy apply.

231-5950 0610

**The Hanover** Insurance Group®

The Hanover Insurance Company | 440 Lincoln Street, Worcester, MA 01653
Citizens Insurance Company of America | 645 West Grand River Avenue, Howell, MI 48843

**Personal Property
Replacement Cost**

**HOMEOWNERS
HO 04 90 04 91**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

**SECTION I**

For an additional premium, covered losses to the following property are settled at replacement cost at the time of loss:

   **a.** Coverage C—Personal Property

   **b.** If covered in this policy, awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings.

Personal Property Replacement Cost coverage will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy:

   **a.** Jewelry

   **b.** Furs and garments trimmed with fur or consisting principally of fur;

   **c.** Cameras, projection machines, films and related articles of equipment;

   **d.** Musical equipment and related articles of equipment;

   **e.** Silverware, silver-plated ware and pewter ware, but excluding pens, pencils, flasks, smoking implements or jewelry and;

   **f.** Golfer's equipment meaning golf clubs, golf clothing and golf equipment;

Personal Property Replacement Cost coverage will not apply to other classes of property separately described and specifically insured.

**1. PROPERTY NOT ELIGIBLE**

Property listed below is not eligible for replacement cost settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

   **a.** Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

   **b.** Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

   **c.** Articles not maintained in good or workable condition.

   **d.** Articles that are outdated or obsolete and are stored or not being used.

**2. REPLACEMENT COST**

The following loss settlement procedure applies to all property insured under this endorsement:

   **a.** We will pay no more than the least of the following amounts:

     **(1)** Replacement cost at the time of loss without deduction for depreciation;

     **(2)** The full cost of repair at the time of loss;

     **(3)** The limit of liability that applies to Coverage C, if applicable

     **(4)** Any applicable special limits of liability stated in this policy; or

     **(5)** For loss to any item separately described and specifically insured in this policy, the limit of liability that applies to the item.

   **b.** When the replacement cost for the entire loss under this endorsement is more than $500, we will pay no more than the actual cash value for the loss or damage until the actual repair or replacement is complete.

   **c.** You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability in accordance with this endorsement.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1990

HANOVER000044



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# REFRIGERATED PROPERTY COVERAGE

**SECTION I - PROPERTY COVERAGES**
**ADDITIONAL COVERAGES**

The following coverage is an added.

**Refrigerated Property Coverage**

We will pay up to $500 for a direct loss to covered property stored in freezers or refrigerators on the "residence pre m ises." The loss must be caused by one of the two events I isted here.

1.  The interruption of electrical service to the unit. The interruption:
    a.  must be caused by damage to generating equipment; or
    b.  must be caused by damage to transmitting equipment.
2.  The Mechanical failure of the unit storing the covered property.

Coverage will apply only if the following conditions are met.

1.  You have kept the unit in proper working condition im mediately prior to the loss.

2.  You have exercised diligence in inspecting the unit and maintaining the unit.
3.  All reasonable means are used to protect the covered property from more damage.

The limit of liability for Coverage C is not increased by this endorsement.

The Section I - Power Failure exclusion does not apply to this coverage.

**Deductible**

This coverage is subject to your policy level deductible. This deductible is shown on your declarations page. We will only pay that part of the loss that is in excess of your policy level deductible.

All other provisions of the policy apply.

231-2341 0606

HANOVER000045



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOCK REPLACEMENT COVERAGE

**SECTION I - PROPERTY COVERAGES
ADDITIONAL COVERAGES**

The following Additional Coverage is added:

**Lock Replacement**

We will pay up to the limit described in your Declarations page for locks or cylinders which are replaced as a result of stolen keys. We, and the police, must be promptly notified of the theft.

The stolen keys must be to those buildings and structures at the residence premises. The locks must be replaced within seventy-two hours after the keys are stolen. We do not cover locks used with any vehicle, watercraft or aircraft. Keys given to a custodian are not considered stolen. We will pay the amount spent to repair or replace the locks or cylinder with ones of like kind and quality.

This coverage is extra insurance. No deductible applies.

231-2331 0606

**Page 1 of 1**

HANOVER000046



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

### IDENTITY FRAUD EXPENSE COVERAGE

We will pay for "identity fraud expenses" of an "insured" incurred as a result of an "identity fraud occurrence". This includes "identity fraud" resulting from internet usage by any "insured".

**Section II Personal Liability:**
We will pay up to $25,000 for any one occurrence of "identity fraud" anywhere in the world. A $250 deductible applies to each occurrence of "identity fraud".

**DEFINITIONS**
"Identity fraud" is defined as the act of transfer or use of the means of identity of an "insured", without lawful authority, which constitutes a:
1.  violation of federal law; or
2.  crime under any applicable:
    a.  state; or
    b.  other governmental body's law.

"Identity fraud" includes the misuse of an "insured's":
1.  name;
2.  address;
3.  social security number;
4.  bank account number; or
5.  other identifying information; and the use of that information to:
    a.  open credit card accounts;
    b.  take over existing accounts;
    c.  obtain loans in the "insured's" name; or
    d.  steal funds from the covered person's savings, checking or investment accounts.

"Identify fraud occurrence" is defined as an act or series of acts of "identity fraud" by a person or group, commencing within the policy period.

"Identity fraud expenses" is defined as expenses incurred:
1.  To prepare and notarize documents, affidavits or similar documents for:
    a.  credit bureaus;
    b.  financial institutions and similar credit grantors; and
    c.  law enforcement agencies.
2.  Sending certified mail to:
    a.  credit bureaus;
    b.  financial institutions and similar credit grantors; and
    c.  law enforcement agencies.
3.  To reapply for credit or loan or loans as a result of a rejection of credit or a loan due to the lender having incorrect credit information as a result of "identity fraud".

**ADDITIONAL COVERAGES**
We will also pay for:
1.  Lost earnings of an "insured" as a result of time off from work to complete fraud related documents and meet with:

231-1937 (1-01)                                                                 **Page 1 of 2**

a.  law enforcement agencies;

b.  credit agencies;

c.  merchants;

d.  financial institutions; or

e.  legal counsel.

We will pay up to $250 per day with a maximum coverage of $2,000. This is included in the limit of liability for "identity fraud".

2.  Reasonable and customary attorney fees incurred as a result of an "identify fraud occurrence" for the following reasons:

a.  the defense of an "insured" against any suit(s) by businesses or their collection agencies;

b.  the removal of any criminal or civil judgements wrongfully entered against an "insured";

c.  challenging information contained in a credit report;

d.  any other attorney fees associated with clearing an "insured" name and reputation due to an "identity fraud".

We will pay for these attorney fees only when;

(1)  You have provided notice to us prior to hiring and incurring attorney fees, and

(2)  You have received our written consent to do so.

## EXCLUSIONS

This endorsement does not apply if law enforcement authorities determine that the "identify fraud occurrence" has been committed:

1.  by an occupant of the "residence premises" or blood relative; or

2.  as a result of an "insured" or any other person acting with or at the direction of an "insured" to cause a dishonest or criminal act, whether acting alone or in collusion with others.

This endorsement does not cover direct loss caused by, or related to, "identity fraud" including, but not limited to, consequential loss or damage other than expressly provided for within this endorsement.

All other provisions of this policy apply.

231-1937 (1-01)                                                                Page 2 of 2



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PERSONAL INJURY

For an additional premium, under Coverage E - Personal Liability, the definition "bodily injury" is amended to include personal injury.

"Personal injury" means injury arising out of one or more of the following offenses:

1.  False arrest, detention or imprisonment, or malicious prosecution;
2.  Libel, slander or defamation of character; or
3.  Invasion of privacy, wrongful eviction or wrongful entry.

Section II Exclusions do not apply to personal injury.

Personal injury insurance does not apply to:

1.  Liability assumed by the "insured" under any contract or agreement except any indemnity obligation assumed by the "insured" under a written contract directly relating to the ownership, maintenance or use of the premises;
2.  Injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an "insured";
3.  Injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by the "insured";
4.  Injury arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";
5.  Civic or public activities performed for pay by an "insured"; or
6.  Injury to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1990

HO 24 82 04 91

HANOVER000049



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ORDINANCE OR LAW - INCREASED AMOUNT OF COVERAGE
### HO 04 77 06 94

For the premium charged, the percentage applied to the Coverage A limit of liability, or for Form HO 00 04, the percentage applied to the Building Additions and Alterations limit of liability, under Additional Coverage 11. Ordinance or Law, is increased from 10% to the percentage shown below.

**New Total Percentage**        %*

This is Additional Coverage 10. in Forms HO 00 01 and HO 00 06.

* Entry may be left blank if shown elsewhere in the policy for this coverage.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1994

HO 04 77 06 94



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE

### FOR USE WITH FORM HO 00 03

### DEFINITIONS

The following definition is added:

"Fungi"

a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

b. Under Section II, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

### SECTION I - PROPERTY COVERAGES

### ADDITIONAL COVERAGES

The following Additional Coverage is added:

**11. "Fungi", Wet Or Dry Rot, Or Bacteria**

a. The amount shown on the Declarations is the most we will pay for:

(1) The total of all loss payable under Section I - Property Coverages caused by or resulting from "fungi", wet or dry rot, or bacteria;

(2) The cost to remove "fungi", wet or dry rot, or bacteria from property covered under **Section I - Property Coverages**;

(3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

(4) The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after:

    (i)    removal;

    (ii)   repair;

    (iii)  restoration; or

    (iv)  replacement.

The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

b. The coverage described in 11.a. only applies:

(1) when such loss or costs are a result of a Peril Insured Against that occurs during the policy period; and

(2) if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

c. The limit of liability in 11.a. for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

(1) Number of locations insured under this endorsement; or

(2) Number of claims made.

d. If there is a covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This coverage does not increase the limit of liability applying to the damaged covered property.

The limit of liability applies to the total of all loss or costs payable under this endorsement per policy period, regardless of:

    a)  the number of "occurrences";

    b)  the number of claims made; or

    c)  the number of locations

insured under this endorsement.

### SECTION I - PERILS INSURED AGAINST

### COVERAGE A - DWELLING AND COVERAGE B - OTHER STRUCTURES

Paragraph 2.e.(3) is deleted and replaced by the following:

(3) Smog, rust or other corrosion;

Paragraph 2.e.(9) is added:

HANOVER000051

(3) Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

## COVERAGE C - PERSONAL PROPERTY

Paragraph 12.d. is added:

d. Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting dam-age is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form HO 00 03 with HO 00 15:

Paragraph 1.b.(4)(c) is deleted and replaced by the following:

(c) Smog, rust or other corrosion;

Paragraph 1.b.(4)(i) is added:

(i) Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting dam-age is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

## SECTION I - EXCLUSIONS

The following Exclusion is added.

"Fungi", Wet Or Dry Rot, Or Bacteria

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This Exclusion does not apply:

(a) When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

(b) To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section I - Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

## SECTION II - CONDITIONS

Condition 1. Limit Of Liability is deleted and replaced by the following:

1. Limit Of Liability

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

However, our total liability under Coverage E for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria will not be more than the Section II Coverage E Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria. That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

a. Number of locations insured under the policy to which this endorsement is attached;

b. Number of persons injured;

c. Number of persons whose property is damaged;

d. Number of "insureds"; or

e. Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage E limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

231-2060 (10-04)   Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 2001.   Page 2 of 3

HANOVER000052



With respect to damages arising out of "fungi", wet or dry rot, or bacteria described in 1. Limit Of Liability·of this endorsement, Condition 2. Severability Of Insurance is deleted and replaced by the following:

**2. Severability Of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section II Conditions 1. Limit Of Liability. This condition will not increase the limit of liability for this coverage.

**SECTION I AND II - CONDITIONS**

Condition 1. Policy Period is deleted and replaced with the following:

**1. Policy Period**

This policy applies only to loss or costs in:

a. Section I ; or

b. "bodily injury" or "property damage" in Section II;

which occurs during the policy period.

All other provisions of the policy apply.

HANOVER000053



Declaration Page
HO-3 Select Plus Trim Coverage - Louisiana

This statement of coverage is added to your Policy **Declarations**. The following coverages are either additional coverages to your HO 00 03 policy, or increased limits already provided by your HO 00 03 contract.

| COVERAGE | LIMIT OF LIABILITY | FORM NUMBER |
|---|---|---|
| Coverage C - Personal Property | Increased to 75% of the Coverage A Limit | See Coverage C Limits Listed in the Declarations |
| Coverage D - Loss of Use | Increased to 30% of the Coverage A Limit | See Coverage D Limit Listed in the Declarations |
| Personal Injury Coverage | Section II Coverage E Limit | HO 24 82 04 91 |
| Loss Assessment Coverage | $5,000* | HO 04 35 04 91 |
| Business Property On Premises | $5,000 | 231-2364 06 06 |
| Business Property Off Premises | $1,000 | 231-2364 06 06 |
| Money, Bank Notes and Related Items | $750 | 231-2745 09 09 |
| Securities, Records and Related Items | $5,000 | 231-2745 09 09 |
| Silverware | $5,000 | 231-2745 09 09 |
| Jewelry, Watches and Furs | $5,000 | 231-2745 09 09 |
| Watercraft | $2,500 | 231-2323 06 06 |
| Trailers-Not used with Watercraft | $2,500 | 231-2324 06 06 |
| Firearms | $3,000 | 231-2745 09 09 |
| Credit Card, Forgery, Counterfeit | $5,000 | HO 04 53 04 91 |
| Trees, Shrubs, Plants per item Limit | $1,000 per item | 231-2326 06 06 |
| Fire Department Service Charge | $1,500 | 231-2325 06 06 |
| Damage to Property of Others | $1,500 | 231-2328 06 06 |
| Extended Dwelling Replacement Cost | 125% of the Coverage A Limit | 231-5950 06 10 |
| Refrigerated Products | $500 | 231-2341 06 06 |
| Lock Replacement | $1,000 | 231-2331 06 06 |
| Identity Fraud Expense | $25,000 | 231-1937 01 01 |
| Ordinance or Law | 20% of the Coverage A Limit | HO 04 77 06 94 |
| Personal Property Replacement Cost | Provides Replacement Cost Coverage for Coverage C-Personal Property. | HO 04 90 04 91 |

* The limit shown here for Loss Assessment is in addition to any other Loss Assessment Coverage shown on your Declarations Page. If additional coverage has not been chosen, the limit shown here is the total policy limit.

231-5928 06 10



## PREMISES ALARM OR FIRE PROTECTION SYSTEM

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler alarm system approved by us on the **RESIDENCE PREMISES.** You agree to maintain this system in working order and to notify us promptly of any changes made to the system or if it is removed.

We further agree that if credit is given for a local burglar alarm or a burglar alarm reporting to either a central station or a police department, we will waive the deductible shown on the declarations page for any theft loss from the **RESIDENCE PREMISES,** if it is determined that the alarm system functioned as designed.

391-0565 (1-83)

HANOVER000055



## SCHEDULED GOLF CART ENDORSEMENT

For an additional premium, we cover the golf carts shown and described on your Declarations Page. This coverage is subject to the DEFINITIONS, SECTION I - CONDITIONS, SECTIONS I AND II - CONDITIONS AND ALL PROVISIONS OF THIS ENDORSEMENT. The Section I deductible as shown in the Declarations does not apply to this coverage and is replaced with a $100 all perils deductible.

### DEFINITION

Golf carts are described as 3 or 4 wheeled motor vehicles powered by either an electric motor or an internal combustion engine, used to carry golf clubs, golf equipment, and transport golfers around a golf course. It is designed to be used mainly off public roads on a golf course.

### PERILS INSURED AGAINST

We insure against risks of direct loss to property described only if that loss is a physical loss to property; however, we do not insure loss caused by any of the following.

1.  Wear and tear, marring, gradual deterioration or inherent vice;

2.  Insects, rodents, vermin or domestic animals.

3.  War, including the following and any consequence of any of the following:

    a.  undeclared war, civil war, insurrection, rebellion or revolution;
    b.  warlike act by a military force or military personnel;
    c.  destruction, seizure or use for a military purpose.
    Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

4.  Nuclear Hazard, to the extent set forth in the Nuclear Hazard Clause of Section I - Conditions.

5.  Loss to your golf cart while rented or leased to any person or organization other than you.

6.  Loss to your golf cart:

    a.  operated in; or
    b.  while in practice or preparation for;
    any racing or speed contest regardless of whether such contest is prearranged or organized.

7.  Intentional loss, meaning any loss arising out of any act committed:

    a.  by or at the direction of an insured; and
    b.  with the intent to cause a loss.

8.  Neglect, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of loss.

9.  Rust, smog, mold, wet or dry rot, and smoke from agricultural smudging or industrial operations.

10. Inherent vice, latent defect, and mechanical breakdown.

11. Release, discharge or dispersal of contaminants or pollutants.

### TERRITORIAL LIMITS

We cover the golf carts scheduled on the Declarations Page only within the United States and Canada.

### CONDITIONS

HANOVER000056

1. **Loss clause:** The amount of insurance under this endorsement will not be reduced except for a total loss of a scheduled golf cart. We will refund the unearned premium applicable to such item after the loss or you may apply it to the premium due for the replacement of the golf cart.

2. **Loss settlement:** Covered losses to your golf cart are settled subject to the following provisions.

   The value of the property insured is not agreed upon but will be ascertained at the time of loss or damage. We will not pay more than the least of the following amounts:

   (1) The actual cash value of the property at the time of loss or damage;
   (2) The amount for which you could reasonably be expected to have the property repaired to its condition immediately prior to loss;
   (3) The amount for which you could reasonably be expected to replace the golf cart with one substantially identical to the golf cart lost or damaged; or
   (4) The amount of insurance.

231-1050 (8-88)

HANOVER000057



HSO8730260    040420600

Customer Notice of Privacy Policy, Producer Compensation Practices and Property Inspection Disclosures

Privacy Policy Disclosure

**Collection of Information**

We collect personal information so that we may offer quality products and services. This information may include, but is not limited to, name, address, Social Security number, and consumer reports from consumer reporting agencies in connection with your application for insurance or any renewal of insurance. For example, we may access driving records, insurance scores or health information. Our information sources will differ depending on your state and/or the product or service we are providing to you. This information may be collected directly from you and/or from affiliated companies, non-affiliated third parties, consumer reporting agencies, medical providers and third parties such as the Medical Information Bureau.

We, and the third parties we partner with, may track some of the web pages you visit through cookies, pixel tagging or other technologies. We currently do not process or comply with any web browser's "do not track" signals or similar mechanisms that request us to take steps to disable online tracking. For additional information regarding online privacy, please see our online privacy statement, located at www.hanover.com.

**Disclosure of Information**

We may disclose non-public, personal information you provide, as required to conduct our business and as permitted or required by law. We may share information with our insurance company affiliates or with third parties that assist us in processing and servicing your account. We also may share your information with regulatory or law enforcement agencies, reinsurers and others, as permitted or required by law.

Our insurance companies may share information with their affiliates, but will not share information with non-affiliated third parties who would use the information to market products or services to you.

Our standards for disclosure apply to all of our current and former customers.

**Safeguards to Protect Your Personal Information**

We recognize the need to prevent unauthorized access to the information we collect, including information held in an electronic format on our computer systems. We maintain physical, electronic and procedural safeguards intended to protect the confidentiality and integrity of all non-public, personal information, including but not limited to social security numbers, driver's license numbers and other personally identifiable information.

**Internal Access to Information**

Access to personal, non-public information is limited to those people who need the information to provide our customers with products or services. These people are expected to protect this information from inappropriate access, disclosure and modification.

**Consumer Reports**

In some cases, we may obtain a consumer report in connection with an application for insurance. Depending on the type of policy, a consumer report may include information about you or your business, such as:

- character, general reputation, personal characteristics, mode of living;
- credit history, driving record (including records of any operators who will be insured under the policy); and/or
- an appraisal of your dwelling or place of business that may include photos and comments on its general condition.

**Access to Information**

Upon written request, we will inform you if we have ordered an investigative consumer report. You have the right to make a written request within a reasonable period for information concerning the nature and scope of the report and to be interviewed as part of its preparation. You may obtain a copy of the report from the reporting agency and, under certain circumstances, you may be entitled to a copy at no cost.

You also may review certain information we have about you or your business in our files. To review information we maintain in our files about you or your business, please write to us, providing your complete name, address and policy number(s), and indicating specifically what you would like to see. If you request actual copies of your file, there may be a nominal charge.

We will tell you to whom we have disclosed the information within the two years prior to your request. If there is not a record indicating that the information was provided to another party, we will tell you to whom such information is normally disclosed.

There is information that we cannot share with you. This may include information collected in order to evaluate a claim under an insurance policy, when the possibility of a lawsuit exists. It may also include medical information that we would have to forward to a licensed medical doctor of your choosing so that it may be properly explained.

231-0862 (12/14) Page 1 of 2

HANOVER000058

**Correction of Information**

If after reviewing your file you believe information is incorrect, please write to the consumer reporting agency or to us, whichever is applicable, explaining your position. The information in question will be investigated. If appropriate, corrections will be made to your file and the parties to whom the incorrect information was disclosed, if any, will be notified. However, if the investigation substantiates the information in the file, you will be notified of the reasons why the file will not be changed. If you are not satisfied with the evaluation, you have the right to place a statement in the file explaining why you believe the information is incorrect. We also will send a copy of your statement to the parties, if any, to whom we previously disclosed the information and include it in any future disclosures.

**Our Commitment to Privacy**

In the insurance and financial services business, lasting relationships are built upon mutual respect and trust. With that in mind, we will periodically review and revise our privacy policy and procedures to ensure that we remain compliant with all state and federal requirements. If any provision of our privacy policy is found to be non-compliant, then that provision will be modified to reflect the appropriate state or federal requirement. If any modifications are made, all remaining provisions of this privacy policy will remain in effect. For more detailed information about our customer privacy policy (including any applicable state-specific policies) and our online privacy statement, visit our Web site, located at www.hanover.com.

**Further Information**

If you have questions about our customer privacy policy (including any applicable state-specific policies) or our online privacy statement, or if you would like to request information we have on file, please write to us at our Privacy Office, N435, The Hanover Insurance Group, Inc., 440 Lincoln Street, Worcester, MA 01653. Please provide your complete name, address and policy number(s). A copy of our Producer Compensation Disclosure is also available upon written request addressed to the attention of the Corporate Secretary, N435, The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

Producer Compensation Disclosure

Our products are sold through independent agents and brokers, often referred to as "Producers". We may pay Producers a fixed commission for placing and renewing business with our company. We may also pay additional commission and other forms of compensation and incentives to Producers who place and maintain their business with us. Details of our Producer compensation practices may be found at www.hanover.com.

Property Inspection and Property Valuation

Your professional insurance agent is dedicated to working with you to help make sure that you have the appropriate amount of coverage for your property. From time to time, we may order an inspection of your property to assist with the determination of whether the coverage on your property is adequate. We may also order an inspection to assist us in our underwriting process. Our inspection process may involve discussions with your agent, a phone discussion with you, inspecting and taking pictures of your property, a computerized analysis using a set of cost factors including labor and construction materials in your region, or a combination of these or other measures to help determine whether you have the appropriate amount of coverage for your property. It is necessary that you cooperate with us when we make a property inspection request. It is important to understand that the market value of your property and the replacement cost may differ significantly for many reasons, including that construction costs may differ significantly from region to region. We utilize third party vendors to provide us with inflation trend information for your region. We will also periodically apply automatic inflation adjustments to your coverage amounts to keep pace with regional inflation trends. If you have questions about the amount of your coverage compared to the replacement cost of your property, you should contact your agent. Also, if you made changes to your property during the policy period, or have information which you feel we should be aware of, such as the installation of upgraded fixtures or other changes or additions to the property which may have bearing on its value, you should contact your agent or us directly to provide such information. Although the responsibility for making sure your property is properly insured to its value rests with you, our property inspection and coverage evaluation program has been designed to assist you and your agent with this evaluation and to assist us in our underwriting process. Please refer to your issued policy for the coverage you are afforded.


This notice is being provided on behalf of the following Hanover Companies: The Hanover Insurance Group, Inc. - Allmerica Financial Alliance Insurance Company - Allmerica Financial Benefit Insurance Company - Allmerica Plus Insurance Agency, Inc. - Citizens Insurance Company of America - Citizens Insurance Company of Illinois - Citizens Insurance Company of the Midwest - Citizens Insurance Company of Ohio - Citizens Management, Inc. - AIX Ins. Services of California, Inc.- Campania Insurance Agency Co. Inc.- Campmed Casualty & Indemnity Co. Inc. - Chaucer Syndicates Limited- Educators Insurance Agency, Inc.- Hanover Specialty Insurance Brokers, Inc. - The Hanover American Insurance Company - The Hanover Insurance Company - The Hanover New Jersey Insurance Company - The Hanover National Insurance Company - Hanover Lloyd's Insurance Company - Massachusetts Bay Insurance Company - Opus Investment Management, Inc. - Professionals Direct Insurance Services, Inc. -Professional Underwriters Agency, Inc.- Verlan Fire Insurance Company - Nova Casualty Company - AIX Specialty Insurance Company.

HANOVER000059



HSO8730260     040420800

**Notice to Policyholders**

A portion of the premium due on this policy is due to an assessment from one or more of the underwriting associations in Louisiana. The assessment is not directly related to your policy, your risk characteristics, or to the Hanover Insurance Companies.

All voluntary property insurers in the state of Louisiana are subject to assessments from these underwriting associations, including Louisiana Citizens Property Insurance Corporation for both the Coastal and FAIR Plans, based on their voluntary premium writings. Louisiana regulation allows companies to assess their policyholders to recoup these charges.

The declaration page reflects the total amount your policy is being assessed under the line item LA Citizens Regular and Emergency Assessments. A breakdown of the individual assessments is listed below:

2020 LA FAIR Plan Emergency Assessment                    $  109.00

If you have any questions on this issue, please contact your agent for clarification.

**You are eligible to apply at the Department of Revenue for a refund of the Hurricane Katrina or Rita related assessments from the state. Please use the following website to obtain the appropriate forms and information: www.rev.state.la.us**

231-2273 0111

HANOVER000060



HSO8730260      040420800

## IMPORTANT INFORMATION REQUIRED BY
## THE LOUISIANA DEPARTMENT OF INSURANCE

### Homeowners Insurance Policy Coverage Disclosure Summary
This form is promulgated pursuant to LSA - R.S. 22:1332

THIS IS ONLY A SUMMARY OF YOUR COVERAGE AND DOES NOT AMEND, EXTEND, OR ALTER THE COVERAGES OR ANY OTHE RPROVISIONS CONTAINED IN YOUR POLICY. INSURANCE IS A CONTRACT. THE LANGUAGE IN YOUR POLICY CONTROLS YOUR LEGAL RIGHTS AND OBLIGATIONS.

** READ YOUR INSURANCE POLICY FOR COMPLETE POLICY TERMS AND CONDITIONS **

COVERAGE(S) FOR WHICH PREMIUM WAS PAID

| Coverage A | $413,000 | Dwelling |
| Coverage B | $41,300 | Other Structures |
| Coverage C | $309,750 | Personal Property |
| Coverage D | $123,900 | Loss of Use |
| Coverage E | $300,000 | Personal Liability |
| Coverage F | $1,000 | Medical Payments |

Deductibles

This policy sets forth certain deductibles that will be applied to claims for damages. When applicable, a deductible will be subtracted from your total claim and you will be paid the balance subject to applicable coverage limits.

- You may be able to reduce your premium by increasing your deductible. Contact your producer (agent) or insurer for details.

NOTICE: This policy  does not      set forth a separate deductible for covered losses caused by  hurricane or wind      as defined in the policy.

231-2587 03/20

1 of 4

HANOVER000061

*Separate Deductible Example - Hurricane, Wind or Named Storm Damage.*

If applicable, the following illustrates how a separate deductible applying to hurricane, wind or named storm damage is applied under your policy:

If the total insured value of the dwelling or Coverage A is $200,000.00 and you have a 2% hurricane, wind, or named storm deductible, then your hurricane, wind or named storm deductible would be $200,000.00 x .02 = $4,000.00.

Losses:
| | | |
|---|---|---|
| Coverage A - Dwelling | $15,000.00 | |
| Coverage B - Other Structures | $ 2,500.00 | |
| Coverage C - Personal Property | $ 3,000.00 | |
| Coverage D - Loss of Use | $ 2,000.00 | |
| Total amount of all losses | | $22,500.00 |
| Less 2% hurricane, wind or named storm deductible | | $ 4,000.00 |
| Net payment to insured | | $18,500.00 |

TO SEE EXACTLY HOW YOUR SEPARATE HURRICANE, WIND OR NAMED STORM DEDUCTIBLE WILL APPLY, PLEASE REFER TO YOUR POLICY.

LIMITATIONS OR EXCLUSIONS UNDER THIS POLICY

FLOOD - Flood damage is not covered, regardless of how caused, when flood is the peril that causes the loss. Flood water includes but is not limited to storm surge, waves, tidal water, overflow of a body of water, whether driven by wind or not.

Flood Insurance may be available through the National Flood Insurance Program (NFIP). NFIP flood insurance may provide coverage for damage to your dwelling and/or contents subject to the coverage limits and terms of the policy.

Excess Flood Insurance may be available under a separate policy from this or other insurer if the amount of primary flood insurance is not enough to cover the value of your property.

- You may contact your producer (agent) or insurer for more information on the NFIP and excess flood insurance.

MOLD - Damage caused solely by mold is not covered under this policy.

231-2587 03/20

HANOVER000062



HSO8730260    040420800

**\*\* FOR ALL OTHER LIMITATIONS OR EXCLUSIONS REFER TO YOUR POLICY FOR COMPLETE DETAILS ON TERMS AND PROVISIONS \*\***

<u>CLAIM FILING PROCESS</u>

There may be time limitations for filing a claim and filing of a satisfactory proof of loss. There may also be time limitations for repairing and replacing damaged property that could cause you to not recover the replacement cost for the insured loss of your property, if applicable.

<u>PAYMENT OF CLAIMS</u>

Depending on the terms of the insurance policy, some losses may be based on actual cash value (ACV) and other losses based on replacement cost (RC).

- ACV is the amount needed to repair or replace the damaged or destroyed property, minus the depreciation.
- RC involves the initial payment of actual cash value (ACV) of a loss, and the subsequent payment of the additional amount that is actually and necessarily expended to repair or replace the damaged or destroyed property.

\*\*

Refer to your policy for the terms and conditions describing how a particular loss is to be paid.

<u>PAYMENT AND ADJUSTMENT OF CLAIMS</u>

Pursuant to LSA-R.S. 22:1892 and 22:1973, except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim and/or a claim for reasonable medical expenses within fourteen (14) days after notification of loss by the claimant.

In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty (30) days after notification of loss by the claimant unless the Commissioner of Insurance promulgates a rule to extend the time period for initiating a loss adjustment for damages arising from a presidentially declared emergency or disaster or a gubernatorially declared emergency or disaster for up to an additional thirty (30) days. Thereafter, one additional extension of the period of time for initiating a loss adjustment may be allowed by the Commissioner of Insurance of approved by the Senate Committee on Insurance and the House Committee on Insurance.

HANOVER000063

All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty (30) days after the receipt of satisfactory proof of loss of that claim.

Failure to make such payment within thirty (30) days after receipt of such satisfactory written proofs and demand thereof or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty (30) days after receipt of a satisfactory proof of loss of that claim may result in a late penalty against the insurer in addition to the payment of the claim.

If the insurer is found to be arbitrary, capricious, or without probable cause in settling any property damage claim, the insurer must pay the insured, in addition to the amount of the loss, fifty percent (50%) damages on the amount found to be due from the insurer to the insured, or one thousand dollars ($1,000.00), whichever is greater, as well as attorney fees and costs, if applicable.

<u>Reduction in Premium for Improvements or Modifications to Property (La. R.S. 22:1332(B)(8))</u>

Certain improvements or modifications to your property, such as adding storm shutters, modifying the roof design, and improving the roof covering, may reduce your premium. Contact your insurance producer or insurer for complete details on qualifying improvements or modifications. For further guidance and assistance, see Regulation 94-Premium Adjustments for Compliance with Building Codes and Damage Mitigation, found at LAC 37:XIII.Chapter 127.

HANOVER000064

```
St. Tammany
Melissa R. Henry - Clerk of Court
Sherry Mehdizadeh - Deputy Clerk
Suit 2023-14925 H
E-Filed on: 2/02/24 10:14 AM
Filed on: 2/02/24 12:18 PM
```

## 22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

### STATE OF LOUISIANA

**NUMBER 2023-14925**                                                          **DIVISION "H"**

### PETER DUNN & PAULA DUNN

### VERSUS

### HANOVER INSURANCE GROUP

FILED: _____          _____
                                                    DEPUTY CLERK

### MOTION AND ORDER TO SET FOR HEARING THE HANOVER INSURANCE GROUP'S PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION, DECLINATORY EXCEPTION OF IMPROPER VENUE, AND PEREMPTORY EXCEPTION OF PRESCRIPTION

**NOW INTO COURT,** through undersigned counsel, comes Defendant, The Hanover Insurance Group, who, without waiving and expressly maintaining any and all defenses, exceptions, objections or arguments, respectfully requests that Plaintiffs show cause, at a hearing, why The Hanover Insurance Group's Peremptory Exception of No Cause of Action, Declinatory Exception of Improper Venue, and Peremptory Exception of Prescription should not be granted.

In accordance with Local Rule 9 8, The Hanover Insurance Group submits that the trial in this matter is not set and no oral testimony will be offered at the hearing on The Hanover Insurance Group's Peremptory Exception of No Cause of Action, Declinatory Exception of Improper Venue, and Peremptory Exception of Prescription Accordingly;

**IT IS HEREBY ORDERED,** The Hanover Insurance Group's Peremptory Exception of No Cause of Action, Declinatory Exception of Improper Venue, and Peremptory Exception of Prescription shall come on for a hearing, specifically, on the 27 day of March, 2024 at 9:00, and that Plaintiffs, Peter Dunn and Paula Dunn, appear on said date and show cause why The Hanover Insurance Group's Peremptory Exception of No Cause of Action, Declinatory Exception of Improper Venue, and Peremptory Exception of Prescription should not be granted.

St Tammany Parish, Louisiana, this ___5___ day of _____February_____ 2024.

_____
The Honorable Alan A. Zaunbrecher

**Plaintiffs will be served in accordance with article 1313(C) of the Louisiana Code of Civil Procedure.**

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY.    */s/ Virginia P. Stewart*
        Mark C. Dodart (Bar #17549)
        Virginia P. Stewart (Bar #40062)
        Canal Place | 365 Canal Street, Suite 2000
        New Orleans, Louisiana 70130
        Telephone: 504 566 1311
        Facsimile: 504 568 9130
        Email· mark.dodart@phelps.com
             virginia.stewart@phelps.com

**ATTORNEYS FOR DEFENDANT,**
**THE HANOVER INSURANCE GROUP**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 2nd day of February, 2024, served a copy of the

foregoing pleading upon counsel for Plaintiffs at the address below via e-mail and/or U.S. Mail,

postage prepaid and properly addressed:

        Galen M. Hair, La. Bar No. 32865
        Madison Pitre, La. Bar No. 38867
        Hair Shunnarah Trial Attorneys, LLC
        3540 S. I-10 Service Rd. W., Suite 300
        Metairie, Louisiana 70001
        Telephone  504.684.5200
        Facsimile: 504.613.6351
        hair@hairshunnarah.com
        pitre@hairshunnarah.com

        **Counsel for Plaintiffs,**
        **Peter Dunn and Paula Dunn**

                    */s/ Virginia P. Stewart*

PETER DUNN, ET AL.

VS  2023-14925 H

HANOVER INSURANCE GROUP

**22nd Judicial District Court**

**Parish of St. Tammany**

**State of Louisiana**

**TO:**   Peter Dunn AND Paula Dunn – *via ARTICLE 1313*

**GREETINGS:**

**YOU ARE HEREBY ORDERED TO SHOW CAUSE BEFORE**

the Honorable Judge **Alan Zaunbrecher**, **Division H**  on **March 27, 2024**, at **9:00 a.m.** , at the

St. Tammany Parish Justice Center, 701 N. Columbia Street, Covington, Louisiana, why the

relief requested in the attached certified copy of the Order should not be granted.

### ALL AS PRAYED FOR AND ACCORDING TO LAW.

**When applicable, a courtesy copy of all memoranda must be forwarded by FAX, mail <u>OR</u> hand delivery to the Judge's office. The <u>only</u> address for furnishing copies is: 701 N. Columbia St., Room 2010, Covington, LA 70433. The <u>only</u> FAX number for furnishing copies is 985-809-5344. Rule 3.3 of the Uniform rules of the Louisiana District Courts governs facsimile transmissions to Judges.**

By order of the Honorable Judges of said Court this 5th day of February, 2024.

*Melissa R. Henry* Clerk of Court

By:   *Tori Capace*

Tori Capace, Deputy Clerk

Issued:  02/12/2024

**Counsel or Pro Se:**
Virginia P. Stewart
Attorney at Law
Canal Place
365 Canal St, Ste. 2000
New Orleans, LA 70130

104 – Rule – Rev 7/16

February 12, 2024

Galen M. Hair
Attorney at Law
3540 S. 1-10 Service Rd. W, Ste. 300
Metairie, LA 70001

Virginia P. Stewart
Attorney at Law
Canal Place
365 Canal St, Ste. 2000
New Orleans, LA 70130

Re:    Peter Dunn, et al.
      vs. 2023-14925 Division H
      Hanover Insurance Group

Dear Counsel:

Please be advised that the **Peremptory Exception of No Cause of Action, Declinatory Exception of Proper Venue, and Peremptory Exception of Prescription** filed on behalf of the **Defendant, Hanover Insurance Group** in the above captioned matter has been assigned for **March 27, 2024** at **9:00 a.m.** before **JUDGE ALAN A. ZAUNBRECHER, Division H** presiding.

**When applicable, a courtesy copy of all memoranda must be forwarded by FAX, mail OR hand delivery to the Judge's office. The only address for furnishing copies is: 701 N. Columbia St., Room 2010, Covington, LA 70433. The only FAX number for furnishing copies is 985-809-5344. Rule 3.3 of the Uniform rules of the Louisiana District Courts governs facsimile transmissions to Judges.**

Sincerely,

Tori Capace

Tori Capace
Deputy Clerk

February 12, 2024

Virginia P. Stewart
Attorney at Law
Canal Place
365 Canal St, Ste. 2000
New Orleans, LA 70130

Re:    Peter Dunn, et al.
        VS. 2023-14925 Division H
        Hanover Insurance Group

Dear Counsel or Self Represented Litigant:

Enclosed please find the Rule along with certified copies of the Exception, corresponding
Motion and Order, and Memorandum, as well as copies of the exhibit, being returned to you per
your request for service on Peter Dunn AND Paula Dunn, per Article 1313.

**After service has been made please file the necessary paperwork with our office as proof of
service.**

Sincerely,

Tori Capace
Deputy Clerk

**St. Tammany**
**Melissa R. Henry - Clerk of Court**
**Shay Stein - Deputy Clerk**
**Suit 2023-14925 H**
**E-Filed on: 2/14/24 01:07 PM**
**Filed on: 2/15/24 03:08 PM**

**22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY**

**STATE OF LOUISIANA**

**NUMBER 2023-14925**                                                        **DIVISION "H"**

**PETER DUNN & PAULA DUNN**

**VERSUS**

**HANOVER INSURANCE GROUP**

FILED: _____     _____
                                                             DEPUTY CLERK

**AFFIDAVIT OF SERVICE PURSUANT TO LA C.C.P. ART. 1313(C)**

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

    BEFORE ME, the undersigned authority, personally came and appeared **Rose L. Berlow**, who, after I first swore to an oath of truthfulness, stated as follows:

1. She is the full age of majority and knows of the facts set forth herein of her own personal knowledge;

2. She is a Paralegal at Phelps Dunbar, attorneys of record for Defendant, The Hanover Insurance Group, in the above-captioned action;

3. On February 14, 2024, *via* Electronic Mail she served the *Rule to Show Cause* executed by the Court, setting a hearing in the captioned matter for March 27, 2024 at 9:00 am, on all parties through their attorneys of record, pursuant to Louisiana Code of Civil Procedure Article 1313(C).

4. Attached hereto as Exhibit "A" is a copy of the transmittal email and confirmations of delivery.

                                        Rose L. Berlow
                                        _____
                                        Rose L. Berlow

SWORN TO AND SUBSCRIBED

BEFORE ME THIS 14th DAY

OF FEBRUARY, 2024.

Virginia Stewart
_____
**Notary Public**

**VIRGINIA P. STEWART**
NOTARY PUBLIC
Bar No. 40062
STATE OF LOUISIANA
My Commission is for Life

PD.44466026.1

**Rose Berlow (1294)**

St. Tammany
**Melissa R. Henry - Clerk of Court**
Shay Stein - Deputy Clerk
Suit 2023-14925 H
**E-Filed on: 2/14/24 01:07 PM**
**Filed on: 2/15/24 03:08 PM**

| | |
|---|---|
| **From:** | Rose Berlow (1294) |
| **Sent:** | Wednesday, February 14, 2024 12:30 PM |
| **To:** | 'Galen Hair'; pitre@hairshunnarah.com |
| **Cc:** | Mark Dodart (1307); Virginia Stewart (1241) |
| **Subject:** | Dunn v. Hanover Insurance Group - 22nd JDC Docket No. 2023-14925 |
| **Attachments:** | 2024-02-12 Signed Rule to Show Cause re Hanover_s Exceptions.PDF |

| **Tracking:** | **Recipient** | **Delivery** |
|---|---|---|
| | 'Galen Hair' | |
| | pitre@hairshunnarah.com | |
| | Mark Dodart (1307) | Delivered: 2/14/2024 12:30 PM |
| | Virginia Stewart (1241) | Delivered: 2/14/2024 12:30 PM |
| | Hanover Insurance Co_Peter Dunn _ Paula D_25786_0589 01 E_Mails _ 25786_0589 | |

Pursuant to La. Code Civ. P. article 1313, attached is a copy of the *Rule to Show Cause* signed by the Court, setting a hearing in the captioned matter for **March 27, 2024, at 9:00 am.**

**Rose Berlow**
Paralegal
Litigation
Phelps Dunbar LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130
Telephone: 504-584-9294
Fax: 504-568-9130
Email: rose.berlow@phelps.com

# phelps

CONFIDENTIALITY NOTICE - This e-mail message, including any attachments, is private communication sent by a law firm, Phelps Dunbar LLP, and may contain confidential, legally privileged information meant solely for the intended recipient. If you are not the intended recipient, any use, distribution, or copying of this communication is strictly prohibited. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system. Thank you.

**EXHIBIT**
**A**

**Rose Berlow (1294)**

| | |
|---|---|
| **From:** | postmaster@hstalaw.com |
| **To:** | 'Galen Hair' |
| **Sent:** | Wednesday, February 14, 2024 12:30 PM |
| **Subject:** | Delivered: Dunn v. Hanover Insurance Group - 22nd JDC Docket No. 2023-14925 |

**Your message has been delivered to the following recipients:**

'Galen Hair'

Subject: Dunn v. Hanover Insurance Group - 22nd JDC Docket No. 2023-14925

**Rose Berlow (1294)**

| | |
|---|---|
| **From:** | postmaster@hstalaw.com |
| **To:** | pitre@hairshunnarah.com |
| **Sent:** | Wednesday, February 14, 2024 12:30 PM |
| **Subject:** | Delivered: Dunn v. Hanover Insurance Group - 22nd JDC Docket No. 2023-14925 |

**Your message has been delivered to the following recipients:**

pitre@hairshunnarah.com

Subject: Dunn v. Hanover Insurance Group - 22nd JDC Docket No. 2023-14925

**22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY**
**STATE OF LOUISIANA**

NO. 2023-14925                                                    DIV. "H"

PETER DUNN & PAULA DUNN

St. Tammany
Melissa R. Henry - Clerk of Court
Suzette Rogers - Deputy Clerk
Suit 2023-14925 H
E-Filed on: 3/18/24 04:28 PM
Filed on: 3/19/24 09:48 AM

VERSUS

HANOVER INSURANCE GROUP

FILED:_____                          _____
                                                   **DEPUTY CLERK**

**UNOPPOSED MOTION TO CONTINUE AND RESET**

**NOW INTO COURT,** through undersigned counsel, comes, Plaintiffs Peter Dunn and Paula Dunn who file this Motion to Continue and Reset the hearing currently set for March 27, 2024, in furtherance thereof, aver as follows:

1.   Counsel for Plaintiffs has a scheduling conflict, as another matter before the 14th Judicial District Court, of Calcasieu, Louisiana, has a hearing at the same date and time.

2.   The hearing before the 14th JDC is for a case which goes to trial on April 15, 2024, so a continuance is not presently available for the hearing.

3.   Counsel for Defendant has been notified of the conflict and Plaintiff's intention to file the instant motion to continue and reset.

4.   Counsel for Defendant has confirmed it has no opposition to the granting of this motion.

WHEREFORE, Plaintiffs, Peter Dunn and Paula Dunn, pray the hearing presently set for March 27, 2024, be reset to a later date.

RESPECTFULLY SUBMITTED:

_____

Galen M. Hair, La. Bar No. 32865
Madison C. Pitre, La Bar No. 38867
**HAIR SHUNNARAH TRIAL
ATTORNEYS, LLC.
d/b/a INSURANCE CLAIM HQ
d/b/a INSURANCE CLAIM
LAWYERS, INC.**
3540 S. I-10 Service Rd., W., Ste. 300
Metairie, Louisiana 70001
Telephone: 504.684.5200
Facsimile: 504.613.6351

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing notice on all counsel of record

in these proceedings by email, facsimile transmission and/or United States Mail, postage prepaid,

this Monday, March 18, 2024.

_____

Madison C. Pitre

## 22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY
## STATE OF LOUISIANA

NO. 2023-14925                                                    DIV. "H"

### PETER DUNN & PAULA DUNN

**VERSUS**

HANOVER INSURANCE GROUP

| St. Tammany |
| --- |
| Melissa R. Henry - Clerk of Court |
| Suzette Rogers - Deputy Clerk |
| Suit 2023-14925 H |
| E-Filed on: 3/18/24 04:28 PM |
| Filed on: 3/19/24 09:48 AM |

FILED:_____

**DEPUTY CLERK**

### ORDER

**Considering** the above and foregoing *Motion to Continue and Reset*;

**IT IS ORDERED** that the hearing in this matter presently set for March 27, 2024, be and is

hereby reset to be heard by this Court on ~~a later date.~~ May 30, 2024 @ 9:00 am

Signed in Covington, Louisiana, on the _20_ day of _March_ 2024.

_____
JUDGE

March 26, 2024

Galen M Hair                                    Virginia P Stewart
Attorney at Law                                 Attorney at Law
3540 S 1-10 Service Rd W Ste 300                Canal Place
Metairie LA  70001                              365 Canal Street, Ste 2000
                                                New Orleans LA  70130


Re:    Peter Dunn
       vs. 2023-14925 Division H
       Hanover Insurance Group

Dear Counsel:

Please be advised that the **Peremptory Exception of No Cause of Action, Declinatory Exception of Proper Venue, and Peremptory Exception of Prescription** filed on behalf of the **Hanover Insurance Group** in the above captioned matter has been assigned for **May 30, 2024** at **9:00 a.m.** before **JUDGE ALAN A. ZAUNBRECHER, Division H** presiding.


**When applicable, a courtesy copy of all memoranda must be forwarded by FAX, mail OR hand delivery to the Judge's office.  The only address for furnishing copies is: 701 N. Columbia St., Room 2010, Covington, LA 70433.  The only FAX number for furnishing copies is 985-809-5344. Rule 3.3 of the Uniform rules of the Louisiana District Courts governs facsimile transmissions to Judges.**


Sincerely,

*Tricia Breaux*

Tricia Breaux
Deputy Clerk

**St. Tammany**
**Melissa R. Henry - Clerk of Court**
**April Laird - Deputy Clerk**
**Suit 2023-14925 H**
**E-Filed on: 3/26/24 10:56 AM**
**Filed on: 3/26/24 11:56 AM**

## 22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

### STATE OF LOUISIANA

**NUMBER 2023-14925**                                      **DIVISION "H"**

### PETER DUNN & PAULA DUNN

### VERSUS

### HANOVER INSURANCE GROUP

FILED: _____          _____
                                             DEPUTY CLERK

### AFFIDAVIT OF SERVICE PURSUANT TO LA C.C.P. ART. 1313(C)

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

BEFORE ME, the undersigned authority, personally came and appeared Rose L. Berlow, who, after I first swore to an oath of truthfulness, stated as follows:

1. She is the full age of majority and knows of the facts set forth herein of her own personal knowledge;

2. She is a Paralegal at Phelps Dunbar, attorneys of record for Defendant, The Hanover Insurance Group, in the above-captioned action;

3. On March 26, 2024, *via* Electronic Mail she served the *Notice of Reassignment Letter* issued by the Deputy Clerk, setting a hearing in the captioned matter for May 30, 2024 at 9:00 am, on all parties through their attorneys of record, pursuant to Louisiana Code of Civil Procedure Article 1313(C).

4. Attached hereto as Exhibit "A" is a copy of the transmittal email and confirmations of delivery.

_Rose Berlow_
Rose L. Berlow

SWORN TO AND SUBSCRIBED

BEFORE ME THIS 26th DAY

OF MARCH, 2024.

_Virginia Stewart_
Notary Public          **VIRGINIA P. STEWART**
                       NOTARY PUBLIC
                       Bar No. 40062
                       STATE OF LOUISIANA
                       My Commission is for Life

PD.44867664.1

| | |
|---|---|
| **From:** | Rose Berlow (1294) |
| **Sent:** | Tuesday, March 26, 2024 10:31 AM |
| **To:** | Madison Pitre; 'Galen Hair' |
| **Cc:** | Virginia Stewart (1241); Mark Dodart (1307) |
| **Subject:** | Dunn v. Hanover Insurance Group - 22nd JDC No. 2023-14925 |
| **Attachments:** | 202314925 - Notice of Reassignment Letter.pdf |

**St. Tammany**
**Melissa R. Henry - Clerk of Cour**
**April Laird - Deputy Clerk**
**Suit 2023-14925 H**
**E-Filed on: 3/26/24 10:56 AM**
**Filed on: 3/26/24 11:56 AM**

Counsel,

Pursuant to La. Code Civ. P. article 1313, attached is a service copy of correspondence from the Court re-setting Hanover's Exceptions for hearing on **May 30, 2024, at 9:00 am.**

Regards,

**Rose Berlow**
Paralegal
Litigation
Phelps Dunbar LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130
Telephone: 504-584-9294
Fax: 504-568-9130
Email: rose.berlow@phelps.com

# phelps

CONFIDENTIALITY NOTICE - This e-mail message, including any attachments, is private communication sent by a law firm, Phelps Dunbar LLP, and may contain confidential, legally privileged information meant solely for the intended recipient. If you are not the intended recipient, any use, distribution, or copying of this communication is strictly prohibited. Please notify the sender immediately by replying to this message, then delete the e-mail and any attachments from your system. Thank you.

**EXHIBIT**
**A**

March 26, 2024

Galen M Hair
Attorney at Law
3540 S I-10 Service Rd W Ste 300
Metairie LA 70001

Virginia P Stewart
Attorney at Law
Canal Place
365 Canal Street, Ste 2000
New Orleans LA 70130

Re:    Peter Dunn
       vs. 2023-14925 Division H
       Hanover Insurance Group

Dear Counsel:

Please be advised that the **Peremptory Exception of No Cause of Action, Declinatory Exception of Proper Venue, and Peremptory Exception of Prescription** filed on behalf of the **Hanover Insurance Group** in the above captioned matter has been assigned for **May 30, 2024** at **9:00 a.m.** before **JUDGE ALAN A. ZAUNBRECHER, Division H** presiding.

**When applicable, a courtesy copy of all memoranda must be forwarded by FAX, mail OR hand delivery to the Judge's office. The only address for furnishing copies is: 701 N. Columbia St., Room 2010, Covington, LA 70433. The only FAX number for furnishing copies is 985-809-5344. Rule 3.3 of the Uniform rules of the Louisiana District Courts governs facsimile transmissions to Judges.**

Sincerely,

*Tricia Breaux*

Tricia Breaux
Deputy Clerk

| | |
|---|---|
| **From:** | postmaster@hstalaw.com |
| **To:** | 'Galen Hair' |
| **Sent:** | Tuesday, March 26, 2024 10:32 AM |
| **Subject:** | Delivered: Dunn v. Hanover Insurance Group - 22nd JDC No. 2023-14925 |

**Your message has been delivered to the following recipients:**

'Galen Hair'

Subject: Dunn v. Hanover Insurance Group - 22nd JDC No. 2023-14925

| | |
|---|---|
| **From:** | postmaster@hstalaw.com |
| **To:** | Madison Pitre |
| **Sent:** | Tuesday, March 26, 2024 10:32 AM |
| **Subject:** | Delivered: Dunn v. Hanover Insurance Group - 22nd JDC No. 2023-14925 |

**Your message has been delivered to the following recipients:**

Madison Pitre

Subject: Dunn v. Hanover Insurance Group - 22nd JDC No. 2023-14925

St. Tammany
Melissa R. Henry - Clerk of Court
Suzette Rogers - Deputy Clerk
Suit 2023-14925 H
E-Filed on: 5/17/24 02:02 PM
Filed on: 5/20/24 08:33 AM

22ND DISTRICT COURT FOR THE PARISH OF ST. TAMMANY

STATE OF LOUISIANA

NO.                                                                    DIV.

PETER DUNN & PAULA DUNN

VERSUS

HANOVER AMERICAN INSURANCE COMPANY

FILED: _____           _____
                                                                **DEPUTY CLERK**

## AMENDED AND RESTATING PETITION FOR DAMAGES AND DEMAND FOR JURY TRIAL

**NOW INTO COURT**, through undersigned counsel, come Petitioners, Peter Dunn and

Paula Dunn (hereinafter "Petitioners"), and files their Amended and Restating Petition for

Damages and Demand for Jury Trial against Defendant, Hanover American Insurance Company

(hereinafter "Defendant" or "Hanover"), respectfully averring as follows:

### I. PARTIES

**1.**

Made Plaintiffs herein are **Peter Dunn and Paula Dunn**, persons of the full age of majority

and residents of the Parish of St. Tangipahoa, State of Louisiana.

**2.**

Made Defendant herein is **HANOVER AMERICAN INSURANCE COMPANY**, who,

upon information and belief, is an insurer authorized to do and doing business in the State of

Louisiana and the Parish of St. Tangipahoa, which may be served through its Registered Agent for

Service of Process, Louisiana Secretary of State 8585 Archives Avenue, Baton Rouge, Louisiana

70809.

### II. JURISDICTION AND VENUE

**3.**

Jurisdiction is proper in this Honorable Court pursuant to Louisiana Code of Civil

Procedure, Article 2.

**4.**

Venue is proper in this Honorable Court pursuant to Louisiana Code of Civil Procedure

Article 76.

### III. RELEVANT FACTS

**5.**

At all times relevant hereto, Petitioner owned the property located at 41069 Happywoods Rd., Hammond, Louisiana 70403 (the "Property").

**6.**

At all times relevant hereto, Hanover provided a policy of insurance, number HSO 8730260 (the "Policy"), to Petitioners which covered the Property against perils including hurricanes.

**7.**

On or around August 29, 2021, Hurricane Ida caused significant damages to Petitioners' Property.

**8.**

Petitioners promptly reported the loss(es) to Hanover, who assigned it claim number 19-00929277 (hereinafter the "Claim" or the "Ida Claim").

**9.**

Hurricane Ida caused a power outage at Petitioner's home which caused her to incur damages for loss of use of her property and additional living expenses including but not limited to food, gas, lodging, etc.

**10.**

Since there was no electricity at the Property for an extended period of time, Petitioner suffered losses in the form of spoiled food.

**11.**

Thereafter, a Hanover adjuster inspected the Property on behalf of Hanover and documented damages to the dwelling and other structures, but after over-depreciating the loss and applying the Policy's deductible, Hanover allowed only insufficient funds for Petitioners' losses.

**12.**

The Hanover adjuster's inspection of the Property constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La. R.S. §§ 22:1892 and 22:1973.

**13.**

Petitioners have incurred or will incur additional living expenses as a result of Ida.

**14.**

Defendant failed to provide adequate alternative living arrangements to Petitioners.

**15.**

Petitioner was unable to make meaningful repairs to her Property due to the lack of proceeds allowed by Hanover and promptly put Hanover on notice of its deficient claims handling.

**16.**

As a result of Hanover's failure to timely and adequately compensate Petitioner for her covered losses, she was forced to incur the expense of retaining counsel and other expenses to prosecute their claim.

**17.**

On or about February 14, 2022, CJ Claim Services, LLC ("CCS") inspected the property on behalf of Petitioner and created an estimate of damages documenting $108,415.75 in damages to the dwelling.

**18.**

Upon information and belief, demand for the release of unconditional tenders was sent to Hanover along with the CCS estimate, and photographs demonstrating the losses.

**19.**

The submission of the demand, CCS estimate, and photographs constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La. R.S. §§ 22:1892 and 22:1973.

**20.**

To date, Hanover has not adequately compensated Petitioner for her substantial and covered losses. Further, Hanover has never adequately adjusted the losses.

**21.**

As a result of Hanover's failure to timely and adequately compensate Petitioner for her substantial losses, Petitioner has not been able to restore the Property completely to its pre-loss condition, to date.

**23.**

Upon information and belief, Hanover's failure to timely and adequately compensate Petitioners for their loss, after receiving satisfactory proof of loss, was purposeful or at least negligent.

24.

Upon information and belief, Hanover purposely and/or negligently misrepresented to Petitioner the terms and conditions of the Policy.

25.

Upon information and belief, Hanover conducted the investigation and claims handling for Petitioner's Claim in bad faith, as that term is term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

26.

Upon information and belief, Hanover manipulated its pricing software to artificially suppress the cost of repairs below market value.

27.

Upon information and belief, Hanover purposely or at least negligently failed to include adequate overhead and profit in its estimate of damages.

28.

Petitioner has incurred or will incur additional expenses in repairing the Property as a result of HANOVER's failure to timely compensate her for her substantial and covered losses.

29.

Petitioner has incurred and/or will incur additional living expenses as a result of the damages caused to her Property by Hurricane Ida, including those additional living expenses that will be incurred during the repair of the Property.

### III. CAUSES OF ACTION

#### A. Breaches of the Insurance Contract

30.

Petitioner realleges and re-avers the allegations contained in paragraphs 1-29, above, as if restated herein.

31.

An insurance contract, the Policy, exists between Petitioner and HANOVER.

**32.**

The Policy provides coverages for perils including hurricanes.

**33.**

Despite having received satisfactory proof of loss for damages caused by Hurricane Ida, HANOVER failed to timely tender adequate insurance proceeds as required by the Policy.

**34.**

By failing to timely tender adequate insurance proceeds after having received satisfactory proof of a covered loss by way of its own inspection(s), HANOVER breached the Policy.

**35.**

By failing to timely tender undisputed insurance proceeds after having received satisfactory proof of a covered loss by way of those independent proofs of loss submitted to HANOVER by Petitioner, HANOVER breached the Policy.

**36.**

By purposely and/or negligently misrepresenting to Petitioner the terms and conditions of the Policy, HANOVER breached the Policy.

**37.**

By failing to conduct the claims handling for Petitioner's Ida Claim in good faith and with fair dealing, HANOVER breached the Policy.

**38.**

By manipulating its pricing software to artificially suppress the cost of repairs below market value, HANOVER breached the Policy.

**39.**

By failing to include adequate overhead and profit in its estimates of damages, HANOVER breached the Policy.

**40.**

Petitioner has suffered and continues to suffer damages as a result of these breaches of the Policy.

## B. Bad Faith and Breaches of Duties of Good Faith and Fair Dealing

### 41.

Petitioner realleges and re-avers the allegations contained in Paragraphs 1-40, above, as if restated herein.

### 42.

The actions and/or inactions of HANOVER in failing to timely and adequately compensate Petitioner for the covered losses under the Policy were arbitrary, capricious, and without probable cause—as those terms are used in conjunction with La. R.S. §§ 22:1892 and 22:1973, making HANOVER liable for statutory bad faith penalties.

### 43.

Under La. R.S. § 22:1973, an insurer owes a good faith duty and fair dealing to an insured and has an affirmative duty to adjust claims fairly and promptly; failing to pay a claim in a manner arbitrary, capricious or without probable cause is in violation of La. R.S. § 22:1973.

### 44.

"[F]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause" is considered "bad faith" and is in violation of La. R.S. § 22:1973.

### 45.

La. R.S. § 22:1892 imposes bad faith penalties on insurers who fail to adequately pay claims following satisfactory proof of loss within thirty (30) days.

### 46.

HANOVER is in violation of La. R.S. §§ 22:1973 and 22:1892 for failing to provide Petitioner adequate payment in connection with her Ida Claim, despite having received satisfactory proof of loss following its own inspections of the Property and following its receipt of independent proofs of loss from Petitioner.

**47.**

HANOVER's misrepresentation of the relevant facts and/or the terms of the Policy was in bad faith and constituted a breach of Defendant's duties of good faith and fair dealing.

**48.**

HANOVER's failure to pay timely for damages it knew, or should have known, existed at the time of the initial adjustment of the relevant claims was in bad faith and constituted a breach of Defendant's duties of good faith and fair dealing.

**49.**

HANOVER's failure to pay timely for damages it knew, or should have known, existed at the time it received independent proofs of loss from Petitioner was in bad faith constituted a breach of Defendant's duties of good faith and fair dealing.

**50.**

HANOVER's manipulation of its pricing software to artificially suppress the cost of repairs below market value was in bad faith constituted a breach of Defendant's duties of good faith and fair dealing.

**51.**

HANOVER's failure to include adequate overhead and profit in its estimates of damages was in bad faith and constituted a breach of Defendant's duties of good faith and fair dealing.

**52.**

HANOVER's handling of Petitioner's Ida Claim was in bad faith and constituted a breach of Defendant's duties of good faith and fair dealing.

## IV. DAMAGES

**53.**

Petitioner realleges and re-avers the allegations contained in Paragraphs 1-52, above, as if restated herein.

**54.**

As a result of HANOVER's breaches of contract, bad faith claims adjusting, and other bad acts, Petitioner has incurred the following, non-exclusive damages:

a. Diminution of the value of the Property;

b. Emergency repair, actual repair, remediation, and mitigation costs;

c. Reimbursement for personal repairs at the Property;

d. Actual costs related to personal property manipulation, cleaning, repair, and/or replacement;

e. Additional living expenses;

f. Loss of Use;

g. Mental anguish and emotional distress;

h. Actual, compensatory, and general damages proximately caused by Defendant's breaches of duties and breaches of contract;

i. General damages, special damages, punitive damages, statutory penalties, and all other relief delineated in La. R.S. §§ 22:1892 and 22:1973;

j. Attorney's fees, other professional fees and costs, and litigation costs associated with the bringing of this action; and

k. All other losses that will be proven through discovery or at the trial of this matter.

## V. JURY DEMAND

**55.**

Petitioner requests a trial by jury.

## VI. PRAYER FOR RELIEF

**56.**

**WHEREFORE,** Petitioner, Peter Dunn and Paula Dunn, pray that, Defendant, Hanover American Insurance Company, be served with a copy of this Petition and be duly cited to appear and answer the allegations contained therein, and that after expiration of all legal delays and proper legal proceedings, there be a judgment entered in favor of Petitioners, Peter Dunn and Paula Dunn, and against Defendant, Hanover American Insurance Company, in an amount that will fully and fairly compensate Petitioner pursuant to the evidence and in accordance with the law, all sums with legal interest thereon, from the date of judicial demand until fully paid, for all costs of these proceedings, and for all general and equitable relief.

RESPECTFULLY SUBMITTED:

_____

Galen M. Hair, La. Bar No. 32865
Madison Pitre, La. Bar No. 38867
HAIR SHUNNARAH TRIAL ATTORNEYS, LLC.
**d/b/a INSURANCE CLAIM HQ**
**d/b/a INSURANCE CLAIM**
**LAWYERS, INC.**
3540 S. I-10 Service Rd. W., Suite 300
Metairie, Louisiana 70001
Telephone: 504.684.5200
Facsimile: 504.613.6351
hair@hairshunnarah.com
pitre@hairshunnarah.com

**PLEASE SERVE:**
**Hanover American Insurance Company**
*Through its Registered Agent of Service of Process:*
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809

St. Tammany
Melissa R. Henry - Clerk of Court
Suzette Rogers - Deputy Clerk
Suit 2023-14925 H
E-Filed on: 5/22/24 10:16 AM
Filed on: 5/22/24 10:54 AM

## 22ND JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. TAMMANY
## STATE OF LOUISIANA

**NO. 2023-14925**                                            **DIV. "H"**

### PETER DUNN & PAULA DUNN

### VERSUS

### HANOVER INSURANCE GROUP

**FILED:**_____                    _____
                                                **DEPUTY CLERK**

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S EXCEPTIONS OF PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION, DECLINATORY EXCEPTION OF IMPROPER VENUE, AND PEREMPTORY EXCEPTION OF PRESCRIPTION

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, Peter Dunn and Paula Dunn, ("Plaintiffs") and respectfully submit this Memorandum in Opposition to Hanover's Exception of No Cause of Action, Declinatory Exception of Improper Venue, and Peremptory Exception of Prescription and avers as follows:

### I.    BACKGROUND

At all times relevant hereto, Petitioner owned the property located at 41069 Happywoods Rd., Hammond, Louisiana 70403 (the "Property"). At all times relevant hereto, Hanover provided a policy of insurance, number HSO 8730260 (the "Policy"), to Petitioners which covered the Property against perils including hurricanes. Notably, Plaintiffs had received documentation from the entity "Hanover Insurance Group."

On or around August 29, 2021, Hurricane Ida caused significant damages to Petitioners' Property. Petitioners promptly reported the loss(es) to Hanover, who assigned it claim number 19-00929277 (hereinafter the "Claim" or the "Ida Claim").

Thereafter, a Hanover adjuster inspected the Property on behalf of Hanover and documented damages to the dwelling and other structures, but after over-depreciating the loss and applying the Policy's deductible, Hanover allowed only insufficient funds for Petitioners' losses. The Hanover adjuster's inspection of the Property constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La. R.S. §§ 22:1892 and 22:1973.

Plaintiffs filed the instant suit on August 20, 2023, in St. Tammany Parish rather than Tangipahoa Parish inadvertently, alleging both breaches of the insurance contract (the Policy) and bad faith claims handling under Louisiana's bad faith statutes, La. R.S. §§ 22:1892 and 22:1973.

The suit was served in October of 2023 and Defendant filed the instant exception in February of 2024.

While Plaintiffs' Petition was filed in the incorrect venue, it is within the discretion of this Court to transfer this matter to the appropriate venue (the 21st JDC of Tangipahoa), as Plaintiffs' bad faith claims against Hanover have not prescribed.

## II.    LAW & ARGUMENT

### a.    Peremptory Exception of No Cause of Action

The peremptory exception of no cause of action raises the issue of whether the law provides any remedy for the specific injury alleged. *Ramey v. DeCaire*, 869 So.2d 114,118 (La. 2004) (citing *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So. 2d 1234, 1238 (La. 1993)). For the purposes of the exception, all well-pleaded facts are accepted as true, and the court is limited to determining whether the law provides a remedy to anyone if the facts alleged in the petition are proved at trial. *Ramey*, 869 So. 2d at 118 (citing *Jackson v. State ex rel. Dept. of Corrections*, 785 So. 2d 803, 806 (La. 2001)). No additional evidence may be introduced to support or controvert the objection of no cause of action at hearing. La. C.C.P. art. 931. The purpose of the peremptory exception of no cause of action is only to determine if a cause of action is pleaded and not whether the plaintiff will ultimately prevail at trial.

#### i.   *Ray v. Mall of Alexandria* Applies

In an action where plaintiff erroneously identified a defendant as the "Alexandria Mall" rather than its proper entity title, "Alexandria Mall Company," and defendant excepted on the basis of a no cause of action based on the misnaming, the Louisiana Supreme Court held an amendment of the petition which changes the identity of the party or parties sued relates back to the filing of the original pleading as long as three prerequisites are satisfied: (1) The amended claim must arise out of the same transaction or occurrence set forth in the original pleading; (2) The purported substitute defendant must have received notice of the institution of the action such that he will not be prejudiced in maintaining a defense on the merits; (3) The purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him; (4) The purported substitute defendant must not be a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed. *Ray v. Alexandria Mall, Through St. Paul Prop. & Liab. Ins.*, 434 So. 2d 1083, 1085–87 (La. 1983) (citing *Bush v. Oceans Intern.*, 621

F.2d 207 (5th Cir.1980); *Simmons v. Fenton*, 480 F.2d 133 (7th Cir.1973); see also *Anastasio v. Holiday Inns, Inc.*, 93 F.R.D. 560 (D.N.J.1982); *American Banker's Ins. Co. of Florida v. Colorado Flying Academy*, 93 F.R.D. 135 (D.Colo.1982); *Malmrose v. Aljoe's Estate*, 92 F.R.D. 490 (D.Pa.1981)).

Defendant avers that Plaintiffs served the wrong entity. This is curious, as Defendant states that the entity served was the parent company of the proper party, Hanover American Insurance Company. Defendant explains the entity sued, Hanover Insurance Group, is a parent company of a parent company of a parent company to the proper entity, Hanover American Insurance Company. Defendant, however, attempts to attach improper evidence for an exception of no cause of action, which are not relevant to this Court for the sake of this exception. See. La. C.C.P. art. 931. Instead, this Court must accept the allegations pled in Plaintiffs' Petition as true.

Defendant claims that Hanover Insurance Group is not an insurance company, does not adjust claims, or issue policies of insurance, Plaintiffs can have no cause of action for a breach of the same. Defendant has no evidence, and can submit no evidence to prove this is actually the case.

Here, Plaintiffs have alleged that Hanover Insurance Group wrote an insurance policy to Plaintiffs for which Plaintiff is alleging Hanover has breached the insurance policy and has adjusted their insurance claims in bad faith. The Court must accept these allegations as true for the purpose of Defendant's exception. Additionally, Plaintiffs have filed an Amended Petition curing the alleged defect.

Defendant, of course, overlooks the well-settled jurisprudence of this state. A misnaming of a Defendant is curable by amendment pursuant to La. C.C.P. Art. 1153 and *Ray v. Alexandria Mall, Through St. Paul Prop. & Liab. Ins.*, 434 So. 2d 1083, 1084 (La. 1983). Here, 1) Plaintiffs' amended claim arises out of the same transaction or occurrence set forth in the original petition – the entity which issued insurance policy number HSO 8730260 to Plaintiffs both under-scoped and undervalued their loss and adjusted their insurance claim in bad faith, 2) Hanover American Insurance Company has received notice of the institution of the action such that it will not be prejudiced in maintaining a defense on the merits – Phelps Dunbar, a firm that oftentimes represents Hanover American Insurance Company, has provided a defense for the Defendant;[1] 3) Hanover American Insurance Company knows or should have known that this matter should have

---

[1] In the event this is denied, a cursory search of Marc Dodart's EDLA filings indicates he has represented Hanover on 38 occasions in the Eastern District of Louisiana alone.

been instituted against it considering Plaintiffs listed the address of their home and referenced Policy HSO 8730260, and because the Hanover Insurance Group is one of its parent companies; 4) the properly named defendant is not wholly new or unrelated, as Defendant has admitted Hanover Insurance Group is a parent company to Hanover American Insurance Company. Accordingly, Ray v. Alexandria Mall squarely applies, and Plaintiffs' Amended Petition filed on May 17, 2024, cures this potential defect.

### b. Peremptory Exception of Prescription

All personal actions, including an action on a contract, are subject to a liberative prescription of ten years, unless otherwise provided by legislation. La. C.C. art. 3499; *Roger v. Dufrene*, 613 So. 2d 947, 948 (La. 1993). Delictual actions are subject to a liberative prescription of one year. La. C.C. art. 3492. The nature of the duty breached determines whether the action is in tort or in contract. *Roger*, 613 So. 2d at 948; *Dean v. Hercules, Inc.*, 328 So. 2d 69, 70 (La. 1976).

"The classic distinction between damages *ex contractu* and damages *ex delicto* is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons." *Smith v. Citadel Ins. Co.*, 2019-00052 (La. 10/22/19), 285 So. 3d 1062, 1067 (quoting *Thomas v. State Employees Grp. Benefits Program*, 05-0392 (La. App. 1 Cir. 3/24/06), 934 So. 2d 753, 757. *See also, Certain Underwriters at Lloyd's, London v. Sea–Lar Mgmt.*, 00-1512 (La. App. 4 Cir. 5/9/01), 787 So. 2d 1069, 1074; 6 Saul Litvinoff & Ronald J. Scalise Jr., *Louisiana Civil Law Treatise, Law of Obligations* § 5.2 (2d ed. 2018) ("Fault is contractual when it causes a failure to perform an obligation that is conventional in origin, that is, an obligation created by the will of the parties, while fault is delictual when it causes the dereliction of one of those duties imposed upon a party regardless of his will, such as a duty that is the passive side of an obligation created by the law.").

### c. Bad Faith Claims are Subject to a Ten-Year Prescriptive Period

The Louisiana Supreme Court has held that a bad faith claim in first party insurance claim under La. R.S. 22:1973 and 22:1892 and is subject to a ten-year liberative prescription period:

> Although the duty of good faith owed by the insurer to the insured is codified in La. R.S. 22:1973, the bad faith cause of action by an insured against the insurer does not rest solely on this statute. The duty of good faith is an outgrowth of the contractual and fiduciary relationship between the insured and the insurer, and the duty of good faith and fair dealing emanates from the contract between the parties. In the absence of a contractual obligation, the duty of good faith does not exist.

> **Because we find an insurer's bad faith is a breach of its contractual obligation and fiduciary duty, we hold the insured's cause of action is personal and subject to a ten-year prescriptive period.**

*Smith v. Citadel Ins. Co.*, 2019-00052 (La. 10/22/19), 285 So. 3d 1062, 1069 (**emphasis added**; internal citations omitted.

Thus, according to the highest authority on the subject, the Louisiana Supreme Court, Plaintiffs' bad faith claim carries a prescriptive period of ten years, and thus has not prescribed. *See Smith v. Citadel Ins. Co.*, 285 So. 3d at 1069. Plaintiffs have specifically alleged that Defendant's claims handling was in bad faith. *See Plaintiffs' Petition for Damages*, ¶25, 42-52, 54.

> i. *The Policy's "Suit Against Us" provision is illegal and thus void, and Plaintiff's Bad Faith Claims Are Not Prescribed.*

La. R.S. 22:868(B) provides:

> **No insurance contract delivered or issued for delivery in this state**... shall contain any condition, stipulation, or agreement limiting right of action against the insurer to a period of **less than twenty-four months next after the inception of the loss when the claim is a first-party claim** , as defined in R.S. 22:1692...[2]

The statute further provides: "Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract." La. R.S. 22:868(C).

Accordingly, as this is a first party insurance claim, the "Suit Against Us" provision cited by Defendant is both illegal and void, and should be ignored by this Court.

Next, Defendant argues that although Plaintiffs timely filed their lawsuit on August 20, 2023, they did so in the adjacent judicial district court, St. Tammany rather than Tangipahoa, where the Property in question is located. As a likely result of an influx of Hurricane Ida suits, the Petition was not served on Defendant's agent of service until October 6, 2023.

Although there is no direct reference to Plaintiffs' bad faith claims, Defendant argues that each of their causes of action against their insurer have prescribed and cites a portion of the insurance agreement titled "Suit Against Us," which provides for a one-year period in which an insured may bring an action against its insurer: No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.[3] Despite the fact this provision is illegal, Defendant relies upon the same for its contention that all of Plaintiffs' claims have prescribed.

---

[2] **Emphasis added**
[3] Defendant's Exhibit 1 at HANOVER000015.

Notably, the case cited for Defendant's position that this provision lessens the time an insured has to bring suit, *Good Hope Baptist Church v. ICT Ins. Agency, Inc.*, 2010-142 (La. App. 3 Cir. 6/9/10), 41 So. 3d 1229, 1236, was silent to whether the plaintiff's claims for attorney fees and penalties pursuant to La.R.S. 22:1973 and 22:1892 had prescribed. Id at 1236. That case also contained a legally valid "Suit Against Us" provision, as it provided a prescriptive period of two years, as permitted by La. R.S. 22:868(B).

In the instant matter, the "Suit Against Us" is for a period of time totaling one year, which is half of the minimum time allowed by La. R.S. 22:868(B), rendering the provision void. See La. R.S. 22:868(C).

Considering Plaintiffs' bad faith claims are still pending before this Court, and have not prescribed, Plaintiffs' request this case be transferred to the appropriate venue (the 21st JDC for Tangipahoa Parish) to proceed under La. C.C.P. art. 121.

## III.   CONCLUSION

For the foregoing reasons Plaintiffs request this Court 1) deny Defendant's Exception of No Cause of Action as moot; 2) deny its Exception of Prescription as to Plaintiff's bad faith claims for penalties and attorney fees under La. R.S. 22:1973 and 22:1892 as they have not prescribed; and 3) transfer this case rather than dismiss it under La. C.C.P. art. 121.

RESPECTFULLY SUBMITTED:

Galen M. Hair, La. Bar No. 32865
Madison C. Pitre, La Bar No. 38867
**HAIR SHUNNARAH TRIAL
ATTORNEYS, LLC.**
**d/b/a INSURANCE CLAIM HQ**
**d/b/a INSURANCE CLAIM
LAWYERS, INC.**
3540 S. I-10 Service Rd., W., Ste. 300
Metairie, Louisiana 70001
Telephone: 504.684.5200
Facsimile: 504.613.6351

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing notice on all counsel of record in these proceedings by email, facsimile transmission and/or United States Mail, postage prepaid, this Wednesday, May 22, 2024.

Madison C. Pitre